UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JONATHAN BLECHER,                                    Case No. 1:25-cv-10341-JLR

                        Plaintiff,

        -*against*-                                  **DECLARATION OF
                                                     BRIAN GRAIFMAN
                                                     OPPOSING
MATTHEW S. GOLDBERG,                                 DISQUALIFICATION**
ANTHONY J. NOVELLA, and
RONALD TANG,

                        Defendants.
-------------------------------------------------------------X


**MEMORANDUM OF LAW OF ANTHONY NOVELLA
OPPOSING PLAINTIFF'S MOTION FOR DISQUALIFICATION OF
BRIAN GRAIFMAN OR ANY BORAH GOLDSTEIN ATTORNEY**



Dated:  New York, New York
        February 9, 2026


                                        Brian Graifman
                                        BORAH, GOLDSTEIN, NAHINS &
                                          GOIDEL, P.C.
                                        377 Broadway
                                        New York, New York 10013
                                        212-431-1300 x322
                                        212-965-2566 dir
                                        bgraifman@borahgoldstein.com
                                        *Attorney for Defendant Anthony J. Novella*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 2

ARGUMENT ............................................................................................................... 3

PLAINTIFF FAILS TO SHOW GROUNDS FOR DISQUALIFICATION,
AND THE MOTION, IN ANY EVENT, IS PREMATURE ............................................ 3

    A.    Legal Standard ................................................................................. 3
    B.    Pertinent Disciplinary Rules ....................................................... 6

        1.    Rule 1.0(f) - Differing Interests (deleted) .................................... 7
        2.    Rule 3.7 - Lawyer As Witness ...................................................... 7
        3.    Rule 1.7 - Conflict of Interest: Current Clients (As Amended) ...... 7
        4.    Rule 1.9 - Duties to Former Clients ............................................... 8
        5.    Rule 1.6 - Confidential Information ............................................... 9

    C.    Relevant Case Law ..................................................................... 10
    D.    Disqualification Should Be Denied ........................................... 12

        1.    Plaintiff Fails His Heavy Burden To Show the
              Necessity of Novella's Testimony ................................................ 13
        2.    Plaintiff Fails His Heavy Burden to Show That
              Novella Would Offer Prejudicial Testimony .............................. 13

            (a)    The Receipt of Funds "Conflict" ..................................... 14
            (b)    The April 7 Invoice "Conflict" ........................................ 14
            (c)    The "not less than $100,000" Fee Request "Conflict" ..... 15
            (d)    Other Legal Disagreements .............................................. 15

        3.    Plaintiff Fails His Heavy Burden to Show That
              The Firm Should Be Disqualified ................................................ 16
        4.    Plaintiff Fails to Demonstrate Any "Conflict" ............................. 16
        5.    Mr. Graifman as Novella's Counsel of Choice ............................ 17
        6.    Plaintiff's Cited Cases Are All Distinguishable ........................... 17

    E.    Plaintiff's Motion is Premature ................................................ 20

CONCLUSION .......................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Art Capital Group LLC v. Neuhaus*,
    70 A.D.3d 605 (1st Dep't 2010) ............................................................. 13

*Blecher v. WAM Equity Partners, LLC, WAM Partners, Van Dorn Holdings LLC,*
    *William Moses Co. Inc. and The Guarantors*, Index No. 160971/2025
    (Sup. Ct. New York County) ..................................................................... 1

*Bd. of Educ. v. Nyquist*,
    590 F.2d 1241 (2d Cir. 1979)............................................................. 18, 19

*Cassini v. County of Nassau*,
    CV-22-1696 (DG)(AYS), 2023 U.S. Dist. LEXIS 189089,
    2023 WL 6958795 (E.D.N.Y. Oct. 20, 2023)........................... 11-12, 17, 20

*Chang v. Chang*,
    190 A.D.2d 311, 597 N.Y.S.2d 692 (1st Dep't 1993)............................... 17

*Cinema 5, Ltd. v. Cinerama, Inc.*,
    528 F.2d 1384 (2d Cir. 1975)................................................................... 18

*Greene v. Greene*,
    47 N.Y.2d 447 (1979) ........................................................................ 17, 18

*Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005)......................................................... 4, 18, 19

*Mahn v. Allegis Grp., Inc.*,
    1:24-cv-8326-GHW, 2025 LX 21284,
    2025 WL 1380993 (S.D.N.Y May 12, 2025) ...............................3-6, 10-11, 16, 20

*Murray v. Metro Life Co.*,
    583 F.3d 173 (2d Cir. 2009).......................................... 4-6, 10-12, 18-19

*Pu v. Charles H. Greenthal Mgmt. Corp.*,
    2010 U.S. Dist. LEXIS 21875, 2010 WL 774335 (S.D.N.Y. Mar. 9, 2010) .......................... 15

*RCM/CMG Portfolio Holding, LLC v. Giordano*,
    214 A.D.3d 486, 186 N.Y.S.3d 134 (1st Dep't 2023) ............................. 14

*Ross v. Blitzer*, No. 09-cv-8666 (HB),
    2009 U.S. Dist. LEXIS 119014,
    2009 WL 4907062 (S.D.N.Y. Dec. 21, 2009) ......................................... 6

*S & S Hotel Ventures Ltd. Partnership v. 777 S. H. Corp.,*
  69 N.Y.2d 437, 515 N.Y.S.2d 735 (1987) ........................................................... 5, 19

*Skiff-Murray v. Murray*,
  3 A.D.3d 610, 771 N.Y.S.2d 230 (3d Dep't 2004) ................................................. 19

*Solovoy v. Greater New York Savings Bank*,
  198 A.D.2d 27 (1st Dep't 1993) ......................................................................... 13

*United States v. Locascio,*
  6 F.3d 924 (2d Cir. 1993)................................................................................... 19

**STATUTES & RULES**

CPLR 3025(c) ........................................................................................................ 14

<u>New York Rules of Professional Conduct (NYRPC)</u>

Rule 1.0(f) or 1.0(j) ...........................................................................................6-7, 9
Rule 1.6 ............................................................................................................ 6, 8, 9
Rule 1.7 ..................................................................................................... 6, 7, 11, 16
Rule 1.9 ..........................................................................................................6-9, 16-17
Rule 3.7 ..........................................................................................................4-8, 11

Joint Order of the Departments of the NYS Sup. Ct. App. Div. dated Nov. 5, 2025,
amending Part 1200, (Rules of Professional Conduct) of Title 22 of the Official
Compilation of the Codes, Rules, and Regs. of NYS, eff. Nov. 10, 2025 .................... 7

## Preliminary Statement

Defendant Anthony J. Novella, through his undersigned attorney, submits this memorandum of law in opposition to plaintiff Jonathan Blecher's motion to disqualify Brian Graifman, Esq. and any Borah Goldstein attorney from defending him here (ECF 26, *et seq.*).

This matter began as an uncomplicated landlord-tenant dispute. Plaintiff is a New York admitted attorney and former residential tenant of the building managed by defendant Goldberg. Plaintiff abandoned the apartment mid-lease after apparently fleeing the jurisdiction and leaving all his belongings. He then tried to terminate his lease and avoid the financial consequences of leaving. Nonetheless, the only loss charged to him to date is his $4,100 security deposit because the surety firm that had guaranteed his leasehold and sought to charge him an additional $4,100, waived its claim in response to plaintiff's aggressive tactics. Plaintiff nonetheless filed a state court action against the surety firm and, as amended, against his former landlord, property manager, and affiliate.[1] Borah Goldstein, by Mr. Novella, appeared as attorneys in the state case, representing those latter defendants.

While that case pended and still in its initial stages, plaintiff filed this federal case arising out of the same series of transactions and occurrences, naming as defendants three *individuals*: Matthew Goldberg (a representative of the landlord and property manager defendants in the state case), Anthony Novella (the Borah Goldstein attorney then defending them in the state case), and Ronald Tang (a representative of the surety).

Brian Graifman of Borah Goldstein appeared in this case to represent Messrs. Novella (ECF 20) and Goldberg (ECF 23). Plaintiff then filed this disqualification motion (and another

---

[1] *Jonathan Blecher v. WAM Equity Partners, LLC, WAM Partners, Van Dorn Holdings LLC, William Moses Co. Inc. and The Guarantors*, Index No. 160971/2025 (Sup. Ct. New York County) (per plaintiff's proposed amended summons adding parties) (the **"State Case"**).

such motion in the state case). Despite the lack of merit of those motions, new counsel replaced Borah Goldstein in the state case and took over the representation for Mr. Goldberg here (ECF 42), leaving Mr. Graifman representing Mr. Novella.

The scope of plaintiff's motion has thus narrowed from when it was filed (*see* 1/29/26 Graifman Letter, ECF 37). Plaintiff nonetheless has requested that his motion be considered as filed (ECF 38 & 39). This court agreed (ECF 42).

So limited, disqualification must be denied. As Mr. Novella explains in his accompanying declaration, he never had any contact or communication with plaintiff Blecher until appearing as a defense attorney in the state case; Novella is not a witness to any of the underlying landlord-tenant dispute and is highly unlikely to be needed or called to testify, having no knowledge that is material or necessary concerning the dispute; there is no conflict, as the interests of Novella and Borah Goldstein and its attorneys are completely aligned with those of the former client-defendants vis-à-vis plaintiff and his cases; and this case is nowhere close to trial, and is unlikely to survive summary dismissal, making the motion premature (Novella Decl. ¶ 4).

## **FACTUAL BACKGROUND**

The underlying facts are set forth in the accompanying declaration of Anthony Novella, incorporating by reference the Affirmation of Matthew Goldberg, filed in the state case as NYSCEF #80, summarized by Novella (Novella Decl. ¶¶ 11-24), and included as his exhibit A. For judicial economy, we refer the court to Mr. Novella's declaration for the facts and refrain from repeating them here.

Suffice it to emphasize that Mr. Novella was not involved in the underlying landlord-tenant dispute, until plaintiff sued in state court and Novella appeared as counsel (Novella Decl.

¶¶ 10, 25, 33).  Apart from that, Mr. Novella's involvement was only tangential, as at

Mr. Goldberg's request, he spoke with an NYPD detective of the Major Case Intelligence Team

of the NYPD Intelligence Division who had contacted and spoken with Goldberg, and relatedly

coordinated a subpoena response from the Rackets Bureau of the New York County District

Attorney's Office concerning a person of interest said to live in the subject Building, a target not

then identified but who Mr. Goldberg later learned was Blecher (*id.* ¶¶ 26-31, 34, 36-37). As

Mr.  Novella also explains, the criminal investigation has no direct relationship to the landlord-

tenant dispute, other than perhaps to explain why Blecher's absconded out of the country; why

the landlord let him go so easily and with little financial penalty; and why Blecher has filed these

cases, perhaps to learn what the authorities have on him and any cohort; and even if the criminal

investigation were somehow relevant, Mr. Goldberg was party to the emails and phone calls with

the NYPD and DA's office, making Novella's testimony neither material nor necessary (Novella

Decl. ¶¶ 35, 38-41).

## ARGUMENT

## I.

## PLAINTIFF FAILS TO SHOW GROUNDS FOR DISQUALIFICATION, AND THE MOTION, IN ANY EVENT, IS PREMATURE

**A.**     **Legal Standard**

The legal standard for disqualification is set forth in the recent decision *Mahn v. Allegis*

*Grp., Inc.*, 1:24-cv-8326-GHW, 2025 LX 21284, 2025 WL 1380993 (S.D.N.Y May 12, 2025).

"The authority to disqualify an attorney stems from federal courts' inherent power to preserve

the integrity of the adversary process."  *Id.* at *9-*10 (quotation source omitted).  "In

determining whether to disqualify an attorney from representing a client, a court necessarily

balances the client's right to select counsel of his choice against the need to maintain the integrity and high standards of the legal profession." *Id.* at \*10 (quotation source omitted).

Disqualification "is a drastic measure that is viewed with disfavor in this Circuit due to the delay it involves and its potential for misuse as a litigation tactic." *Mahn*, *supra* (quotation source omitted). In deciding disqualification motions, courts may look to "the American Bar Association (ABA) and state disciplinary rules," however "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* (quoting, inter alia, *Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*, 409 F.3d 127 (2d Cir. 2005).[2] "Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, the Second Circuit has indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." *Id.* at \*10-\*11 (internal quotation marks & source omitted; *citing Hempstead Video*).

"The 'witness-advocate' rule set out in Rule 3.7 of the New York Rules of Professional Conduct may provide a basis for disqualification of an attorney and other attorneys that work in the same firm." *Mahn, supra*, at \*11 (adjusting quotation marks & *quoting Murray v. Metro Life Co.*, 583 F.3d 173, 177-78 (2d Cir. 2009)).[3] Subsection (a) of the Rule provides, with certain exceptions, that "[a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." *Id.* (quoting NYRPC § 3.7(a)). Subsection (b) of the Rule permits imputation of a lawyer's conduct to other lawyers who work at their firm: "A lawyer may not act as an advocate before a tribunal in a matter if . . . another

---

[2]     Plaintiff cites *Hempstead Video* as supposedly supportive but disqualification there was denied.

[3]     Plaintiff cites *Murray* as supposedly supportive but disqualification there was denied.

lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *Id.* (*quoting* NYRPC § 3.7(b)(1)).

"Rule 3.7 lends itself to opportunistic abuse." *Mahn, supra*, at \*11 (*quoting Murray,* 583 F.3d at 178). "'Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions' under the witness-advocate rule." *Id.* at \*11-\*12 *(quoting Murray,* 583 F.3d at 178).

"The movant, therefore, 'bears the burden of demonstrating specifically how and as to what issues in the case . . . prejudice may occur and that the likelihood of prejudice occurring to the witness-advocate's client is substantial." *Id.* at \*12 *(quotation source & internal quotations omitted).* "'Prejudice' in this context means testimony that is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.* (same).

In addition to its burden of demonstrating prejudice, a party seeking disqualification under the advocate-witness rule also "bears the burden of showing the necessity of the testimony." *Mahn, supra*, at \*12. "In determining necessity courts look not to whether counsel possesses discoverable knowledge, but whether trial of the case will in fact require his testimony." *Id.* "Testimony may be relevant and even highly useful but still not strictly necessary." *Id.* (*quoting S & S Hotel Ventures Ltd. Partnership v. 777 S. H. Corp.,* 69 N.Y.2d 437, 445-46, 515 N.Y.S.2d 735 (1987)).[4] "The existence of additional witnesses with the ability to testify to the same facts is often fatal to a claim for disqualification under the lawyer as witness rule." Id. at \*12-\*13 (quotation source omitted).

---

[4]      Plaintiff cites *S & S* as supposedly supportive but disqualification there was denied.

"Moreover, although it may be determined at the close of discovery that disqualification is warranted, this alone may not disqualify counsel from pursuing pretrial representation." *Mahn, supra*, at *12. "The witness-advocate rule is concerned with preventing potential taint *at trial*." *Id.* (*quoting Ross v. Blitzer*, No. 09-cv-8666 (HB), 2009 U.S. Dist. LEXIS 119014 at *10, 2009 WL 4907062, at *3 (S.D.N.Y. Dec. 21, 2009) (emphasis in original)).

"Thus, where there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature," *Mahn, supra*, at *13 (*quoting* Ross, *supra* (collecting cases)), and "have expressly permitted attorneys who were potential witnesses at trial to continue their representation of their clients throughout pretrial proceedings, including discovery and dispositive motions," *id.* (*quoting* Ross, *supra*).

## B.  <u>Pertinent Disciplinary Rules</u>

It is undisputed that the New York Rules of Professional Conduct (Title 22 of the Official Compilation of the Codes, Rules, and Regulations of the State of New York) (NYRPC) govern the conduct of New York State lawyers who practice in this jurisdiction. *See, e.g., Murray v. Metro Life Co.*, *supra*, 583 F.3d 173, 177-78 (relying on witness-advocate rule set forth in Rule 3.7 of NYRPC).[5]

Plaintiff relies on Rules 1.0(f), 1.6(a) & (b)(5), 1.7, 1.9, 1.10(a), and 3.7, but plaintiff overlooks that ***certain of those rules have been deleted or amended*** prior to the filing of this case, and other of the rules do not apply to the more limited representation by Mr. Graifman of

---

[5]     While some federal courts also rely on the ABA Model Rules of Professional Conduct (Americanbar.org), those rules do not materially depart from the New York Rules, as relevant here and need not be addressed.

only Anthony Novella. We address the relevant rules together for ease of reference: the deleted rule first, then the witness-advocate rule, and then the rules referenced in the ones addressed:

1.    **Rule 1.0(f) - Differing Interests (deleted)**

Plaintiff cites Rule 1.0(f) as defining "differing interests" to include "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." (Disqualification MOL, ECF 26-1, at 9 & 23). Not so. Rule 1.0(f) was deleted effective November 10, 2025, by the Joint Order of the Departments of the New York State Supreme Court Appellate Division, after thoughtful consideration (see **Exhibit A** to accompanying Graifman Declaration, URL in the footnote).[6] As shown below, the rule replacing it, part of amended Rule 1.7, imposes a more rigorous standard for finding conflict, namely that the clients' interests be "directly adverse."

2.    **Rule 3.7 - Lawyer As Witness**

The only portion of Rule 3.7, the so-called "advocate-witness rule" (aka the "witness-advocate rule"), that is pertinent here is subdivision (b). It applies when *another* lawyer in the advocate's firm may be a witness or other conflicts apply:

> (b) A lawyer may not act as advocate before a tribunal in a matter if:
>
> > (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or
>
> > (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.[7]

3.    **Rule 1.7 - Conflict of Interest: Current Clients (As Amended)**

This rule is referenced in Rule 3.7(b)(2). Plaintiff quotes the prior version, however,

---

[6] https://www.nycourts.gov/LegacyPDFS/RULES/jointappellate/AO%20Signed%20Letter%20to%20DOS-Administrative%20Order-JointAppDivOrder.pdf

[7]    Plaintiff nowhere contends that Mr. Graifman will need to be a called as a witness.

failing to note that it was amended effective November 10, 2025, to be more rigorous in finding a conflict, *i.e.*, to apply only when the positions are "directly adverse" (new language in italics):

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that *the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:*

(1) the representation of *one client will be directly adverse to another client*; or

(2) there is a significant risk that (i) the lawyer's *independent* professional judgment on behalf of a client will be adversely affected *by, or (ii) the representation of one or more clients otherwise will be materially limited by, the lawyer's responsibilities to another client, a former client or a third person or* by the lawyer's own financial, business, property or other personal interests.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed

## 4. <u>Rule 1.9 - Duties to Former Clients</u>

This rule too is referenced in Rule 3.7(b)(2), and reads:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) Unless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 or paragraph (c) of this Rule that is material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

>  (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or
>  (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client.

## 5.    Rule 1.6 - Confidential Information

Plaintiff cites Rule 1.6(a) and (b)(5), which pertain to Rule 1.9(c), *supra*.  Rule 1.6(a) and (b)(5) read as follows:

>  (a) A lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person, unless:
>  (1) the client gives informed consent, as defined in Rule 1.0(j) ["informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives."]
>
>  (2) the disclosure is impliedly authorized to advance the best interests of the client and is either reasonable under the circumstances or customary in the professional community; or
>
>  (3) the disclosure is permitted by paragraph (b).
>
>  "Confidential Information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential.
>  "Confidential Information" does not ordinarily include (i) a lawyer's legal knowledge or legal research or (ii) information that is generally known in the local community or in the trade, field or profession to which the information relates. . . .

(b) A lawyer may reveal or use confidential information to the extent that the lawyer reasonably believes necessary:

> (5) (i) to defend the lawyer or the lawyer's employees and associates against an accusation of wrongful conduct; or (ii) to establish or collect a fee; . . .

## C.   Relevant Case Law

In the recent case of *Mahn v. Allegis Grp., Inc.*, *supra*, 1:24-cv-8326-GHW, 2025 LX 21284, 2025 WL 1380993 (S.D.N.Y May 12, 2025), plaintiff alleged that defendants defamed her in their legal briefs in bankruptcy court and in state court, where they called her conduct "criminal," among other defamatory allegations.  As in this case, plaintiff moved to disqualify defendants' counsel because the same counsel represented the defendants in connection with the allegedly defamatory briefs, and in plaintiff's view, testimony from defendants' counsel would be necessary at trial and disqualification was required under the "witness-advocate" rule. 2025 LX 21284 at *1-*3.

After setting forth the legal standard discussed above, the court held that movant had "failed to carry her burden, at least at this early stage, of demonstrating the prejudice necessary to warrant disqualification." *Mahn*, *supra*, at *14, *citing Murray, supra,* 583 F.3d 173 at 178. The court recognized the high standard required of demonstrating that testimony would be unaligned, and concluded that there was no record before the court to believe that any testimony from the attorney would be inconsistent with the clients' account.  *Id.* at *15.  The court noted that movant's suggestions of conflict and prejudice were speculative, and that the attorney in opposition had denied any knowledge that would form the basis for testimony that would be adverse to his clients.  *Id.* at *17-*18.  The court denied the motion without prejudice to renewal after discovery and any summary judgment motion practice, should the case not be resolved before trial.  *Id.* at *18.

For the same reasons, the court found that plaintiff had failed to demonstrate that disqualification of the *firm* was warranted. *Id.* at \*18-\*19. The court noted that "Rule 3.7(b) does not provide a basis for disqualification of a law firm or lawyers within a law firm unless, among other things, at least one lawyer at the firm will testify at trial and 'the movant proves by clear and convincing evidence' that the lawyer-witness 'will provide testimony prejudicial to the client.'" *Id.* at \*19, citing *Murray,* 583 F.3d at 178-79. The court thus dismissed that prong of the motion too without prejudice. *Id.*

Similarly, in *Cassini v. County of Nassau*, CV-22-1696 (DG)(AYS), 2023 U.S. Dist. LEXIS 189089, 2023 WL 6958795 (E.D.N.Y. Oct. 20, 2023), plaintiffs sued a court-appointed receiver and the receiver's court-appointed attorney, among others. Plaintiffs moved to disqualify the lawyer and his firm from further representation of the receiver on the ground that the representation violated the witness-advocate rule and that there was a non-waivable conflict of interest. 2023 U.S. Dist. LEXIS 189089 at \*5 & \*7. Plaintiffs argued that because the defendants conspired to unlawfully deprive the subject estate of assets for their own financial gain, permitting the attorney to represent the receiver would "allow the conspiracy to extend into the proceedings before this Court," and that the attorney "ought to testify in this litigation." *Id.* at \*8-\*9. The court held that the motion under Rule 3.7 was premature because the "concerns that justify disqualification of an attorney who will be a witness are not implicated at the pretrial stage." *Id.* at \*10.

Plaintiffs also sought the attorney's disqualification under Rule 1.7, due to a supposed conflict of interest.[8] Plaintiffs argued that because the attorney was a named defendant, he had

---

[8]     As noted earlier, Rule 1.7 has since been amended, imposing a more stringent standard for finding conflict.

an impermissible personal interest in the litigation, which would cause him to "naturally be primarily concerned with defending himself" against the allegations in the case, and that if their allegations are true as against the attorney but not as to his client, it cannot reasonably be expected that he would put forward evidence that has the effect of exonerating the client but implicating himself in the conspiracy and other wrongs alleged, thus posing "an unavoidable conflict . . . or, at best, a potential conflict." *Id.* at *12. The court held that plaintiffs' arguments were nothing more than speculation and, like the other portion of their motion, premature. *Id.* at *12-*13. No discovery had been conducted there and the court had not yet ruled on the viability of plaintiffs' claims beyond the pleading stage, and it was thus unclear whether plaintiffs' pleading could withstand a motion to dismiss. The court also observed that plaintiffs were seeking to disqualify the attorney "based on the mere fact that he is a named defendant . . . without any factual support for their supposition as to how his interests fail to align" with his client's. *Id.* at *13.

## D.    Disqualification Should Be Denied

As noted above, because disqualification motions are fertile grounds for "opportunistic abuse," they are viewed skeptically and are subject to "fairly strict scrutiny." *Mahn*, *supra* at *11-*12, *quoting Murray*, 583 F.3d at 178. This motion particularly fits that bill, considering how plaintiff has positioned himself to make his argument by filing a second case, now a federal action, in which he sues the *attorney* who had appeared in the first case, along with two other individuals who are representatives of the state court defendants.

Naming the attorney as a defendant here is particularly abusive considering the policy against suing an adverse party's attorneys. "[I]t is recognized that public policy demands that attorneys, in the exercise of their proper functions as such, shall not be civilly liable for their

actions when performed in good faith and for the honest purpose of protecting the interests of their clients." *Art Capital Group LLC v. Neuhaus*, 70 A.D.3d 605, 606 (1st Dep't 2010). While our clients here did nothing wrong, even so, an attorney is generally not liable for the acts of its client. *Solovoy v. Greater New York Savings Bank*, 198 A.D.2d 27 (1st Dep't 1993).

1. **Plaintiff Fails His Heavy Burden To Show**
**The Necessity of Novella's Testimony**

In any event, plaintiff fails to meet his heavy burden to show the necessity of Novella's testimony, other than pure unsupported speculation. Novella explains his lack of involvement in the underlying landlord-tenant dispute, until plaintiff sued (Novella Decl. ¶¶ 10, 25-26, 32-34), and how the criminal investigation has no direct relationship to the landlord-tenant dispute (*id.* ¶ 35), other than perhaps to explain Blecher's flight out of the country, why the landlord let him go so easily and with little financial penalty, and why Blecher has filed these cases, perhaps to learn what the authorities have on him and any cohort (*id.* ¶¶ 38-39).[9] Mr. Novella also explains how even if the criminal investigation were somehow relevant, Mr. Goldberg was party to the emails and phone calls with the NYPD and DA's office, making Novella's testimony neither material nor necessary (*id.* ¶¶ 27-28, 30, 36-38, 40-41).

2. **Plaintiff Fails His Heavy Burden to Show**
**That Novella Would Offer Prejudicial Testimony**

Plaintiff also fails to sustain his heavy burden of demonstrating that Novella would offer testimony prejudicial to the former clients. Mr. Novella explains that there is no conflict and that his interests and those of Borah Goldstein and its attorneys in relation to the former defendant-

---

[9] Blecher filed this case on December 12, 2025, only ten days after Mattew Goldberg's affirmation filed in the state case on December 2, 2025 revealing that he was contacted and oversaw the response to a subpoena in connection with the criminal investigation (NYSCEF #80 at ¶ 26). Would Blecher have this Court believe that his sole intent is to expose a **multi-hundred dollar scheme**?

clients are completely aligned (Novella Decl. ¶¶ 42-50). What plaintiff offers as "conflicts" are but minor discrepancies, inadvertent mistakes that have been corrected, and/or are not conflicts, but plaintiff's intentional misinterpretation of evidence (*id.* ¶ 45):

        **(a)**     <u>**The Receipt of Funds "Conflict"**</u> – Plaintiff complains that in the state case "Novella filed an Answer Verified by Matthew Goldberg . . . denying the receipt of specific insurance funds," while later, "Goldberg admitted in a sworn Affirmation that those exact funds were received" (Disqualification MOL, ECF 26-1, at 1; *see id.* at 10-11). As Novella explains, in the 32 days between those two filings, the latter filing obviously corrected the former, and that "[t]his is no conflict between Goldberg and me, it is Goldberg correcting Goldberg" (Novella Decl. 46). The correction has the effect under New York practice of conforming the pleading to the evidence. *See* CPLR 3025(c); [RCM/CMG Portfolio Holding, LLC v. Giordano, 214 A.D.3d 486, 486, 186 N.Y.S.3d 134, 136 (1st Dep't 2023)](#) ("the affidavits submitted in opposition . . . would be properly considered to remedy any defects in the complaint" (internal quotation marks omitted)).

        **(b)**     <u>**The April 7 Invoice "Conflict"**</u> – Plaintiff asserts as a "conflict" that the April 7, 2025 receipt for plastering and painting (ECF 26-5) "is a chronological impossibility" because "the new tenant took possession on April 1st" (Disqualification MOL, ECF 26-1, at 11). Nothing in the invoice reflects when the work was done, only that the *invoice* is dated April 7, 2025. Plaintiff's supposition ignores that the invoice is likely either one for past services rendered, as they often are, or that the work *was* indeed done after the tenants took position, which also is not unheard of (Novella Decl. ¶ 47). Thus plaintiff's concern with preserving "metadata" for a laborers' invoice is overblown.

(c)     **The "not less than $100,000" Fee Request "Conflict"** – Plaintiff

purports to complain about the fee request in the state court answer, which inadvertently includes

the words "to date" in referring to legal fees, costs, and disbursements that the landlord entities

"*have and will continue to incur*" (Novella Decl. ¶¶ 48-49):

> 84. Defendants *have and will continue to incur* legal fees, costs and
> disbursements based on Plaintiff's actions and conduct before and after
> commencement of this action, which, <u>to date</u>, totals not less than $100,000.00.

> 85. Defendants request judgment against Plaintiff for the fair and
> reasonable value of Defendants' attorneys' fees, costs and disbursements
> incurred in this action, *in an amount to be determined by the Court*, but not
> less than $100,000.00.

(Answer in State Case, NYSCEF #31, ¶¶ 84-85 (emphases added)).

Plaintiff knows full well that the phrase "to date" is a mistake, as he admits that

"[g]enerating this fee in an eight-hour window is a physical impossibility" (Disqualification

MOL, ECF 26-1 at 6).  Plaintiff ignores the clause, "*have and will continue to incur"* in the same

sentence, making it clear that the landlord entities' legal fees total "*an amount to be determined

by the Court*" in the very next sentence (Novella Decl. ¶¶ 48-49).[10]

(d)     **Other Legal Disagreements** – Finally, plaintiff's other disagreements

about legal positions are just that, legal disagreements, a category insufficient to support claims

such as plaintiff's, *see, e.g., Pu v. Charles H. Greenthal Mgmt. Corp.*, 2010 U.S. Dist. LEXIS

21875, 2010 WL 774335 (S.D.N.Y. Mar. 9, 2010) ("in making allegations about what is

essentially a disagreement over the meaning of contract language, Pu does not plausibly allege

that defendants engaged in any predicate racketeering activity").  The legal position(s) the

attorneys and former clients here are aligned (Novella Decl. ¶ 50).

---

[10]     Moreover, it would be difficult to find a lawyer who has never erred in a legal recitation,
even outside of a high-volume practice.

**3.      Plaintiff Fails His Heavy Burden to Show
That The Firm Should Be Disqualified**

For the same reasons, plaintiff fails his heavy burden of demonstrating by "clear and convincing evidence" that a Borah Goldstein attorney "will testify at trial" or "provide testimony prejudicial to the client." *Mahn v. Allegis Grp., Inc.*, *supra*, 1:24-cv-8326-GHW, 2025 LX 21284 at *19, 2025 WL 1380993 (S.D.N.Y May 12, 2025).

**4.      Plaintiff Fails to Demonstrate Any "Conflict"**

The amendments to paragraph Rule 1.7(a), concerning concurrent representations, assign the movant a heavier burden of proof than the version relied on by plaintiff.  Pursuant to Rule 1.7(a)(1), *supra*, a concurrent conflict of interest exists only if "the representation of one client will be *directly adverse to another client* (emphasis indicates new language). Consequently, the representation must not only be adverse to another client, but it must be "directly" adverse to the other client.

Notwithstanding that the current clients are, in this case, *former* Borah clients, Mr. Novella has explained the lack of conflict and Mr. Graifman will not include nor need he include any assertions in the defense of Mr. Novella that would be directly or indirectly adverse to any client, or indeed former client (Graifman Decl. ¶ 5). For the same reasons, there is no significant risk that Mr. Graifman's independent professional judgment exercised on behalf of one client will adversely affect his responsibilities to the other or his own financial, business, property or other personal interests (of which there are none here), or that the representation otherwise will be materially limited by those responsibilities (Graifman Decl. ¶ 6 ).

The interests of Mr. Novella (and Borah Goldstein) and the former clients are completely aligned (Novella Decl. ¶ 42), and certainly not "materially adverse." Rule 1.9(a).  Nor are their interests "materially adverse to the former clients," and there is no "confidential information" to

be used to the former clients' disadvantage, or that need be revealed for a current client (Novella Decl. ¶ 44, citing Rule 1.9).

Plaintiff's allegations regarding conflicts, by contrast, are purely speculative. See *Cassini, supra,* 2023 U.S. Dist. LEXIS 189089, at *12.

### 5. <u>Mr. Graifman as Novella's Counsel of Choice</u>

Finally, Mr. Novella expresses his desire that the undersigned remain as his counsel and he provides the reasons why, and to deprive him of same would be unfair, prejudicial, and burdensome to him (Novella Decl. ¶¶ 51-57).

### 6. <u>Plaintiff's Cited Cases Are All Distinguishable</u>

To the extent still applicable, each of plaintiff's cited cases is distinguishable or inapplicable, or undermines his position, compelling denial of his motion.

None of them involves a litigant (like plaintiff) who brought a second suit against the attorney who represents the adverse party in the litigant's first suit, and then uses the attorney's presence as a party in the second suit to claim a conflict. The only cases he cites involving a party's *attorney* as a party are *Chang v. Chang*, 190 A.D.2d 311, 597 N.Y.S.2d 692 (1st Dep't 1993), and *Greene v. Greene*, 47 N.Y.2d 447 (1979). Each is distinguishable.

In *Chang*, the attorney who represented himself and his co-defendant corporate officers in a derivative action brought by a shareholder, then *conceded* being an active participant in the disputed corporate transaction. Following a hearing held by a referee, the corporate officers raised the conflict of having been represented by their codefendant. The court set aside the referee's decision because the conflict had not been waived. By contrast, plaintiff here was never a *client* of the attorneys he seeks to disqualify, and he fails to assert that he even has *any* attorney-client relationship relevant to this case. In *Chang*, as noted above, it was the corporate

officer *clients* who objected that the attorney represented himself as well as them, and without a written signed waiver.

And in *Greene*, *supra*, two members of plaintiff's law firm were formerly partners in the defendant law firm, which was being sued for alleged breaches of fiduciary duties in relation to a trust. Here, by contrast, no Borah Goldstein attorney ever represented plaintiff and plaintiff has no lawyer representing him who poses a conflict with Borah Goldstein.

Other cases cited by plaintiff likewise involve conflicted legal representations of the objecting party. In *Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*, 409 F.3d 127 (2d Cir. 2005), plaintiff adult video store objected to the Village's counsel because its own counsel for labor matters had become "of counsel" to the firm defending the Village, and the video store's owner had a phone consultation with another of the law firm's lawyers about a condemnation proceeding in a neighboring town. While the Second Circuit noted that a potential conflict by concurrent representation was shown, it denied disqualification, recognizing a trend toward allowing a presumption of confidence sharing to be rebutted. Similarly, in *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1975), defendants' objection to plaintiff's counsel was that an attorney representing various of the defendants in other litigation was a partner in plaintiff's counsel's law firm. (Here, no concurrent representation exists.)

Other of plaintiff's cases address the same dilemma – inapplicable here – of concurrent or related representation of the complaining party's counsel. *See* Bd. of Educ. v. Nyquist, 590 F.2d 1241 (2d Cir. 1979) (no disqualification even though counsel to male physical education teacher defendants also served as union counsel for the objecting female physical education teacher defendants); *Murray v. Metro Life Co.*, 583 F.3d 173, 177-78 (2d Cir. 2009) (no disqualification even though plaintiff policyholders objected on ground that defendants' law firm previously

acted as counsel to insurance company's demutualization whereby the law firm stood as counsel for the plaintiff policyholders as well).

The only cases plaintiff here cites where the complaining party was *not* a client with an attorney-client relationship at risk are S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp., 69 N.Y.2d 437, 515 N.Y.S.2d 735 (1987), and Skiff-Murray v. Murray, 3 A.D.3d 610, 771 N.Y.S.2d 230 (3d Dep't 2004), both involving the advocate-witness rule. In *S & S Hotel*, defendant sought to disqualify plaintiff's law firm, for trial purposes, on the ground that two of the firm's transactional counsel were involved with underlying transactions and were potential witnesses. The New York Court of Appeals rejected disqualification, noting the movant's high burden and recognizing that the supposed testimony was neither material nor necessary, especially as the agreements could be interpreted as a matter of law, making intent irrelevant. And in *Skiff-Murray*, the court ordered disqualification under the advocate-witness rule only because plaintiff needed the attorney to testify to prove her case. Here, by contrast, the allegedly conflicted attorney – Mr. Graifman – represents the other parties' prior litigation attorney, Anthony Novella, who has no case to prove and needs no attorney testimony to proffer the lease and surety agreements to disprove plaintiff's case, especially as this case will likely to be dismissed on the pleading, making the motion premature as well.[11]

Even though various cases plaintiff cites present more compelling facts than here, *e.g.*, *Hempstead*, *Nyquist*, *Murray*, and *S & S Hotel*, disqualification was rejected.

---

[11]    *United States v. Locascio,* 6 F.3d 924 (2d Cir. 1993), a criminal case plaintiff cites, is inapplicable as such cases involve considerations commanding more protective oversight than in civil cases, to assure fairness of the proceeding and circumvent defendants from challenging convictions.

**E.**     **Plaintiff's Motion is Premature**

Finally, and alternatively, plaintiff's motion is woefully premature. The time for answering or moving as against the complaint has not yet occurred, at last check the third defendant has not yet been served, and the initial conference has yet to be held. The motion thus may be denied on this basis alone. *See, e.g.*, *Mahn, supra*, 2025 LX 21284 at *16; *Cassini, supra,* 2023 U.S. Dist. LEXIS 189089, at *10 & *12-*13.

## CONCLUSION

Plaintiff's motion for disqualification should be denied as meritless and/or premature.

Dated:  New York, New York
         February 9, 2026

By: _____/s *Brian D. Graifman*_____
                 Brian D. Graifman
                 BORAH, GOLDSTEIN, NAHINS &
                 GOIDEL, P.C.
                    377 Broadway
                    New York, New York 10013
                    (212) 431-1300 x322
                    bgraifman@borahgoldstein.com
                 *Attorney for Defendant Anthony J. Novella*