UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN BLECHER<br><br>               Plaintiff,<br><br>v.<br><br>MATTHEW S. GOLDBERG; ANTHONY J. NOVELLA; and RONALD TANG,<br><br>               Defendants. | Case No.: 1:25-CV-10341<br><br>**AFFIRMATION OF MATTHEW S. GOLDBERG** |

1. I am the Director of leasing for William Moses Co. Inc., managing agent for Van Dorn Holdings LLC ("Van Dorn"), the owner of 150 West 58th Street, New York, New York (the "Building") and affiliate of WAM Equity Partners LLC, the latter of which is itself an affiliate of William Moses Co. Inc. and co-managing agent of the building.

2. Plaintiff Jonathan Blecher is the former tenant of Unit 10-D in the Building (the "Subject Premises") pursuant to a written lease agreement between Plaintiff and Van Dorn, dated October 11, 2024 (the "Lease"), for a term commencing November 1, 2024, and expiring October 31, 2025 (the "Term"), at a monthly rent of $4,100.00. Plaintiff was approved for early use and occupancy beginning on October 25, 2025. There is no dispute that the Lease is between Plaintiff and Van Dorn. A copy of the Lease is annexed hereto as Exhibit A.

3. As of the lease signing date, Plaintiff was a putative recent law school graduate with no verified employment history. As such, Plaintiff did not independently meet Van Dorn's qualifications for approval of the Lease. In lieu of requiring a guarantor, co-Defendant Van Dorn Holdings required that Plaintiff obtain a lease rental bond (the "Lease Rental

Bond"), in an amount equal to three (3) months' rent ($4,100.00 x 3 = $12,300.00). Plaintiff procured the Lease Rental Bond through co-defendant GuarantR, Inc. d/b/a TheGuarantors (hereinafter, the "Guarantors").

4. Plaintiff was issued a rebate by the Landlord in the amount of $3,164.62 for the monies paid to the Guarantors as good faith to avoid extra out of pocket costs to Plaintiff to secure the Bond. The Landlord had the right to recoup this rebate if Plaintiff violated the terms of his lease.

5. The Guarantors are a third-party entity wholly unrelated to the Van Dorn Defendants, with no commonality of ownership, agency, or control amongst and between them. The Guarantors facilitate(s) procurement of lease rental bonds for tenants such as Plaintiff in lieu of a personal guaranty. The Lease Rental Bond here, like all lease rental bonds, protects landlords (here, Van Dorn) from losses resulting from, among other things: a tenant's non-payment of rent, abandonment/vacating prior to expiration of the term, and/or termination of a lease prior to expiration of the term, etc. The surety of the Lease Rental Bond is Trisura Insurance Company (the "Surety"), which is operated by The Guarantors. A copy of the Lease Rental Bond, along with its "General Terms & Conditions," is annexed hereto as Exhibit B.

6. On November 14, 2024, I was contacted by Detective Uske of the NYPD Major Case Intelligence Team, within the NYPD Intelligence Division, and later by an Assistant District Attorney from the Rackets Bureau at the New York County District Attorney's Office, regarding an ongoing criminal investigation that I later learned concerned the Plaintiff. Shortly thereafter, I received a subpoena from the Rackets Bureau requesting information relating to all tenant information. It was later clarified to provide

information specifically for apartment #10D where the plaintiff was currently a tenant in the building. I personally compiled and oversaw the production of documents and other information in Van Dorn's possession in response to that subpoena, as legally required.

7. True and accurate copies of the emails I personally exchanged with Plaintiff, starting with Plaintiff's email on February 23, 2025, at 9:26 a.m., are collectively annexed hereto as Exhibit C.

8. On February 23, 2025, at 9:26 a.m., Plaintiff sent an email to a co-worker and myself, informing us that he "got laid off," he "bought a ticket to Canada today," and he "can no longer continue renting the Premises." *See Exhibit C.*

9. The same day, at 9:54 a.m., with the permission of my management, I responded via email and proposed a possible "mutual termination agreement" with conditions including but not limited to: (i) Van Dorn must retain Plaintiff's security deposit of $4,100.00, "to offset losses tied to the remainder of your current lease"; and (ii) Plaintiff would return his keys to the Subject Premises to the front desk of the Building (none of these terms precluded the company's right to, pursuant to the surety bond from "The Guarantors," to offset any additional losses sustained by Plaintiff's early vacatur. I was directed by my management to propose this mutual termination offer to Plaintiff. *Id.*

10. At 9:56 a.m., Plaintiff relinquished his security deposit and promised to return his keys to the Subject Premises. *Id.*

11. At 10:15 a.m., I explained to Plaintiff that management would change the locks for the purpose of securing and showing the space to prospective tenants, for Van Dorn to mitigate its damages resulting from Plaintiff's abrupt vacatur. *Id.*

12. At 10:45 a.m., Plaintiff confirmed he would return the keys "for sure." *Id.*

13. Plaintiff did not return to the Subject Premises, ever. Plaintiff did not return the keys to the Subject Premises, ever. Plaintiff did not vacate the Subject Premises in broom-clean condition as required by the Lease. Plaintiff most certainly did not heed any arrangement contemplated by the February 23, 2025 emails. Plaintiff simply and abruptly abandoned the Subject Premises on mere hours' notice with approximately nine (9) months remaining in the Lease Term.

14. An inspection of the apartment on the following day revealed that Plaintiff left personal belongings behind in the Subject Premises, including clothing, food, furniture, toiletries, and appliances, etc. These items had to be removed and the removal costs were incurred by Van Dorn. In addition, Plaintiff caused damage to the premises requiring re-painting and replastering.

15. Section 8 of the Lease makes clear that the manner and condition in which Plaintiff abandoned the Subject Premises is the equivalent of never having vacated in the first instance. *See Exhibit A.*

16. Plaintiff's abrupt abandonment is a material breach of Section 16 of the Lease. *See Exhibit A.*

17. Section 17 of the Lease delineates Van Dorn's remedies for Plaintiff's material breach(es). *See Exhibit A.*

18. Van Dorn was left to absorb the costs of removing/discarding Plaintiff's belongings, in addition to costs incurred getting the Subject Premises ready for a new tenant (i.e., painting and plastering). Van Dorn did not collect March 2025 rent of $4,100.00 because of Plaintiff's abrupt abandonment. Van Dorn was and is well within its rights to retain Plaintiff's security deposit under Section 4 of the Lease. Unfortunately, Plaintiff's

$4,100.00 security deposit did not fully offset Van Dorn's damages caused by Plaintiff's abandonment.

19. Accordingly, On March 4, 2025, Van Dorn submitted a $4,100.00 claim under the $12,300.00 Lease Rental Bond to recoup the balance of its losses not covered by the security deposit. Van Dorn's $4,100.00 claim was approved by the Surety on or about March 25, 2025. Van Dorn was, in fact, reimbursed by the Surety for said amount. Again, the Lease Rental Bond covers damages up to $12,300.00 (equal to three (3) months' rent); however, Van Dorn only submitted a claim for $4,100.00 because, among other things, it successfully mitigated its damages by getting the Subject Premises fit up for a new tenant for a term which commenced April 1, 2025.

20. The Surety approved Van Dorn's claim. Upon information and belief, The Surety, as a gesture of goodwill and to curb Plaintiff's aggressive communications, waived its right of collection against Plaintiff under the Indemnity Agreement for the $4,100.00 it paid out on Van Dorn's claim, it would not pursue Plaintiff for same. As such, Plaintiff has suffered exactly $0.00 in damages.

21. Plaintiff subsequently commenced a New York state court action (Index No. 160971/2025) against The Guarantors. On September 15, 2025, Plaintiff amended the complaint to add WAM Partners, Meurice Equity Partners, Van Dorn Holdings, and William Moses Co. Inc., alleging Class Action Allegations, Breach of Contract, Fraud, Civil Conspiracy to Commit Fraud, Unjust Enrichment, and Violation of New York GBL §349.

22. On approximately December 30, 2025, I was served with a federal complaint naming myself, Ronald Tang of The Guarantors, and Anthony Novella of Borah, Goldstein,

Altschuler, Nahins & Goidel, P.C. Plaintiff alleges, in addition to supplemental state law claims, violations of RICO and conspiracy to commit RICO.

23. All claims are unfounded and I respectfully request that the complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

24. In addition to failing to properly state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the state and federal claims are sufficiently parallel to warrant dismissal under the Supreme Court's *Colorado River* Abstention analysis and New York State Law CPLR CPLR 3211(a)(4).

25. The parties in each substantially similar, indicating that the two cases are parallel:

| Plaintiff's New York State Complaint | Plaintiff's S.D.N.Y. Federal Complaint |
|---|---|
| **Parties:** | **Parties:** |
| Plaintiff: Jonathan Blecher | Plaintiff: Jonathan Blecher |
| Defendants: WAM Equity Partners, LLC; WAM Partners; Van Dorn Holdings LLC; William Moses Co. Inc.; The Guarantors | Defendants: Matthew Goldberg (Employee of William Moses Co."WAM"); Ronald Tang (Employee of The Guarantors); and Anthony Novella. |

26. The underlying facts alleged by Plaintiff in each case are the same or substantially similar, indicating that the two cases are parallel:

   a. Facts Alleged Regarding the Tenancy:

      i. Jonathan Blecher was a tenant of Apartment 10-D at 150 West 58th Street, New York, New York.

    ii. The apartment was owned and/or managed by WAM-related entities, including WAM Equity Partners, Van Dorn Holdings LLC, and William Moses Co.

b. Facts Alleged Regarding the Lease Termination:

    i. On or about February 23, 2025, Blecher and WAM, through Matthew Goldberg, entered into a mutual lease termination agreement.

    ii. The termination agreement was formed through written and email communications.

    iii. Under the termination agreement, WAM retained Blecher's security deposit as consideration.

    iv. The agreement stated that Blecher's lease obligations would cease upon termination.

    v. Blecher vacated the apartment and surrendered possession on or before February 23, 2025.

    vi. WAM took possession of the apartment after Blecher vacated and intended to re-market or re-rent the unit.

c. Facts Alleged Regarding Insurance Coverage:

    i. Blecher maintained a rental insurance or lease surety policy with The Guarantors.

    ii. After the termination, WAM submitted a claim to The Guarantors alleging a lease default.

    iii. The claim sought payment for costs due after the lease termination.

    iv. The Guarantors paid the claim and thereafter sought reimbursement from Blecher.

    v. Blecher disputed the claim and provided The Guarantors with a copy of the termination agreement.

    vi. After the initial claim, WAM produced a receipt or invoice for post-termination charges, including "paint and plaster" and "turnover costs."

WHEREFORE, for the foregoing reasons, I respectfully request that the Motion to Dismiss be granted in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 17, 2025

By: /s/ Matthew S. Goldberg