**ANDERSON KILL P.C.**
Jeremy Shockett, Esq.
Jason Kosek, Esq.
Anderson Kill P.C.
7 Times Square, 15th Floor
New York, NY 10036
Telephone:  212.278.1000
*Attorneys for Defendant Matthew S. Goldberg*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN BLECHER<br><br>               Plaintiff,<br><br>    v.<br><br>MATTHEW S. GOLDBERG; ANTHONY J.<br>NOVELLA; and RONALD TANG,<br><br>               Defendants. | Case No.: 1:25-CV-10341 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND ................................................................................................ 1

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT ................................................................................................................... 4

      A.     DISMISSAL OF THIS CASE IS WARRANTED BASED ON THE *COLORADO RIVER* ABSTENTION DOCTRINE AND NEW YORK STATE LAW ................................................................................................................. 4

      B.     DEFENDANT GOLDBERG DID NOT COMMIT A RICO VIOLATION .......... 7

      C.     The Defendant's Alleged Acts Do Not Amount to Conduct in Furtherance of a RICO Enterprise ............................................................................................... 8

      D.     The Complaint Fails to Allege a Coherent Enterprise Structure ........................ 9

      E.     The Complaint Fails to Assert a Pattern of Racketeering Activity ................... 10

      F.     DEFENDANT GOLDBERG DID NOT PARTICIPATE IN A CONSPIRACY TO VIOLATE RICO ..................................................................................... 15

      G.     DEFENDANT GOLDBERG DID NOT COMMIT FRAUDULENT INDUCEMENT ......................................................................................... 17

      H.     DEFENDANT GOLDBERG DID NOT COMMIT A BREACH OF THE IMPLIED WARRANTY OF AUTHORITY ..................................................... 19

      I.     DEFENDANT GOLDBERG DID NOT ENGAGE IN DEFAMATION AND DEFAMATION PER SE ............................................................................... 21

            1.     Alleged 'Financial Smear' ........................................................................ 22

            2.     Alleged 'Criminal Smear' and 'Vindictive Litigation Smear' ................. 23

            3.     Alleged 'Professional Incompetence Smear' ........................................... 25

CONCLUSION ............................................................................................................... 26

i

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*1567 56th Street, LLC v. Spitzer,*
  774 F. Supp. 3d 476 (E.D.N.Y. 2025) ...................................................9

*225 Broadway Co. v. Sheridan,*
  No. 85 Civ. 9231 (GLG), 1986 WL 5162 (S.D.N.Y. Apr. 30, 1986) ......................14

*A. Terzi Productions, Inc. v. Theatrical Protective Union,*
  2 F.Supp.2d 485 (S.D.N.Y. 1998) ...................................................13

*Alanthus Corp. v. Travellers Ins. Co.,*
  92 A.D.2d 830 (1st Dep't 1983) ...................................................23

*Alvarez & Marshal Valuation Services, LLC v. Solar Eclipse Inv. Fund III, LLC,*
  216 A.D.3d 447 (1st Dep't 2023) ...................................................6

*Arar v. Ashcroft,*
  585 F.3d 559 (2d Cir. 2009), *cert. den.* 130 S.Ct. 3409 (2010) .......................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................4

*Black v. Ganieva,*
  619 F. Supp. 3d 309 (S.D.N.Y 2022) ...................................................9

*Blecher v. WAM Equity Partners, LLC,*
  No. 160971/2025 (N.Y. Sup. Ct. N.Y. Cnty.) (Complaint filed October 10,
  2025) ...................................................3

*CCM Rochester, Inc. v. Federated Investors, Inc.,*
  234 F. Supp. 3d 501 (S.D.N.Y. 2017) ...................................................17

*City of New York v. LaserShip, Inc.,*
  33 F. Supp. 3d 303 (S.D.N.Y. 2014) ...................................................8

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976) ...................................................4, 5, 7

*Conte v. Newsday, Inc.,*
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................10

Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473 (2d Cir. 2014) ......................12

*Cruz v. Marchetto,*
  No. 11 CIV. 8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012) .............................22

Field Code Changed

ii

**TABLE OF AUTHORITIES**
*(Continued)*

Page(s)

*Dalzell Management Co., Inc. v. Bardonia Plaza, LLC,*
   923 F.Supp.2d 590 (S.D.N.Y 2013)................................................................5

*DePetris & Bachrach, LLP v. Srour,*
   71 A.D.3d 460 (1st Dep't 2010) ................................................................20

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
   492 U.S. 229 (1989).................................................................................10, 11

*Harriss v. Tams,*
   258 N.Y. 229 (N.Y. 1932) ......................................................................19, 20

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996)..............................................................7

*Kamchi v Weissman, 125 AD3d 142, 156 (2d Dept 2014)…............................21*

*Lateral Recovery LLC v. Queen Funding, LLC,*
   2022 WL 2829913 No. 20-CV-5303, 2022 WL 17826653 (SE.D.N.Y. DecJul.
   201, 2022) .................................................................................................12

*Lynch v. City of New York,*
   952 F.3d 67 (2d Cir. 2020).......................................................................4

*Mathon v. Feldstein,*
   303 F.Supp.2d 317 (E.D.N.Y. 2004) ......................................................12

*Miranda v. Ponce Fed. Bank,*
   948 F.2d 41 (1st Cir. 1991) ......................................................................7

*Mochary v. Bergstein,*
   42 F.4th 80 (2d Cir. 2022) ........................................................................5

*Moore v. PaineWebber, Inc.,*
   189 F.3d 165 (2d Cir. 1999)......................................................................8

*New York State Catholic Health Plan, Inc. v. Academy O & P Assocs.,*
   312 F.R.D. 278 (E.D.N.Y. 2015)..............................................................12

*Piccirilli v. Benjamin,*
   209 N.Y.S.3d 653 (N.Y. App. Div. 2024) ...............................................17

*PK Rest., LLC v. Lifshutz,*
   138 A.D.3d 434 (1st Dep't 2016) .............................................................6

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
   30 F.3d 339 (2d Cir. 1994).......................................................................10

iii

**TABLE OF AUTHORITIES**
*(Continued)*

**Page(s)**

*Santos v. Kimmel*,
    745 F. Supp. 3d 153 (S.D.N.Y. 2024)................................................................17

*Shah v. RBC Capital Markets LLC*,
    115 A.D.3d 444 (1st Dep't 2014) ....................................................................6

*Stepanov v. Dow Jones & Co.*,
    987 N.Y.S.2d 37 (N.Y. App. Div. 2014) ..........................................................22

*TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*,
    760 F. Supp. 3d 87 (S.D.N.Y. 2024)..................................................................5

*Terrell v. Eisner*,
    104 F. App'x 210 (2d Cir. 2004) .......................................................................7

*TRB Acquisitions LLC v. Yedid*,
    215 A.D.3d 40 (N.Y. App. Div. 2023) ............................................................24

*Turner v. New York Rosbruch/Harnik, Inc.*,
    84 F.Supp.3d 161 (E.D.N.Y. 2015) ..................................................................8

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989)..........................................................................11

*United States v. Zemlyansky*,
    908 F.3d 1 (2d Cir. 2018).................................................................................15

*Unlimited Cellular, Inc. v. Red Points Solutions SL*,
    677 F.Supp.3d 186 (S.D.N.Y. 2023)...............................................................22

*Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*,
    568 N.Y.S.2d 84 (N.Y. App. Div. 1991) .........................................................21

*Wiltz v. New York Univ.*,
    No. 19 Civ. 3406 (GHW)(SDA), 2019 WL 8437456 (S.D.N.Y. Dec. 23, 2019)....................14

*Youmans v. Smith*,
    153 N.Y. 214 (N.Y. 1897) ...............................................................................24

**Statutes**

18 U.S.C. § 1343 ...................................................................................................12

18 U.S.C. § 1961(4) ...............................................................................................9

18 U.S.C. § 1961(5) ...............................................................................................10

Misc.3d 315 (N.Y. Sup. Ct. 2014) .........................................................................21

N.Y. JUDICIARY LAW §487...............................................................................25

**TABLE OF AUTHORITIES**
*(Continued)*

**Page(s)**

Predicate Act 4 ...................................................................................................................13

Predicate Act 5 ...................................................................................................................14

Racketeer Influenced and Corrupt Organizations Act ........................................................7

RICO ........................................................................................................................... *passim*

RICO Section 1962 .......................................................................................................7, 10

**Other Authorities**

CPLR 3013 and 3016(a) .....................................................................................................23

CPLR 3016(a) .....................................................................................................................21

CPLR 3211(a)(4) ..............................................................................................................6, 7

Federal Rule of Civil Procedure 9(b)'s ...............................................................................8

Federal Rule of Civil Procedure 12(b)(6) .......................................................................3, 4

v

In lieu of an answer, Defendant Matthew S. Goldberg, through his undersigned attorneys, respectfully submits this Memorandum of Law in support of his Motion to Dismiss Plaintiff Jonathan Blecher's Complaint.

## FACTUAL BACKGROUND

The underlying facts are set forth in the accompanying Affirmation of Defendant Matthew S. Goldberg.

This case arises from a straightforward landlord-tenant dispute. On October 11, 2024, Plaintiff entered into a one-year residential lease agreement to rent an apartment from WAM Entities ("WAM" or "The Landlord"), for $4,100 per month. Goldberg Aff. ¶2. As a condition of the lease, Plaintiff was required to provide a security deposit in the amount of one month's rent and obtain a surety bond through The Guarantors in the amount of $12,300.00 equivalent to three months rent.  Goldberg Aff. ¶3.   Plaintiff executed the lease and moved into the subject apartment on October 25, 2025. Goldberg Aff. ¶2.

On November 14, 2024, Matthew S. Goldberg ("Goldberg"), an employee of WAM Entities, was contacted by Detective Jon Uske of the New York City Police Department, Major Case Intelligence Division. Goldberg Aff. ¶6. Detective Uske advised that a potentially dangerous individual was believed to be residing in one of the Landlord's properties and Detective Uske informed Goldberg that you "don't want living in your building." Goldberg Aff. ¶6. The Rackets Bureau of the New York County District Attorney's Office subsequently issued a subpoena to Goldberg for tenant information regarding the individual referred to by Detective Uske. Goldberg Aff. ¶6. Goldberg complied with the subpoena. Goldberg Aff. ¶6. It was later confirmed that Plaintiff, Jonathan Blecher, was the tenant under investigation by the Rackets

Bureau. Goldberg Aff. ¶6. Plaintiff's self-serving representations that he was never under investigation and that he is an upstanding citizen are directly refuted by the facts.

Within only 3 months of the instant lease signing, on February 23, 2025, Plaintiff sent an email communication to Goldberg, stating that he had been laid off from his job, had purchased a plane ticket to Canada, and would no longer continue the tenancy. Goldberg Aff. ¶8; Plaintiff's Declaration ¶53. In response, Defendant Goldberg agreed to end Plaintiff's lease in exchange for the retention of his $4,100 security deposit. Plaintiff agreed to this arrangement. Goldberg Aff. ¶9.

The following day, it was discovered, through an inspection of the apartment, that the Plaintiff violated his lease agreement by abandoning the apartment with his personal belongings and furniture inside. Goldberg Aff. ¶14. Additionally, the apartment required re-plastering, re-painting, and a deep cleaning. Goldberg Aff. ¶14. Plaintiff left all of his furniture and created a mess in his abandoned apartment. The Landlord made considerable efforts to restore the apartment to a rentable condition. Goldberg Aff. ¶18.

On March 4, 2025, Defendant Goldberg, on behalf of WAM, filed an insurance claim with The Guarantors in the amount of $4,100. This claim was approved and paid by The Guarantors on or about March 25, 2025. Goldberg Aff. ¶19.

Although The Guarantors initially sought to recover the $4,100 from Plaintiff, it ultimately waived that claim in response to Plaintiff's aggressive tactics. Goldberg Aff. ¶20. Despite having suffered no financial loss, Plaintiff commenced an action in New York State Court (Index No. 160971/2025) ("State Court Action") against The Guarantors. Goldberg Aff. ¶21. On September 15, 2025, Plaintiff amended the complaint to add WAM Partners, Meurice Equity Partners, Van Dorn Holdings, and William Moses Co. Inc. (Collectively, the "WAM

Entities"), alleging vague, palpably improper, and frivolous Class Action Allegations, Breach of Contract, Fraud, Civil Conspiracy to Commit Fraud, Unjust Enrichment, and Violation of New York GBL §349. Goldberg Aff. ¶21; *Blecher v. WAM Equity Partners, LLC*, No. 160971/2025 (N.Y. Sup. Ct. N.Y. Cnty.) (Complaint filed October 10, 2025).

On approximately December 30, 2025, Goldberg was served with this federal complaint naming himself, Ronald Tang of The Guarantors, and Anthony Novella of Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. arising out of the same factual nexus in the State Court Action. Goldberg Aff. ¶22. Plaintiff alleges, in addition to supplemental state law claims, violations of RICO and conspiracy to commit RICO.  All claims are unfounded and Defendant Goldberg respectfully requests the complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff purports to have a "smoking gun," an April 7, 2025 invoice showing work done on the subject apartment, after Plaintiff vacated, to prepare it for the next rental.  Plaintiff alleges, without evidence, that this invoice was fraudulently created by defendants.  *See* Plaintiff's Complaint ¶38. Plaintiff's "smoking gun" allegation misfires spectacularly. It betrays nothing more than a fundamental misunderstanding of how invoices function in the commercial world. An invoice memorializes work already performed; it does not establish when that work occurred. That the invoice bears a date of April 7, 2025, tells us only when the document was generated, not when the underlying services were rendered. Plaintiff offers no logic, no evidence, no reason whatsoever to support his bald assertion that the work was not performed before April 1, 2025.

This blunder is emblematic of a Complaint riddled with factual vacuity and legal incompetence, a blunderbuss approach untethered to reality or reason. Such reckless pleading warrants significant sanctions.

3

## LEGAL STANDARD

On a motion to dismiss, a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must contain sufficient factual matter, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Lynch v. City of New York,* 952 F.3d 67, 75 (2d Cir. 2020). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Lynch*, 952 F.3d at 75.

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The reviewing court is required to accept all well-pleaded factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 679; *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009), *cert. den.* 130 S.Ct. 3409 (2010). And the court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar*, 585 F.3d at 567, *Lynch*, 952 F.3d at 75.

## ARGUMENT

**A.    DISMISSAL OF THIS CASE IS WARRANTED BASED ON THE *COLORADO RIVER* ABSTENTION DOCTRINE AND NEW YORK STATE LAW**

In accordance with the *Colorado River* abstention doctrine and New York State law, the Court should dismiss this case as it is parallel to the previously filed and still pending State Court Action.

4

Plaintiff preemptively argues that abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), is unwarranted because this action is purportedly distinct from the pending State Court Action. Complaint ¶4. The Plaintiff is wrong on the facts and the law.  In *Colorado River*, the Supreme Court established that federal courts may abstain from exercising jurisdiction when parallel state proceedings exist. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

Concurrent state court litigation is "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022). The proceedings must be "essentially the same," meaning "there is an identity of parties, and the issues and relief sought are the same." *TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*, 760 F. Supp. 3d 87, 93 (S.D.N.Y. 2024) (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)).  However, "perfect symmetry of parties and issues is not required." *Dalzell Management Co., Inc. v. Bardonia Plaza, LLC*, 923 F.Supp.2d 590 (S.D.N.Y 2013).  Moreover, "resolution of the state action must dispose all claims presented in the federal case." *Id.* at 150 (quoting *DRR Contr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 644 (S.D.N.Y. 2011)) (emphasis in original).

Abstention is appropriate where, as here, the federal action is parallel to an ongoing state proceeding.  Here, there is undoubtedly symmetry between the parties. The individuals named in the Federal action are agents of the corporate entities named in the State Court Action (except for attorney Novella, who acted as counsel to some of the parties) and their actions, as alleged by Plaintiff, were all putatively committed while acting in their respective capacities for the same corporate entities.  Plaintiff's argument that the parties are different is nonsensical, and not grounded in reality, like most of his claims. As such, the first prong of identity of parties is

clearly met. Here, the resolution of the State Court Action disposes of all claims in this Federal

case, because it will be found that the defendants in the State Court Action did nothing wrong,

thereby precluding liability against the defendants in this action. The State Court Action arises

out of the same lease agreement, same abandonment of the apartment, same breaking of the lease

agreement, and same alleged damages. Permitting parallel proceedings would result in

duplicative litigation, waste judicial resources, and create a substantial risk of inconsistent

outcomes.  Plaintiff attempts to avoid this result by naming employees instead of the entities in a

transparent ploy to distinguish the parties in the State and Federal matters.

Additionally, New York law supports dismissal. CPLR 3211(a)(4) authorizes dismissal,

or "such order as justice requires," where "there is another action pending between the same

parties for the same cause of action." Courts are afforded broad discretion under CPLR

3211(a)(4), and dismissal is appropriate where substantially the same claims are asserted under

the same agreements, thereby presenting a risk of inconsistent judgments. *Alvarez & Marshal*

*Valuation Services, LLC v. Solar Eclipse Inv. Fund III, LLC*, 216 A.D.3d 447, 448 (1st Dep't

2023). Dismissal is warranted where actions arise out of the same subject matter or series of

alleged wrongs, and it is immaterial that different legal theories are advanced in each case. *Shah*

*v. RBC Capital Markets LLC*, 115 A.D.3d 444, 445 (1st Dep't 2014). The critical inquiry is

whether both suits arise from the same subject matter or series of alleged wrongs. *PK Rest., LLC*

*v. Lifshutz*, 138 A.D.3d 434, 436 (1st Dep't 2016).

This Federal action is parallel to the State Court Action, the parties are the same (except

for attorney Novella, who acted as counsel to some of the parties), the underlying facts are the

same, and the underlying transaction is the same.  Plaintiff's phantom damages are the same.

6

Therefore, dismissal is warranted under both the *Colorado River* abstention doctrine and CPLR 3211(a)(4).

    **B.**    **DEFENDANT GOLDBERG DID NOT COMMIT A RICO VIOLATION**

Plaintiff alleges a violation of The Racketeer Influenced and Corrupt Organizations Act ("RICO") as to all Defendants.

Because civil RICO claims can impose harsh and debilitating damages, courts should carefully scrutinize such claims at the pleading stage and root out meritless claims. "Civil RICO is an unusually potent weapon--the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Because the 'mere assertion of a RICO claim... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal citations omitted).

Section 1962 of the RICO Act outlaws (a) the use of income "derived…from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern of racketeering activity;" (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity;" and (d) conspiring to do any of the foregoing. 18 USCA § 1962. To allege a RICO violation pursuant to §1962(c), a plaintiff "must allege each of the claim's elements, including (1) conduct, (2) of an enterprise, (3) through a pattern of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Terrell v. Eisner*, 104 F. App'x 210 (2d Cir. 2004).

RICO claims based on fraud predicates such as mail fraud or wire fraud must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999). This requires pleading the circumstances constituting fraud with particularity, including the who, what, when, where, and how of the alleged fraudulent conduct. *Turner v. New York Rosbruch/Harnik, Inc.*, 84 F.Supp.3d 161 (E.D.N.Y. 2015).

C.    **The Defendant's Alleged Acts Do Not Amount to Conduct in Furtherance of a RICO Enterprise**

The test for determining whether conduct constitutes participation in an enterprise does not require primary responsibility for the enterprise's affairs or a formal position within the enterprise. Rather, it requires only that the defendant have "some part in directing the enterprise's affairs." *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2014).

Plaintiff attempts to characterize the Defendants' conduct as actions taken in furtherance of a RICO enterprise. However, Plaintiff fails to allege the existence of a distinct RICO enterprise separate and apart from the individual defendants. Goldberg, Tang, and Novella were merely performing their ordinary professional roles as property manager, claims processor, and attorney, respectively; not operating or managing a criminal enterprise. Their alleged conduct reflects routine business practices arising from a landlord–tenant dispute. Plaintiff's use of colorful labels, such as "ringleader," "enforcer," and "consigliere," does not transform ordinary business or legal activity into racketeering conduct. Rather, these derogatory slurs require sanctions.

8

With respect to Defendant Goldberg, Plaintiff alleges that he "directed the scheme" by negotiating a purportedly fraudulent lease termination[1], authorizing a so-called "double-dip" insurance claim, and "manufacturing" false narratives regarding furniture and paint to justify theft. Complaint ¶156. These allegations are conclusory and unsupported by facts. Goldberg, as an employee of WAM, was granted permission by his management to agree to a mutual lease termination after Plaintiff informed him that he would no longer continue the tenancy. Goldberg submitted a claim to The Guarantors after Plaintiff prematurely forfeited the lease, consistent with the lease terms. Finally, the receipts relating to abandoned furniture and paint accurately reflected the remedial work required after Plaintiff vacated the apartment and left the unit in damaged and unrentable condition.

Accordingly, Plaintiff fails to plausibly allege that Goldberg engaged in conduct in furtherance of a RICO enterprise.

### D.    The Complaint Fails to Allege a Coherent Enterprise Structure

Section 1961(4) defines an "enterprise" to "include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To satisfy the enterprise requirement, a plaintiff must allege either a formal legal entity or an association-in-fact that functions as a continuing unit with a common structure and purpose. *1567 56th Street, LLC v. Spitzer*, 774 F. Supp. 3d 476 (E.D.N.Y. 2025). Critically, the alleged enterprise must share a common purpose that extends beyond the mere commission of the predicate acts themselves. *Black v. Ganieva*, 619 F. Supp. 3d 309 (S.D.N.Y 2022).

---

[1] However, according to other allegations, the mutual lease termination was negotiated and agreed upon, yet Plaintiff somehow claims that the mutual lease termination was fraudulent. Plaintiff needs to get a better grasp on his own allegations before bringing this frivolous action.

Courts have consistently emphasized that the RICO "enterprise" must be distinct from the RICO "person." In other words, the enterprise may not consist solely of the named defendants themselves. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010).

The Complaint fails to plead a RICO enterprise that is distinct from the defendants themselves. The factual allegations demonstrate only that the defendants acted within the scope of their ordinary professional roles. Goldberg acted solely as a principal of the WAM entities, Tang as an employee of The Guarantors, and Novella as legal counsel for the WAM entities. Such allegations do not establish participation in a separate enterprise but instead describe routine corporate and professional conduct.

This pleading improperly attempts to circumvent RICO's distinctness requirement by repackaging ordinary business relationships as an enterprise. Because the Complaint fails to allege a RICO enterprise that is meaningfully distinct from the defendants themselves, it does not satisfy the enterprise element of § 1962.

**E.      The Complaint Fails to Assert a Pattern of Racketeering Activity**

Section 1961(5) requires that a "pattern of racketeering activity" consist of "at least two acts of racketeering activity, one of which occurring after the effective date of this chapter and the last of which occurring within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

To establish a pattern, a plaintiff must plausibly allege both relatedness among the predicate acts and continuity of the racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).

10

Predicate acts are related when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* Interrelatedness may be shown through "temporal proximity, common goals, similarity of methods, or repetition." *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

Continuity may be established through either closed-ended or open-ended continuity. Closed-ended continuity requires a "closed period of repeated conduct" extending over a substantial period of time. *H.J. Inc.*, 492 U.S. at 241–42. Open-ended continuity, by contrast, requires allegations that the racketeering activity, "by its nature, projects into the future with a threat of repetition." *Id.* Predicate acts extending over only a few weeks or months, and posing no threat of future criminal conduct, are insufficient to satisfy the continuity requirement. *Id.* Here, the predicate acts occur over one month, and are not examples of wire fraud, instead they are examples of Plaintiff's lack of real-world experience.

The alleged "predicate acts" committed by Goldberg amount to nothing more than routine business communications arising from a standard landlord-tenant dispute. The alleged "shifting justifications" for Plaintiff's debt do not constitute a "predicate act" for the purposes of establishing racketeering activity; at most, they reflect the ordinary evolution of a commercial dispute as additional information becomes available. Nor does an agreement to mutually terminate a lease, or the filing of an insurance claim after the Plaintiff prematurely abandoned the lease, constitute racketeering activity. At most, the wire fraud allegations describe commonplace actions taken in response to a breach of a lease contract, not a scheme to defraud.

Wire fraud constitutes racketeering activity under RICO when three elements are satisfied: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3)

use of interstate wires to further the scheme." 18 U.S.C. § 1343; *Lateral Recovery LLC v. Queen Funding, LLC*, 2022 WL 2829913 No. 20-CV-5303, 2022 WL 17826653 (ES.D.N.Y. Dec. 21Jul. 20, 2022)[2]. The Second Circuit has confirmed that "racketeering activity, as defined in RICO, may consist of any of a number of criminal offenses, including wire fraud in violation of 18 U.S.C. § 1343." *New York State Catholic Health Plan, Inc. v. Academy O & P Assocs.*, 312 F.R.D. 278, 281 (E.D.N.Y. 2015).*citing to Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473 (2d Cir. 2014).*[3]

Here, Plaintiff's alleged example of wire fraud as to Defendant Goldberg is: "On February 23, 2025, Defendant Goldberg transmitted an email via interstate wire offering a 'mutual termination.'" Complaint ¶103. Agreeing to a mutual termination is not a scheme to defraud, it was an agreement based on Plaintiff's own request to terminate the lease. This is plainly not a predicate act, nor an example of wire fraud. In fact, Goldberg's email response was good business practice and necessary to respond to a tenant who was immediately requesting to terminate a binding lease.

Next, Plaintiff alleges the following predicate act: "On March 24, 2025, Defendant Goldberg caused the transmission of a fraudulent digital insurance claim to The Guarantors, falsely asserting "default" to trigger a $4,100 payout." Complaint ¶104. This conclusory allegation meets none of the requirements to be deemed an example of wire fraud. The Court cannot guess what was falsely asserted. In *Mathon v. Feldstein*, the Eastern District of New York held that, "to plead wire fraud with particularity required under rules of civil procedure, plaintiff must identify the number of telephone calls that were made, dates on which they were

---

[2] Due to scrivener's error, a case with the same name but from a the E.D.N.Y. was originally cited. It is now corrected.
[3] The citing to language was mistakenly omitted.

12

made, identity of persons making them, and nature of alleged misrepresentation." *Mathon v. Feldstein*, 303 F.Supp.2d 317 (E.D.N.Y. 2004). This pleading fails to meet the heightened pleading standard.  In addition, it is apparent on its face, that this insurance claim was accurate and based on Plaintiff's own actions.

Then, Plaintiff alleges: "On or around March 28, 2025, Defendant Tang transmitted an email via interstate wire to Plaintiff demanding reimbursement of $4,100.00. Attached to this email was a "Tenant Ledger" generated by the WAM Entities (acting as the management arm of the Enterprise, on the basis of false information from Goldberg) or by Defendant Goldberg utilizing the Enterprise's accounting systems." Complaint  ¶106. This allegation is not an example of wire fraud, when Plaintiff abruptly terminated his lease. Goldberg never told Plaintiff that he did not have to pay March rent. Beyond the wire communication specificity requirements, federal courts require that the underlying fraudulent scheme be pleaded with sufficient detail. In *A. Terzi Prods.*, the court emphasized that a scheme to defraud requires "fraudulent or deceptive means, such as material misrepresentation or concealment," and that mere threats or coercion without deception do not satisfy this element. *A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F.Supp.2d 485 (S.D.N.Y. 1998).  Here, charging Plaintiff for March rent after he breached the lease agreement is not a fraudulent or deceptive. The plaintiff repeatedly harassed the landlord, which ultimately led the landlord to agree to waive the March rent. Goldberg never told Plaintiff that he would not be charged for March rent. Again, Plaintiff's claims are not based in reality.

Plaintiff's next attempt at pleading wire fraud states "Predicate Act 4 (Wire Fraud): The 'Furniture Removal' Pivot (April 3, 2025)." Complaint  ¶109. Plaintiff does not deny that he hurriedly left the apartment due to investigations into him, nor does he deny that he left the

13

apartment in a damaged condition, filled with all of his furniture. Plaintiff does not deny that the

Landlord needed to remove the furniture in order to show and re-rent the subject apartment.

Plaintiff cannot claim that the charge for removing furniture is fraudulent, because Plaintiff left

all his furniture in the apartment. There can be no fraud when the claim of furniture removal is

legitimate.

The next attempt at pleading wire fraud is paragraph 113, which states, "Predicate Act 5:

Wire Fraud – The 'Paint and Plaster.'" Plaintiff does not deny that he hurriedly left the

apartment, nor does he deny that he left the apartment in an unrentable condition. Plaintiff cannot

claim that the charge for paint and plaster is fraudulent because Plaintiff does not allege that

there were no nicks in the walls or that there was no need for painting or plastering. There can be

no fraud when the claim for painting and plastering was legitimate.

The Complaint also fails to establish the continuity element necessary to plead a RICO

pattern. Courts have consistently held that a single fraudulent scheme, even if comprised of

multiple alleged predicate acts, is insufficient to constitute a "pattern of racketeering activity"

under RICO. *See 225 Broadway Co. v. Sheridan*, No. 85 Civ. 9231 (GLG), 1986 WL 5162, at *2

(S.D.N.Y. Apr. 30, 1986); *Wiltz v. New York Univ.*, No. 19 Civ. 3406 (GHW)(SDA), 2019 WL

8437456, at *9 (S.D.N.Y. Dec. 23, 2019). The predicate acts described by Plaintiff, as laid out

above, do not constitute multiple schemes, they merely reflect the efforts of two separate entities

attempting to recoup losses after Plaintiff prematurely abandoned his lease agreement.

Even if Plaintiff could show that the Defendants' conduct constituted a single scheme, he

still fails to allege a second scheme, which is required to establish a "pattern of racketeering

activity" under RICO. Plaintiff attempts to satisfy the continuity element by alleging that

"Defendant Goldberg exploits The Guarantors' 'standard procedure' of paying claims without

14

verification to systematically defraud the renting public." Complaint ¶ 147. Critically, no other purported members of the "renting public" are identified. This conclusory assertion offers no specific facts demonstrating ongoing racketeering acts and therefore does not plausibly allege a pattern of racketeering activity. As such, it fails to satisfy RICO's heightened pleading requirements.

Plaintiff fails to adequately plead a claim under the RICO statute and, therefore, cannot establish damages arising from such claims. Plaintiff's failure to state a viable RICO claim warrants dismissal of the entire action because, absent a federal claim, the Court lacks a basis to exercise jurisdiction over the remaining state-law claims.

### F.    DEFENDANT GOLDBERG DID NOT PARTICIPATE IN A CONSPIRACY TO VIOLATE RICO

Plaintiff alleges a conspiracy to violate RICO as to all defendants.

The Second Circuit has established that a conspiracy to commit a RICO violation requires proof that the defendant "agree[d] to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." *United States v. Zemlyansky*, 908 F.3d 1 (2d Cir. 2018).

The RICO conspiracy claim fails because there is no underlying RICO violation and no evidence of an agreement to commit predicate acts of wire fraud. The defendants' communications and actions reflect legitimate business and legal coordination in response to a tenant dispute, not a criminal conspiracy.

Plaintiff alleges that "the existence of the conspiracy is proven by the coordinated presentation of 'shifting justifications' for the fraudulent debt." Complaint ¶ 172. Again, it is important to note that Plaintiff does not allege that he removed all of his furniture from the apartment or that he did not damage any of the walls. Therefore, any claims of fraud are

15

conclusory and refuted by the facts. Plaintiff attempts to prove conspiracy by alleging that Defendant Tang's June 13, 2025 email to Plaintiff stating that "the landlord has agreed to reimburse us $1,700.00" proves that Tang and Goldberg "engaged in private negotiations to recalibrate the fraud when the initial claim became untenable." Complaint ¶ 173. The "shifting explanations" for Plaintiff's unpaid debt represent evolving assessments of damages, not coordinated fraud.

Additionally, Plaintiff alleges the existence of a coordinated legal fraud, stating that Defendant Novella's filing of the Verified Answer with an affirmation from Defendant Goldberg in the State Court Action constituted a "conscious agreement between Novella and Goldberg to submit false statements to the Court to protect the illicit gains generated through the Enterprise." Complaint ¶ 174. But this allegation merely describes routine coordination between a business representative and counsel in defending against unwarranted litigation. Such conduct does not plausibly suggest a meeting of the minds to commit criminal acts.

Finally, Plaintiff advances a theory that the "[c]onspirators agreed to manufacture a factual dispute regarding Goldberg's authority" and that "Goldberg agreed to execute the potentially perjurious affirmation to implement [Novella's] strategy." Complaint ¶ 177. This argument rests on a misreading of Goldberg's sworn State Court affirmation. Plaintiff seizes on Goldberg's statement that he could not "unilaterally bind" WAM Entities to leases or lease amendments to suggest that Goldberg lacked authority altogether. That inference is incorrect. Although Goldberg could not bind the entities *unilaterally*, he was expressly authorized by management to bind the company to the mutual lease termination at issue here. Any semblance of critical thought thoroughly undermines Plaintiff's claims at every turn.

16

Accordingly, because the Complaint fails to allege both an underlying RICO violation, as evidenced above, and a cognizable agreement to engage in racketeering conduct, Plaintiff suffered no injury as a result and the RICO conspiracy claim must be dismissed.

## G.    DEFENDANT GOLDBERG DID NOT COMMIT FRAUDULENT INDUCEMENT

Plaintiff alleges fraudulent inducement as to Defendant Matthew S. Goldberg.

To state a claim for fraudulent inducement under New York law, a plaintiff must establish: (1) a material misrepresentation or omission of fact that was false and known by the defendant to be false; (2) made with the intent to deceive and induce reliance; (3) justifiable or reasonable reliance by the plaintiff; and (4) resulting injury or damages. *Santos v. Kimmel*, 745 F. Supp. 3d 153 (S.D.N.Y. 2024). The alleged misrepresentation must concern a presently existing or past fact, not future promises or opinions. *CCM Rochester, Inc. v. Federated Investors, Inc.*, 234 F. Supp. 3d 501 (S.D.N.Y. 2017). Each element must be proven by clear and convincing evidence, a standard higher than the preponderance of the evidence typically required in civil actions. *Piccirilli v. Benjamin*, 209 N.Y.S.3d 653 (N.Y. App. Div. 2024)

Plaintiff alleges that the "material misrepresentation" was an email sent on February 23, 2025, in which Goldberg, acting on behalf of WAM, stated that WAM would agree to a "mutual termination of the lease and that the remainder of the security deposit would satisfy the losses associated with the remainder of the lease term." Complaint ¶ 184.

Plaintiff advances three baseless theories in an attempt to characterize this communication as fraudulent inducement.

First, Plaintiff claims that Goldberg made the termination offer solely as a pretext to immediately re-market the apartment and "double-dip" by subsequently submitting an insurance claim to The Guarantors. Complaint ¶ 185. This allegation disregards the fact that the plaintiff

17

himself first emailed Goldberg stating that he was abandoning the apartment. Plaintiff contends

that the purported "evidence" of this "scheme" is the timing of Goldberg's action subsequent to

the termination of the lease: changing the apartment locks the day after the termination and

submitting an insurance claim to The Guarantor's approximately one month later. Complaint ¶

185.

       The timing of Goldberg's actions does not constitute clear and convincing evidence of

fraudulent inducement. To the contrary, changing an apartment's locks and submitting an

insurance claim following the premature termination of a lease are routine business practices for

a property manager seeking to secure the premises and mitigate losses. These actions do not

support an inference of a preconceived scheme or intent to deceive Plaintiff.

       Second, Plaintiff contends that Goldberg lacked the authority to bind WAM to the

termination of the lease. Complaint ¶ 185. This assertion is incorrect. As an employee of WAM,

Goldberg received authorization from his manager to propose and effectuate the mutual

termination of the lease. Goldberg's Aff. ¶9. Accordingly, Goldberg acted as an authorized agent

of WAM and did not misrepresent his authority in an attempt to mislead Plaintiff.

       Finally, Plaintiff argues that Goldberg's alleged fraudulent inducement was opportunistic

in nature and can be inferred from "the speed of the breach and the defendant's subsequent

dishonest acts to cover it up." Complaint ¶ 185. As previously stated, Goldberg's post-

termination conduct reflects standard steps taken by a management company to reclaim

possession of an apartment and recover losses resulting from a tenant's breach, not fraudulent

conduct.

       Thus, Plaintiff offers no clear and convincing evidence that Goldberg's statements were

knowingly false or made with an intent to deceive. Even assuming that Plaintiff could establish

18

falsity and intent to deceive, he cannot demonstrate damages resulting from reliance on the alleged misrepresentation. Plaintiff had already decided to breach the lease regardless of Goldberg's offer of mutual termination, as evidenced by his email communication informing Goldberg of his departure from the United States and his express intent to discontinue his residency. Goldberg Aff. ¶8; Plaintiff's Declaration ¶53.  Accordingly, Plaintiff did not rely on Goldberg's communication in deciding to terminate the lease.

No fraudulent inducement occurred and therefore Plaintiff cannot establish resulting damages. In fact, Plaintiff suffered zero damages.  Other than the forfeiture of his security deposit, which was expressly permitted under the lease upon breach, Plaintiff suffered no financial loss arising from the mutual termination of the lease.

Finally, Plaintiff claims that Defendant Goldberg is personally liable for the "fraudulent inducement," however, because no fraudulent inducement occurred, Goldberg cannot be held liable.

Accordingly, Plaintiff fails to state a claim that Plaintiff committed fraudulent inducement, and the claim should be dismissed.

## H.    DEFENDANT GOLDBERG DID NOT COMMIT A BREACH OF THE IMPLIED WARRANTY OF AUTHORITY

Plaintiff alleges a breach of implied warranty of authority as to Defendant Matthew S. Goldberg.

Under New York law, a claim for breach of the implied warranty of authority requires proof of four elements: (1) the defendant purported to act as an agent on behalf of a principal; (2) the agent lacked actual authority to bind the principal; (3) the third party reasonably relied on the agent's representation of authority; and (4) damages resulted from the breach. *Harriss v. Tams*, 258 N.Y. 229 (N.Y. 1932).

19

The first element requires that the defendant holds himself out as acting on behalf of the principal. This element is satisfied when an individual represents that he has authority to bind a principal, regardless of whether such authority ultimately exists. *DePetris & Bachrach, LLP v. Srour*, 71 A.D.3d 460 (1st Dep't 2010).

Here, Goldberg represented that he was an employee of WAM. However, he did not merely purport to have authority, he possessed actual authority to offer and enter into the mutual lease termination. As an employee of WAM, Goldberg received authorization from his management to extend a binding termination agreement to Plaintiff on WAM's behalf, after Plaintiff requested same. Goldberg Aff. ¶9.

The second element requires proof that the agent lacked actual authority to bind the principal. This inquiry concerns the internal relationship between the agent and principal, not the third party's beliefs. *Harriss*, 258 N.Y. at 229.

Plaintiff relies on Goldberg's statement in his sworn affirmation that he could not "unilaterally bind" WAM to leases or lease amendments to argue that Goldberg lacked authority. Complaint ¶ 212. That assertion is misplaced. While Goldberg could not bind WAM *unilaterally*, he was expressly authorized by management to bind WAM to the mutual lease termination in this instance. Accordingly, Plaintiff cannot establish the absence of actual authority, and the claim fails on this element alone.

Even if Plaintiff could establish a lack of authority, which he cannot, Plaintiff fails to satisfy the third element. A breach of implied warranty of authority requires reasonable reliance on the agent's representation of authority in entering the transaction. *Harriss*, 258 N.Y. at 229. Plaintiff did not rely on Goldberg's authority in agreeing to the mutual termination. Plaintiff had already decided to discontinue his tenancy, as reflected in his email to Goldberg stating that he

20

had abandoned the apartment and could no longer continue living there. Goldberg Aff. ¶8;

Plaintiff's Declaration ¶53. Because Plaintiff's decision was made independently of any

representation by Goldberg, reliance cannot be established.

Finally, Plaintiff's claim necessarily fails for lack of damages. Because Goldberg

possessed actual authority to enter into the agreement to terminate the lease, no damages could

have resulted from Plaintiff's alleged reliance. Other than the forfeiture of his security deposit,

which was expressly permitted under the lease upon breach, Plaintiff suffered no financial loss

arising from the mutual termination of the lease. Moreover, absent a breach of the implied

warranty of authority, Goldberg cannot be held personally liable for such a claim.

Accordingly, Plaintiff fails to state a claim that Plaintiff committed a breach of the

implied warranty of authority, and the claim should be dismissed.

## I.    DEFENDANT GOLDBERG DID NOT ENGAGE IN DEFAMATION AND DEFAMATION PER SE

Plaintiff alleges Defamation and Defamation Per Se against all Defendants.

Under New York law, a plaintiff asserting defamation must establish four elements: "(1)

a false statement; (2) published without privilege or authorization to a third party; (3)

constituting fault as judged by, at a minimum, a negligence standard, and (4) either causing

special harm or constituting defamation per se.[4]" ~~*Weintraub v. Phillips, Nizer, Benjamin, Krim,*~~

~~*& Ballon*, 568 N.Y.S.2d 84 (N.Y. App. Div. 1991)~~. An indispensable element for defamation is

communication of the defamatory statement to at least one person other than the person

defamed. *See* *Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*, 568 N.Y.S.2d 84 (N.Y.

---

[4] This quote was mistakenly attributed to *Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*, 568 N.Y.S.2d 84 (N.Y. App. Div. 1991). This quote should be attributed to *Kamchi v Weissman*, 125 AD3d 142, 156 (2d Dept 2014).

App. Div. 1991)~~*Id.*~~ Publication allegations must set forth the time, place, and manner of publication, and specify to whom it was made under CPLR 3016(a). *Kramer v. Skyhorse Pub.*, Inc., 45 Misc.3d 315 (N.Y. Sup. Ct. 2014). Additionally, truth is an absolute defense against defamation, and substantially true statements are not actionable. *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37 (N.Y. App. Div. 2014).

Defamation per se eliminates the need to prove special damages when statements fall into specific categories that are presumed harmful. To establish defamation per se under New York law, the statement must: (1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in his or her trade, business or profession; (3) charge plaintiff with a loathsome disease; or (4) impute unchastity to a woman. *Unlimited Cellular, Inc. v. Red Points Solutions SL*, 677 F.Supp.3d 186 (S.D.N.Y. 2023).

      1.     **Alleged 'Financial Smear'**

Plaintiff alleges that Defendant Goldberg engaged in a "financial smear" of Plaintiff stating, "On or about March 24, 2025, Defendant Goldberg published a false statement of fact asserting that Plaintiff had "defaulted" on the Lease and owed a balance of $4,100.00." Complaint ¶ 223. Plaintiff leaves out where this "financial smear' was published. Merely saying something is published does not meet the heightened pleading standard for this claim. Plaintiff also alleges that "Defendant Goldberg generated and published a 'Tenant Ledger' (dated March 28, 2025) which falsely recorded a 'Rent Charge' against Plaintiff's account." Complaint ¶ 224. The complaint alleges that Defendant Goldberg published these statements to WAM and its related entities, certain apartment building staff, and unspecified "industry acquaintances. Complaint ¶ 226, 227. These allegations are nothing more than fiction, without any backup or support. Merely alleging "upon information and belief" is insufficient. *See Cruz v. Marchetto*,

22

No. 11 CIV. 8378, 2012 WL 4513484, at *4 (S.D.N.Y. Oct. 1, 2012) ("When a party fails to specifically claim 'when, where, or in what manner the statements were made,' then a claim for defamation may be dismissed for failure to state a claim."). Plaintiff's defamation claim should be dismissed without leave to replead. *See e.g.*, A*lanthus Corp. v. Travellers Ins. Co.,* 92 A.D.2d 830, 831 (1st Dep't 1983) ("As to the cause of action pleading slander, a vague and conclusory allegation that defendant has falsely stated in the business community at large that Alanthus was unable to perform its duties under the contemplated lease agreement does not meet the minimum requirements of CPLR 3013 and 3016(a)").

These allegations fail to state a claim for defamation because they are substantially true. Plaintiff sent an email to Defendant Goldberg stating that he could no longer pay rent under the lease, which constitutes a default. Goldberg Aff. ¶8; Plaintiff's Declaration ¶53. Additionally, Plaintiff owed an outstanding balance of $4,100 for the damage incurred by his leaving the apartment damaged and in disarray. The truth of Defendant's statements provides a complete defense to Plaintiff's allegation of financial defamation.

### 2.    Alleged 'Criminal Smear' and 'Vindictive Litigation Smear'

Plaintiff alleges that Defendant Goldberg engaged in a "criminal smear" and "vindictive litigation smear" based on statements made in his sworn affirmation submitted in the State Court Action. Plaintiff cites Goldberg's statement: "In a sworn Affirmation filed December 2, 2025, Defendant Goldberg stated: 'I immediately suspected Plaintiff's abrupt departure was related to the criminal investigation.'" Complaint ¶ 239. Plaintiff also quotes a second statement from the same affirmation: "I can only surmise that this lawsuit is retribution for the Van Dorn Defendants' cooperation with law enforcement in connection with a certain criminal investigation into Plaintiff…" Complaint ¶ 251.

23

Plaintiff contends that these statements, made in a court filing and published through NYSCEF, constitute defamation per se and are not protected by New York's litigation privilege. The statements made by Defendant Goldberg in his affirmation are protected by New York's absolute litigation privilege. According to the privilege, "a counsel or party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved." *Youmans v. Smith*, 153 N.Y. 214 (N.Y. 1897). The privilege "embraces anything that may possibly be pertinent, or which has enough appearance of connection with the case." *TRB Acquisitions LLC v. Yedid*, 215 A.D.3d 40 (N.Y. App. Div. 2023).

Here, the challenged statements were made in a sworn affirmation submitted to the court and concerned Defendant's understanding of Plaintiff's conduct and motive in connection with the underlying dispute. The statements are sufficiently connected to the litigation to fall squarely within the broad scope of the litigation privilege. The fact that the affirmation was filed on NYSCEF does not defeat the privilege, as publication incidental to a judicial proceeding remains protected.

Additionally, Plaintiff alleges, upon information and belief, that Defendant Goldberg made similar statements to building staff, security personnel, and unspecified "industry acquaintances." These conclusory allegations are insufficient to plead publication under a theory of defamation per se. Plaintiff fails to identify with specificity to whom the statements were made, when they were made, or the precise words used. Such vague and unsupported assertions do not state a viable defamation per se claim.

Accordingly, Plaintiff's claims against Defendant Goldberg alleging defamation per se as to the "criminal smear" and "vindictive litigation smear" fail.

24

### 3. Alleged 'Professional Incompetence Smear'

Plaintiff again alleges that statements in Defendant Goldberg's sworn affirmation concerning Plaintiff's professional work constitute defamation per se and fall outside the protection of the litigation privilege. Plaintiff cites the following statement from the affirmation: "In a sworn Affirmation filed December 2, 2025, Defendant Goldberg explicitly characterized Plaintiff's professional legal work as 'erratic,' 'illogical,' 'whimsical,' 'immature,' and 'misguided.'" Complaint ¶ 256.

The challenged statement was made in a sworn affirmation submitted to the court and concerned Defendant Goldberg's characterization of Plaintiff as an attorney in the context of the parties' dispute. The statement was plainly connected to the subject matter of the litigation and therefore falls squarely within the broad scope of New York's absolute litigation privilege. The fact that the affirmation was filed on NYSCEF does not defeat the privilege, as publication incidental to a judicial proceeding remains protected.

Plaintiff further alleges, "upon information and belief," that Defendant Goldberg made similar statements to the WAM entities, The Guarantors, and unspecified "industry acquaintances." These conclusory allegations are insufficient to plead publication. Plaintiff fails to identify with specificity to whom the statements were made, when they were made, or the precise words used. Such vague and unsupported assertions are inadequate to state a viable claim for defamation per se.

Accordingly, Plaintiff's suffered no damages as a result of Goldberg's truthful statements and his claims against Defendant Goldberg alleging defamation and defamation per se based must be dismissed.

25

**COUNT VI: ATTORNEY DECEIT/VIOLATION OF N.Y. JUDICIARY LAW §487**

Plaintiff asserts this claim against Defendant Anthony J. Novella only. Thus, this section does not warrant a response on behalf of Defendant Goldberg.

**COUNT VII: AIDING AND ABETTING FRAUD**

Plaintiff asserts this claim against Defendants Anthony J. Novella and Ronald Tang only. Thus, this section does not warrant a response on behalf of Defendant Goldberg.

**CONCLUSION**

For the foregoing reasons, Defendant Matthew S. Goldberg respectfully requests that the Court Dismiss Plaintiff Jonathan Blecher's Complaint with respect to Defendant Matthew S. Goldberg.

Dated: February 1~~7~~8, 2025

By:   /s/ *Jeremy Shockett*
Jeremy Shockett, Esq.
Jason Kosek, Esq.
Anderson Kill P.C.
7 Times Square, 15th Floor
New York, NY 10036
Telephone:  212.278.1000
*Attorneys for Defendant Matthew S. Goldberg*

26

**<mark>WORD COUNT CERTIFICATION</mark>**

I, Jeremy Shockett, certify that the foregoing Memorandum of Law in Support of Motion to Dismiss complies with the word count limit as it contains **7,209** words (excluding caption, table of contents and table of authorities).

Dated: February 17, 2026

Respectfully submitted,

**ANDERSON KILL P.C.**
By: */s/ Jeremy Shockett*

Jeremy Shockett, Esq.
7 Times Square, 15th Floor
New York, NY 10036
Tel.: (212) 278-1000
jshockett@andersonkill.com
*Attorneys for Defendant*
*Matthew S. Goldberg*