UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JONATHAN BLECHER,                                          Case No. 1:25-cv-10341-JLR

                        Plaintiff,

        -*against*-

MATTHEW S. GOLDBERG,
ANTHONY J. NOVELLA, and
RONALD TANG,

                        Defendants.
-------------------------------------------------------------X

# MEMORANDUM OF LAW SUPPORTING
# ANTHONY NOVELLA'S MOTION TO DISMISS

Dated:  New York, New York
        February 24, 2026

                                Brian Graifman
                                BORAH, GOLDSTEIN, NAHINS &
                                 GOIDEL, P.C.
                                377 Broadway
                                New York, New York 10013
                                212-431-1300 x322
                                212-965-2566 dir
                                bgraifman@borahgoldstein.com
                                *Attorney for Defendant Anthony J. Novella*

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ iii

Preliminary Statement .......................................................................................................... 1

Factual Background .............................................................................................................. 1

    A.    The Lease & Termination Provisions ..................................................... 2

    B.    Plaintiff's Landlord-Tenant "Dispute" and Supposed
            "Termination Agreement" ...................................................................... 3

    C.    The Surety/Guarantor's Announced Decision Not To Seek
            Reimbursement From Plaintiff ................................................................ 5

    D.    Plaintiff's State Case .............................................................................. 7

    E.    This Action .............................................................................................. 8

The Legal Standard For A Motion To Dismiss ................................................................. 9

Argument .............................................................................................................................. 11

I.      Naming The Adverse Parties' *Attorney* As A Defendant
       Controvenes Public Policy, Warranting Rejection Of The
       Claims And A Narrow Construction .................................................................... 11

II.     The Rico Claims Should Be Dismissed ............................................................. 11

    A.    Plaintiff Fails to State a Section 1962(c) Claim ...................................... 13

           1.    Plaintiff Does Not Plausibly Allege Any
                 Cognizable Predicate Acts ........................................................ 13

                  (a)    Safe-Harbor Threat (Act 8). ........................................ 13

                  (b)    Judicial Deceit (Act 9) ................................................ 14

                  (c)    Sham Counterclaim (Act 10). ..................................... 15

           2.    Plaintiff Alleges No Cognizable RICO "Pattern" .................... 15

           3.    Plaintiff Alleges No Cognizable RICO Injury ......................... 17

    B.    Plaintiff Fails to State a Section 1962(d) Conspiracy Claim ................. 17

    C.    Dismissal Should Be With Prejudice ...................................................... 17

III.    The State Law Claims Should Be Dismissed Or Jurisdiction Declined ............ 17

    A.    The Court Should Exercise Supplemental Jurisdiction
            Over The State Law Claims To Dismiss For Failure
            to State a Claim .................................................................................... 17

1.  The State Law Claims Should Be Dismissed As Meritless ..................... 17

  (a) Defamation ................................................................................. 17
  (b) Attorney Deceit (Jud. L. § 487) .................................................. 23
  (c) Aiding & Abetting Fraud. ........................................................... 26

2.  Dismissal Should Be With Prejudice ........................................................ 27

B.  Alternatively, the Court May Decline Exercise of Supplemental Jurisdiction ..... 27

IV. Novella Adopts The Goldberg Motion To Dismiss ......................................... 27

V. The Court Should Consider Sanctioning Plaintiff ........................................... 28

Conclusion ......................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*Am. Express Co. S'holder Litig (Lewis v. Robinson) (In re)*,
   39 F.3d 395 (2d Cir. 1994).................................................................... 17

*Art Capital Group LLC v. Neuhaus*,
   70 A.D.3d 605 (1st Dep't 2010) ........................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................. 10

Azrielli v. Cohen Law Offices,
   21 F.3d 512 (2d Cir. 1994)................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................. 10

*Blecher v. Progressive Select Inc. Co,* No. 25-cv-4448,
   2025 LX 515813 (E.D. Pa. Dec. 19, 2025)........................................... 23

*Blecher v. WAM Equity Partners*,
   Index No. 160971/2025 (Sup. Ct. New York County) ............................. 1

*Blum v. Perlstein*,
   47 A.D.3d 741, 851 N.Y.S.2d 596 (2d Dep't 2008).........................27-28

*Bryant v. Silverman*,
   284 F. Supp. 3d 458 (S.D.N.Y. 2018)................................................... 23

*Calka v. Kucker Kraus & Bruh, LLP*,
   99 Civ. 4999 (MBM), 2000 U.S. Dist. LEXIS 6081,
   (S.D.N.Y. May 4, 2000), *aff'd*, 242 F.3d 364 (unpublished),
   2000 U.S. App. LEXIS 33733 (2d Cir. Dec. 21, 2000) .....................14-16

*Coleman v. Grand*,
   158 F.4th 132 (2d Cir. 2025) ............................................................... 18

*Davis v. Boeheim*,
   24 N.Y.3d 262, 998 N.Y.S.2d 131 (2014) ....................................... 18, 21

*Ellison v. Am. Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999)..................................................... 12

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ................................................................................ 16


*Foster v. Churchill*,
    87 N.Y.2d 744, 642 N.Y.S.2d 583 (1996) ........................................................... 21

*Kaufman v. Moritt Hock & Hamroff, LLP*,
    192 A.D.3d 1092, 141 N.Y.S.3d 371 (2d Dep't 2021) ........................................ 23

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) .................................................................................. 14

*Kuriyan v. Schreiber*,
    1:23-cv-02381 (JLR), 2024 U.S. Dist. LEXIS 131725, 2024 WL 3539234
    (S.D.N.Y. July 25, 2024), *aff'd*, No. 24-2212, 2025 LX 240934, 2025 WL 1065957
    (2d Cir. Apr. 9, 2025) ..................................................................................... 1, 27

*Lazzarino v. Kenton Assocs., Ltd.*,
    998 F. Supp. 364 (S.D.N.Y. 1998). .................................................................... 28

*Liberman v. Gelstein*,
    80 N.Y.2d 429, 590 N.Y.S.2d 857 (1992) ....................................................... 20-21

*Live Face on Web LLC v. Five Boro Mold Specialists Inc.*, 15 CV 4779-LTS-SN,
    2016 US Dist LEXIS 56601, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016) .......................... 22

*Marcus v. Alem Enter., Inc.*,
    No. 23-CV-3884 (LTS), 2024 U.S. Dist. LEXIS 1917,
    2024 WL 54234 (S.D.N.Y. Jan. 2, 2024) ........................................... 9-10, 12-13 17

*Martirano v Frost*,
    25 N.Y.2d 505 (1969) ........................................................................................ 19

*McGillvary v. Rolling Stone, LLC*,
    23 Civ. 10428 (DEH), 2025 LX 42009, 2025 WL 1455911 (S.D.N.Y. 2025) ......................... 17

*Nowak v. Ironworkers Local 6 Pension Fund*,
    81 F.3d 1182 (2d Cir. 1996) ............................................................................... 17

*O'Callaghan v. Sifre*,
    537 F. Supp. 2d 594 (S.D.N.Y. 2008) ................................................................. 24

*Oster v. Kirschner*,
    77 A.D.3d 51, 905 N.Y.S.2d 69 (1st Dep't 2010) ............................................... 27

*Palin v. N.Y. Times Co.*,
  940 F.3d 804 (2d Cir. 2019) ........................................................ 17-18


*Phipps v. Kuonen*,
  242 A.D.3d 781, 242 N.Y.S.3d 356 (2nd Dep't 2025) ........................... 18

*Pu v. Charles H. Greenthal Mgmt. Corp.*,
  2010 U.S. Dist. LEXIS 21875,
  2010 WL 774335 (S.D.N.Y. Mar. 9, 2010) ........................... 15, 16, 17, 27

*Ray v. Watnick*,
  182 F. Supp. 3d 23 (S.D.N.Y. 2016) ............................................ 23, 24

*Schindler v. Issler & Schrage, P.C.*,
  262 A.D.2d 226, 692 N.Y.S.2d 361 (1st Dep't 1999),
  *lv dismissed* 94 N.Y.2d 859 (1999)) .............................................. 23

*Scholastic, Inc. v. Stouffer*,
  124 F. Supp. 2d 836 (S.D.N.Y. 2000) ............................................... 22

*Sexter & Warmflash, P.C. v. Margrabe*,
  38 A.D.3d 163, 828 N.Y.S.2d 315 (1st Dep't 2007) ............................. 19

*Solovoy v. Greater New York Savings Bank*,
  198 A.D.2d 27 (1st Dep't 1993) ..................................................... 11

*Stepanov v. Dow Jones & Co., Inc.*,
  120 A.D.3d 28, 987 N.Y.S.2d 37 (1st Dep't 2014) .............................. 18

*Tafflin v. Levitt*,
  493 U.S. 455  (1990) ................................................................... 27

*Toms v. Pizzo*,
  4 F. Supp. 2d 178 (W.D.N.Y. 1998), *aff'd*, 172 F.3d 38 (unpublished),
  1999 U.S. App. LEXIS 1403 (2d Cir. Feb. 2, 1999) (summary order). ................. 14

*West 79th Street Corp.*,
  2004 U.S. Dist. LEXIS 19501. *v. Congregation Kahl Minchas Chinuch*,
  03 Civ. 8606 (RWS) (S.D.N.Y. Sept. 30, 2004) ........................... 15-18, 21

*Youmans v. Smith*,
  153 N.Y. 214 (1897) ................................................................ 20-21

**STATUTES**

Federal

18 U.S.C.S. § 2 ......................................................................... 12
18 U.S.C.S. § 1951(b)(2) ......................................................... 14

Racketeer Influenced and Corrupt Organizations Act (RICO)
18 U.S.C. § 1961 ...................................................................... 11
18 U.S.C. § 1962(c) .......................................................... 8, 11-13
18 U.S.C. § 1962(d) ................................................... 8, 11-12, 17
18 U.S.C. § 1964(c) .......................................................... 11, 12

28 U.S.C. § 1367(c) .................................................................. 1

N.Y. Judiciary Law § 487 ................................... 8, 23, 26, 27

Federal Rules of Civil Procedure (FRCP)
Rule 8(a)(2) ............................................................................ 10
Rule 9(b) ................................................................................. 6
Rule 12(b)(1 & (6) ................................................................ 1, 9


State

N.Y.General Business Law § 349 .......................................... 7

Judiciary Law § 487 ............................................ 8, 23, 26, 27

CPLR 3215(g) ................................................................. 14, 25

<u>**Preliminary Statement**</u>

Defendant Anthony J. Novella, through his undersigned attorney, submits this memorandum of law in support of his motion to dismiss the complaint (<u>ECF 1</u>) of plaintiff Jonathan Blecher with prejudice pursuant to Rule 12(b)(1) & (6) of the Federal Rules of Civil Procedure (FRCP) for failure to state a claim and/or lack of subject matter jurisdiction over supplemental state claims under 28 U.S.C. § 1367(c), or alternatively, abstaining and dismissing the action due to the pending state court action.

<u>**FACTUAL BACKGROUND**</u>

Nowhere in plaintiff's 118-page complaint is there a chronological factual recitation. We patch together various of his allegations.

Plaintiff concedes that he is involved in a "landlord-tenant dispute" over "the specific terms of [a] lease" (<u>Compl.</u> at pg. 5 ¶ 6.b) for his "apartment" (*id.* ¶ 14) at 150 West 58th Street, Apt. 10-D (*id.* ¶ 12), but does not appear to describe the lease, its start or end dates, or its terms. Plaintiff also reveals his related state court action concerning this lease dispute, *Blecher v. WAM Equity Partners*, Index No. 160971/2025 (Sup. Ct. New York County) (Compl. ¶ 4), of which the court can take judicial notice. *Kuriyan v. Schreiber*, 1:23-cv-02381 (JLR), <u>2024 U.S. Dist. LEXIS 131725</u> at *1, 2024 WL 3539234 (S.D.N.Y. July 25, 2024), *aff'd*, No. 24-2212, <u>2025 LX 240934</u>, 2025 WL 1065957 (2d Cir. Apr. 9, 2025) (summary order).[1]

Plaintiff identifies WAM Equity Partners, LLC, as the management company for which Goldberg acts as agent, Van Dorn Holdings LLC as the premises owner, and William Moses Co. Inc. as the lease agent (<u>Compl.</u> ¶ 11).

---

[1]     The full case title there is *Jonathan Blecher v. WAM Equity Partners, LLC, WAM Partners, Van Dorn Holdings LLC, William Moses Co. Inc. and TheGuarantors,* state document list <u>here</u>.

**A.** **The Lease & Termination Provisions**

While plaintiff references the lease in his complaint, he fails to provide a copy, although he did so in his state case (NYSCEF #39) and Goldberg filed it here (ECF 60-1).[2] The lease is dated October 11, 2024, for a term commencing on November 1, 2024 and expiring on October 31, 2025, at a monthly rent of $4,100 (*id.* ¶ 4).

The lease describes the required move-out condition for the end of term, including removal of his movable and installed property:

> When this Lease ends, You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other Installation or attachment You may have Installed in the Apartment, even if it was done with Owner's consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use, or may consider that You have given up the Apartment and any property remaining In the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. *The provisions of this article will continue to be in effect after the end of this Lease.*

(NYSCEF #39 ¶ 8.B (emphasis added))

The lease also includes the Tenant Rules and Regulations, signed by Blecher, which provide, in relevant part (emphases in original):

> 7. When vacating the apartment, the keys **MUST** be returned to the Superintendent or to the Management Office. It Is not the responsibility of the Superintendent or the Owner to seek out the Tenant(s) in order to get the keys.
> 8. If the keys are not returned on or before the day of the expiration of the lease, the Tenant(s) will be responsible for an additional month's rent.
> 9. The Tenant(s) must leave the apartment in the same condition it was in when the lease began. This means that the apartment **MUST** be clean, all furniture removed and all appliances cleaned. If the Owner finds the

---

[2]     NYSCEF citations are to Blecher's state case, from the state's online portal.

apartment to be in unsatisfactory condition, the Tenant(s) will be assessed a minimum of $200.00 cleaning fee deducted from Tenant's security deposit.

10. If the lease is not renewed and the keys not returned, it will be assumed that the Tenant(s) has vacated the apartment. The Owner will enter the apartment on the date after lease expiration. If it is necessary to change the locks, the Tenant(s) will bear all costs involved.

(NYSCEF #39 at PDF pg. 14)

## B. Plaintiff's Landlord-Tenant "Dispute" and Supposed "Termination Agreement"

Plaintiff concedes that "[o]n or about February 23, 2025, [he] notified Defendant Goldberg and the WAM Entities[**3**] . . . that he needed to terminate his lease" (Compl. ¶ 12). He fails, however, to reveal the rest of his email – which email trail he filed as ECF 49-3. The email reflects not a *request* to terminate but a *fait accompli*, writing in pertinent part: "Due to an unfortunate turn of events I can no longer continue renting 150W 58th st apt 10-D as I got laid off. I bought the ticket to Canada today. I have paid already for February." ECF 49-3 at 3 (9:26 AM)).[**4**]

Plaintiff writes that Goldberg responded, "We will hereby agree to a mutual termination of your current lease agreement provided that we retain your security deposit to offset losses tied to the remainder of your current lease" (Compl. ¶ 13). Incredibly, plaintiff nowhere reveals in his complaint the rest of that email and the conditions Goldberg placed concerning returning keys and enabling the marketing of the apartment. The full substantive response follows:

As you may be aware, you [are] not able to terminate your lease without mutual agreement. We will hereby agree to a mutual termination of your

---

3       He variously refers to the "WAM Entities" as the "management arm" (Compl. ¶ 12) and/or the "Landlord" (*id.* ¶ 91).

4       The dates and times are taken from the complaint and emails he filed as ECF 49-3 & 49-4, but as plaintiff has been overseas, the dates and times may not accurately reflect when sent. Plaintiff authenticates those emails in his Declaration, ECF 49-1 ¶¶ 23-24, 27 & 29.

current lease agreement provided that we retain your security deposit to offset losses tied to the remainder of your current lease. Please confirm when you have returned keys to the front desk/possession of the apartment so we can take necessary steps to start the process of marketing the apartment for new lease.

(ECF 49-3 at 2 (9:54 AM))  This excerpt speaks in terms of a termination the landlord side "will" agree to – not that it did – and addresses the concept of consequential "losses."

More deceptively, plaintiff nowhere revealed in his emails that he had left the apartment filled with his furniture and personal affects and failed to leave it "clean," as required.  Plaintiff concedes, later in his complaint, that he left his furniture, but with the unsupported excuse that he "had offered the furniture free of charge to building personnel" (Compl., ECF 1, ¶ 25(c)) – which does not relieve him of having to clear the apartment.[5]

Plaintiff claims that he "accepted" Goldberg's offer within minutes, emailing: "That mutual agreement as you explained is acceptable" (Compl. ¶¶ 15-16).  Again, plaintiff truncates the exchanges to omit significant portions.  In actuality, after emailing that the agreement was "acceptable," plaintiff added, "I can ship the keys to you as soon as I am back in the US. Early next month" (ECF 49-3 at 2 (9:56 AM)).  Nowhere in his complaint does plaintiff reveal anything about keys, other than to allege deceptively and conclusorily that he "vacated the premises, surrendered keys, and forfeited his $4,100 security deposit" (Compl. ¶195) – but providing no details.

Plaintiff skips over the next email, from Goldberg at 10:15 AM – omitted from the complaint – where Goldberg warned about the "significant losses" the landlord still "will likely incur":

---

[5]     Plaintiff provides the landlord's photos showing the apartment's abandoned condition, reflecting furniture, appliances, food, and personal effects (ECF 49-4 at 7-8).

Unfortunately we would need to start showing the apartment immediately given this short notice the significant losses we will likely incur, so we will have to change the locks for security reasons.

Please confirm when you have vacated and returned possession and we will change the locks and begin showing/preparing/marketing the apartment.

(ECF 49-3)

In paragraph 16, plaintiff states that after accepting the agreement, he "vacated the premises, and surrendered possession" (Compl. ¶ 16), nowhere explaining how or when he had done so.

Plaintiff states that Goldberg confirmed their agreement by emailing at 10:43 AM: "Thank you for confirming we have possession of the apartment now… We will have our team change the locks tomorrow" (Compl. ¶ 18). Again, plaintiff omits the portion about keys, where Goldberg wrote, "If you can mail the keys back when you have [sic], that would chance [sic] would be great" (ECF 49-3 at 1).

In any event, the landlord mitigated damages by re-renting the apartment to a new tenant effective April 1, 2025 (Compl. ¶ 38).

**C.      The Surety/Guarantor's Announced Decision
          Not To Seek Reimbursement From Plaintiff**

Plaintiff turns to the involvement of the surety/guarantor for his lease, TheGuarantors, by its employee, defendant Ronald Tang (*see* Compl. ¶ 10). On or around March 28, 2025, Tang emailed plaintiff that the company had paid a $4,100 claim to the landlord, looked to plaintiff for reimbursement, and absent a timely response, would forward the matter to collection, potentially "impacting your credit score and future rental opportunities" (Compl. ¶¶ 25, 46, 106 & 274; *see also* ECF 49-4 at 4 (email trail filed by plaintiff)).

After pushback from plaintiff about his security deposit covering that loss, Tang emailed back on April 3, 2025: "In regards to the security deposit, originally it was supposed to go towards March rent however, after inspecting the unit the landlord had to use the security deposit towards fixing up the unit as furniture needed to be removed, damages needed to be fixed and the unit needed to be cleaned" (Compl. ¶¶ 24 & 111; see ECF 49-4 at 6 (11:30 PM)).

On or about April 18, 2025, Tang emailed again, stating that "the claim has been paid out in the amount of $4,100 directly to the landlord" and that any dispute regarding the amount or allocation should be addressed to the landlord (Compl. ¶ 27; ECF 49-4 at 11). By subsequent email, on or about June 11 at 15:35, Tang provided plaintiff with a copy of the April 7, 2025, receipt he had received from the landlord for painting and plastering in the amount of $2,400, and reduced the amount he sought from plaintiff to $2,400 (Compl. ¶¶ 35 & 114; ECF 49-4 at 19 & 29-30).

Plaintiff filed the April 7 receipt here as ECF 26-5. He claims that it is fraudulent as a "chronological impossibility" because it is dated April 7, 2025, which was after, he assumes, the new tenants took possession – even though the document states nowhere when the work was done and is likely an invoice for past services rendered (or for work performed after the new tenant(s) had a right of possession), so that plaintiff has no plausible basis for his allegations of fraud (failing the particularity requirement of FRCP 9(b)).

Following subsequent email exchanges with Tang (*e.g.*, Compl. ¶¶ 53-54 & ECF 49-4 at 28-30), including plaintiff's increasingly aggressive legal threats (ECF 49-4 at 28-30), Tang responded "**we will not be seeking reimbursement from you in regards of the claim at this time**" (Compl. ¶¶ 59-60; ECF 49-4 at 27-28 & 38 (emphasis added)).

**D.** **Plaintiff's State Case**

Plaintiff nonetheless filed his state court action on August 20, 2025 (*see supra*, pg. 1), which he refers to throughout his complaint here as the "State Court Lease Action" (Compl., [ECF 1](#) at ¶ 4). That action, according to the complaint here, "concerns a contractual dispute and alleged fraud regarding lease termination" (*id.* ¶ 6.a). Plaintiff filed the document list from that case here as [ECF 50-6](#) (as of February 10, 2026).

The operative amended complaint ([NYSCEF #11](#)) is not filed in this action. In it, plaintiff alleges causes of action for breach of contract, fraud, unjust enrichment, violations of New York General Business Law § 349, and civil conspiracy to commit fraud. The underlying facts involve the same parties as here, albeit naming the principals instead of the agents ([State Compl.](#) ¶¶ 5-9), and the same pre-litigation circumstances as here, including the lease, abandonment, relinquishment of property, alleged mutual termination agreement, alleged fraudulent April 7, 2025 receipt for plastering and painting, and interplay with the guarantor ([State Compl.](#) ¶¶ 21-30).

In the contract claim, plaintiff seeks to enforce the "mutual termination agreement" between plaintiff and WAM ([State Compl.](#) ¶ 33). The fraud cause of action is based on WAM's representations to TheGuarantors, who relied on it, somehow injuring plaintiff (*id.* ¶¶ 36-40). The unjust enrichment cause of action asserts that WAM was unjustly enriched by the $4,100 payment it received from the surety (*id.* ¶¶ 42-44). The GBL § 349 claim is against the guarantor, based on its alleged failure to abide by the mutual termination agreement, its presentation of the alleged fraudulent receipt (the April 7 invoice for painting and plastering) (*id.* ¶¶ 46-49). The cause of action for civil conspiracy to commit fraud is against WAM and the

guarantor (*id.* ¶¶ 51-55).  Plaintiff styles the state case as a putative class action, but fails to allege anything more than a unique private landlord-tenant dispute (*id.* ¶¶ 10-13).[6]

E.     **This Action**

Plaintiff filed this action on December 12, 2025, against the individuals who are agents of the entities sued in the state court case, based primarily on the same underlying facts.  Federal jurisdiction is based solely on federal subject matter due to the Racketeer Influenced and Corrupt Organizations Act (RICO) claims (Compl. ¶ 1).

The complaint asserts claims for violation of the RICO, 18 U.S.C. § 1962(c), conspiracy to violate RICO, 18 U.S.C. § 1962(d); and state law claims, as follows:

|  | **GOLDBERG** | **NOVELLA** | **TANG** |
|---|---|---|---|
| I  RICO 1962(c) pgs 49-56 | X | **X** | X |
| II – CONSPIRACY TO VIOLATE RICO  1962(d) pgs 56-62 | X | **X** | X |
| III Fraudulent Inducement pgs 63-68 | X |  |  |
| IV Breach of Implied Warranty of Authority pgs 68-72 | X |  |  |
| V Defamation & per se pgs 72-87 | X | **X** | X |
| VI Attorney Deceit, Viol NY Jud L § 487 pgs 87-97 |  | **X** |  |
| VII Aiding & abetting fraud pgs 97-102 |  | **X** | X |

Plaintiff alleges, as in the state case, that Goldberg lured him into surrendering the

---

[6]     His state case claims are transparently deficient, as for breach of contract he overlooks the additional damages he caused by the condition he left the apartment; for fraud he fails to allege his reliance; his unjust enrichment claim fails due to existence of a contract; his GBL claim fails due to the private nature of the dispute; and conspiracy to commit a civil tort is not recognized in New York.

premises, claiming it to constitute wire fraud (table of contents ("TOC"), [ECF 1](#) at pgs. 2-7 of 118, for pg. 11); the fraudulent collection of insurance proceeds after collecting his security deposit (the "Double-Dip") (TOC for pg. 14); shifting justifications for the debt (TOC for pg. 15); a fabricated "Time Travel Receipt" (TOC for pg. 18); a resultant threat to his credit (TOC for pg. 24); and an "Admission of Nullity," whereby defendants Goldberg and Tang ceased collection efforts against him (TOC for pg. 28; [Compl.](#) pg. 28 ¶ 61).

Expanding this simple landlord-tenant dispute into a RICO claim, plaintiff alleges that the defendants operate an enterprise, affecting interstate commerce, constituting a pattern of racketeering activity, including wire and mail fraud, extortion and attempted extortion (TOC for pgs. 33-46; [Compl.](#) pgs. 33-46), which events are not isolated but "open ended," reflecting continuity (TOC for pg. 46; Compl. ¶¶ 143-48).

Plaintiff brands Anthony Novella with an Italian moniker, "*Consigliere*" ([Compl.](#) at pg. 2, 8, & 51; RICO Statement, [ECF 15](#) ("RICO STMT"), at pgs. 21, 22, 34, 35), a name carrying with it offensive connotations (*see* Novella Decl., [ECF 45](#) at ¶ 55).

Plaintiff fails to allege, among other requirements, any viable injury by reason of the RICO enterprise.

## THE LEGAL STANDARD FOR A MOTION TO DISMISS

The legal standard for reviewing the sufficiency of a complaint is set forth in *Marcus v. Alem Enter., Inc.*, No. 23-CV-3884 (LTS), [2024 U.S. Dist. LEXIS 1917](#), 2024 WL 54234 (S.D.N.Y. Jan. 2, 2024), where the court dismissed a complaint over what was essentially a residential landlord-tenant dispute also styled as a RICO action. Under FRCP 12(b)(1) or (6), the court must dismiss any complaint or portion thereof "that is frivolous or malicious, fails to

state a claim on which relief may be granted, or . . . when the Court lacks subject matter jurisdiction." 2024 U.S. Dist. LEXIS 1917 at *1.

FRCP 8(a)(2) requires "a short and plain statement . . . showing that the pleader is entitled to relief." It requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible - not merely possible - that the pleader is entitled to relief. *Id.*; *see Marcus*, 2024 U.S. Dist. LEXIS 1917 at *2.

This standard applies also to *pro se* pleadings, *Marcus* at *2 – an observation particularly relevant, as plaintiff claims to be *pro se*, but is a New York admitted attorney (Compl. ¶ 7) and self-described "officer of the court" (Blecher Decl. to disqualify successor counsel, ECF 50-3 ¶ 2).[7]

---

[7] While pro se pleadings are normally held to less stringent standards than formal pleadings drafted by lawyers, as plaintiff is a lawyer previously from a large and prominent law firm, his ought not receive the indulgence given litigants having no legal training.

# ARGUMENT

## I.

## NAMING THE ADVERSE PARTIES' *ATTORNEY* AS A DEFENDANT CONTROVENES PUBLIC POLICY, WARRANTING REJECTION OF THE CLAIMS AND A NARROW CONSTRUCTION

Plaintiff brings this separate action not only against the individual agents of the entity defendants named in his state court case, but against one of the attorneys of the law firm that represented the landlord/property manager defendants.  Naming the attorney as a defendant contravenes the policy against suing an adverse party's attorneys. "[I]t is recognized that public policy demands that attorneys, in the exercise of their proper functions as such, shall not be civilly liable for their actions when performed in good faith and for the honest purpose of protecting the interests of their clients." *Art Capital Group LLC v. Neuhaus*, 70 A.D.3d 605, 606 (1st Dep't 2010).  While Novella's clients did nothing wrong, even so, an attorney is generally not liable for the acts of its client.  *Solovoy v. Greater New York Savings Bank*, 198 A.D.2d 27 (1st Dep't 1993).  The claims here should be viewed with that in mind.

## II.

## THE RICO CLAIMS SHOULD BE DISMISSED

Plaintiff's first two claims are asserted under RICO, 18 U.S.C. § 1961, *et seq.*, on which he relies as the basis for federal jurisdiction.  That statute provides a private right of action for "any person injured in his business or property by reason of a violation of Section 1962." *Id.* § 1964(c). Plaintiff alleges violations of section 1962 subsections (c) and (d), which provide:

> **(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.[8]

Subsection (a) in turn provides:

**(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of *section 2, title 18, United States Code* [*18 USCS § 2*], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

The court in *Marcus*, *supra*, set forth the requirements for RICO. To state a civil RICO claim, a plaintiff must allege, as relevant here, facts showing (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Id.*, *quoting* § 1962(a)-(c). Such a person must also "allege that he was "injured in his business or property *by reason of* a violation of *section 1962*."" *Id.*, *quoting* § 1964(c) (italics in *Marcus*). To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in

---

[8]    Plaintiff does not allege a violation of or conspiracy to violate subsection (b), which concerns acquiring or maintaining "any interest in or control of any enterprise," or to violate that portion of subsection (c) as relates to "collection of an unlawful debt."

furtherance of a pattern of racketeering activity in connection with the enterprise." A plaintiff

must also show that "if the agreed upon predicate acts had been carried out, they would have

constituted a pattern of racketeering activity."  *Marcus*, 2024 U.S. Dist. LEXIS 1917 at *7-*8

(source citations omitted).

A.     **Plaintiff Fails to State a Section 1962(c) Claim**

    1.     **Plaintiff Does Not Plausibly Allege Any Cognizable Predicate Acts**

Plaintiff alleges three predicate criminal acts in which Novella supposedly participated

(RICO STMT, ECF 15 at 13-14; Compl. pgs. 43-46 (Acts 8-10)), all involving litigation in the

case that plaintiff filed. The contention that these are criminal acts is frivolous.

    (a)     **Safe-Harbor Threat (Act 8)**.  Plaintiff alleges that Novella transmitted

emails threatening to seek sanctions against him based on a "Safe-Harbor" rule that exists only in

federal procedure.  He claims that Novella knowingly sought to coerce him to withdraw valid

motions through the wrongful use of fear (wire fraud/extortion) (RICO STMT at 13; Compl. pgs.

43-44).

Plaintiff mischaracterizes the "Safe Harbor" email, without providing or quoting it, but

we do so here (accompanying Novella Decl. Exh. A).  In it, Novella cited no "rule," but merely

*asked* plaintiff if he had sent any safe harbor letters, and if not, asked that plaintiff withdraw *his*

sanction motion, or Novella's clients would have no choice but to seek sanctions, which they

"truly wish to avoid."

Because plaintiff fails to allege that Novella was acting in any capacity other than as an

attorney, this claim is not cognizable. Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d

Cir. 1994) (declining to hold an attorney liable where the plaintiffs had failed to produce

anything to contradict the attorney's assertion that he was merely acting as an attorney and "had

no role in the conception, creation, or execution of the purported flip/assignment" at the heart of the alleged RICO violation), *abrogation on other grounds recognized by Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 636 (S.D.N.Y. 1999).

Nor is this "wire fraud," for among many reasons, the communication(s) are not plausibly shown to be false, made with scienter, and plaintiff fails to allege "how if at all [he] *relied* on them." *Calka v. Kucker Kraus & Bruh, LLP*, 99 Civ. 4999 (MBM), 2000 U.S. Dist. LEXIS 6081, at *22-*23 (S.D.N.Y. May 4, 2000), *aff'd*, 242 F.3d 364 (unpublished), 2000 U.S. App. LEXIS 33733 (2d Cir. Dec. 21, 2000) (summary order). Nor is it extortion, which is the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence or fear, or under color of official right." 18 U.S.C.S. § 1951(b)(2). *See Toms v. Pizzo*, 4 F. Supp. 2d 178, 184 (W.D.N.Y. 1998) (use of "economic leverage" in an ordinary commercial negotiation does not constitute extortion), *aff'd*, 172 F.3d 38 (unpublished), 1999 U.S. App. LEXIS 1403 (2d Cir. Feb. 2, 1999) (summary order). Plaintiff alleges no such acts or that he parted with any property as a result.

(b) **Judicial Deceit (Act 9).** Novella is alleged to have filed a cross-motion in state court seeking to vacate an alleged default based on a faulty procedural argument (CPLR 3215(g)), allegedly intended to obstruct the judicial process and prolong the "Enterprise's" retention of stolen funds (wire fraud/obstruction) (RICO STMT at 13; Compl. pgs. 44-45). This allegation fails as a predicate act for the same reasons as above, and constitutes mere litigation activity in a case that *plaintiff* filed. *See Kim v. Kimm*, 884 F.3d 98, 100, 103-05 (2d Cir. 2018) (litigation activity in a single lawsuit, even if frivolous, fraudulent, or baseless, cannot constitute a viable RICO predicate act).

(c)  **Sham Counterclaim (Act 10)**.  Plaintiff alleges that Novella demanded $100,000 in legal fees which he claimed the Landlord had "incurred to date," although it was a mathematical impossibility, utilized as a fraudulent instrument of extortion to terrorize him with a threat of financial ruin (Mail/Wire Fraud & Extortion) (RICO STMT at 13-14; Compl. pgs. 45-46).  As plaintiff knows, the added words "*to date*" in referring to legal fees, costs, and disbursements includes those that have been "*and will continue to incur . . . in an amount to be determined*" (Novella Decl. ¶¶ 10-11, citing (Answer in State Case, NYSCEF #31, ¶¶ 84-85 (emphases added)).  As plaintiff admits it was an impossibility, he understands what was sought. For reasons previously stated, this is not a viable predicate act.  See *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, 03 Civ. 8606 (RWS), 2004 U.S. Dist. LEXIS 19501 at *22 (S.D.N.Y. Sept. 30, 2004) ("Acts done inadvertently, mistakenly, or in good faith without an intent to defraud are insufficient to satisfy the knowledge and criminal intent elements" for RICO predicate acts (inner quotes omitted)).

2. **Plaintiff Alleges No Cognizable RICO "Pattern"**

The RICO statute is aimed at "long term criminal activity," not garden-variety contract or fraud disputes. *Pu v. Charles H. Greenthal Mgmt. Corp.*,  2010 U.S. Dist. LEXIS 21875 at *7, 2010 WL 774335 (S.D.N.Y. Mar. 9, 2010).  Plaintiff concedes that the complained-of acts occurred only "over a period of months" (Compl. ¶ 148), but alleges "open-ended continuity" (Compl. pgs. 2, 23, 46, 55; RICO SM, ECF 15, at pgs. 18 & 46), *i.e,*, "the threat of ongoing criminal activity." *Calka*, *supra*, at *23 (*citing GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 466-69 (2d Cir. 1995)).

In *Calka*, *supra*, plaintiff brought a series of lawsuits involving what was "essentially a landlord/tenant dispute" *id.* at *1, before filing the federal action in which he included as

defendants the law firm and lawyers that had represented parties adverse to him in the transactions and in the underlying litigations. *Id.* at *3-*4.  The court dismissed the RICO claim, for among other reasons, a lack of continuity, noting that all the acts constituted a "unitary" act:

> Here, there is no such threat because we are dealing simply with disputes over two particular apartments occupied by one plaintiff at different times in a particular building. There is no way for the allegedly improper conduct to continue.

> Further, because the acts in question related simply to disputes about two apartments, and were all taken as part of litigation relating to those apartments, they constituted essentially a "unitary" act, *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989), and were "isolated" and "sporadic", *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir. 1989); therefore, they do not establish even the closed-ended continuity necessary to state a RICO claim. *See GICC*, 67 F.3d at 466.

*Calka, supra,* 2000 U.S. Dist. LEXIS 6081, at *23-*24.

Similarly, in *Pu*, *supra*, 2010 U.S. Dist. LEXIS 21875 at *12-*14, plaintiff condominium owner sued the building's condominium association, its outside counsel, and others over an assessment he alleged was fraudulent. *Id.* at *1-*2.  As his the allegations focused on defendants' plan to collect the assessment and complete the renovations, they suggest no "continuing purpose" beyond the planned work. Thus plaintiff did not plead a "threat of continuing criminal activity" or a RICO pattern.  *Pu*, *supra*, 2010 U.S. Dist. LEXIS 21875 at *14, *citing First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 180-81 (2d Cir. 2004).

### 3.    Plaintiff Alleges No Cognizable RICO Injury

The RICO statute "limits standing to plaintiffs whose injuries were both factually and proximately caused by the RICO violation." *West 79th Street Corp.*, *supra*, 2004 U.S. Dist. LEXIS 19501, at *46, *quoting* In re Am. Express Co. S'holder Litig. (Lewis v. Robinson), 39 F.3d 395, 399 (2d Cir. 1994).  Plaintiff here identifies no injury whatsoever, as his sole loss was his $4,100 security deposit, an amount he agrees was proper.

**B.**   <u>Plaintiff Fails to State a Section 1962(d) Conspiracy Claim</u>

As plaintiff fails adequately to allege the elements of a substantive RICO claim, his conspiracy claim under 1962(d) fails. *West 79th Street Corp.*, *supra*, <u>2004 U.S. Dist. LEXIS 19501</u>, at *49-*51.

**C.**   <u>Dismissal Should Be With Prejudice</u>

Because plaintiff fails to plead any facts that might sustain a claim or this court's subject matter jurisdiction, repleading would be futile, and dismissal should be with prejudice. *Marcus*, *supra*, <u>2024 U.S. Dist. LEXIS 1917</u> at *2.

**III.**

**THE STATE LAW CLAIMS SHOULD BE
<u>DISMISSED OR JURISDICTION DECLINED</u>**

**A.**   **The Court Should Exercise Supplemental Jurisdiction Over
<u>The State Law Claims To Dismiss For Failure to State a Claim</u>**

Even upon dismissal of the federal RICO claim, the court has supplemental jurisdiction over the state claims and discretion to dismiss them, considering the values of judicial economy, convenience, fairness, and comity. *Pu*, *supra*, <u>2010 U.S. Dist. LEXIS 21875</u> at *16-*17 (*citing <u>Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)</u>*). If this court can easily dismiss the state law claims, it should, because they "arise from the same core facts as the federal claims and, like the federal claims, lack merit." *Pu*, *supra*, at *17.

**1.**   <u>The State Law Claims Should Be Dismissed As Meritless</u>

**(a)**   <u>Defamation</u>

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *McGillvary v. Rolling Stone, LLC,* 23 Civ. 10428 (DEH), <u>2025 LX 42009</u>, 2025 WL 1455911 (S.D.N.Y. May 21, 2025), *citing <u>Palin v. N.Y. Times</u>*

*Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Under New York law, defamation is: "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37 (1st Dep't 2014).

To be actionable as defamatory, a false statement must convey a fact. *Davis v. Boeheim*, 24 N.Y.3d 262, 268, 998 N.Y.S.2d 131 (2014). Where a statement conveys only opinion, it is "deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Id*. at 269. Moreover, where an opinion includes the facts on which it is based without implying that other, undisclosed facts exist, it is not actionable. *See Coleman v. Grand*, 158 F.4th 132, 139 (2d Cir. 2025). On a motion to dismiss, the court must decide whether the statement, "considered in the context of the entire publication, [is] reasonably susceptible of a defamatory connotation." *Stepanov*, *supra*, at 34.

According to plaintiff, Novella implicitly defamed him by filing, in the state court action, Goldberg's December 1, 2025, affirmation containing the statement that Goldberg "immediately suspected Plaintiff's abrupt departure was related to the criminal investigation" (Compl. ¶¶ 239, 242, 249, 250). Although Goldberg had initially harbored only a suspicion about plaintiff's abrupt departure (Goldberg Dec. 1, 2025 Affirmation, NYSCEF #80, refiled at ECF 45-1, ¶ 26), he later learned that the investigation indeed concerned plaintiff (Goldberg Feb. 17, 2026 Affirmation, ECF 60 ¶ 6). Thus, Goldberg's opinion was based on substantially true facts. *See Phipps v. Kuonen*, 242 A.D.3d 781, 783, 242 N.Y.S.3d 356 (2nd Dep't 2025) (allegations about plaintiff's social media posts were nonactionable pure opinion based on disclosed facts that were substantially true).

Even had Goldberg's statement been defamatory (it was not), it is contained within papers filed by Novella in the state court action and is absolutely privileged. In *Youmans v. Smith*, 153 N.Y. 214, 219-20 (1897), the Court considered whether counsel representing a client in judicial proceedings may be held liable for any defamatory words used in the course of the proceedings, holding that "when such words and writings are material and pertinent to the questions involved; * * * within such limit, the protection is complete, irrespective of the motive with which they are used . . ." (citations omitted). The Court acknowledged the important policy involved:

> [C]ourts are liberal, even to the extent of declaring that where matter is put forth by counsel in the course of a judicial proceeding that may possibly be pertinent, they will not so regard it as to deprive its author of his privilege, because the due administration of justice requires that the rights of clients should not be imperiled by subjecting their legal advisers to the constant fear of suits for libel or slander. Any other rule would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires.

Consonant with *Youmans*, and more recently, courts recognize that "any doubts" concerning whether a defamatory statement is privileged "are to be resolved in favor of pertinence." *E.g. Sexter & Warmflash, P.C. v. Margrabe*, 38 A.D.3d 163, 173, 828 N.Y.S.2d 315 (1st Dep't 2007). Thus, to be actionable as defamatory, a statement must be "outrageously out of context." *Id.*, *quoting Martirano v Frost*, 25 N.Y.2d 505, 508 (1969).

Goldberg's suspicion about plaintiff's abrupt departure was included in the December 1, 2025 affirmation to explain why he did not, in the first instance, seek compensation directly from plaintiff for losses beyond the March rent (*see* Feb. 23, 2025 email, ECF 49-3). Goldberg then discovered the very next day that plaintiff had abandoned his furniture and personal effects in the apartment (Goldberg Feb. 17, 2026 Affirmation, ECF 60 ¶ 14). These alarming circumstances explain why plaintiff, as distinct from most defaulting tenants, was not held responsible for the

remainder of the lease term. Goldberg thus had reason to avoid arguing with plaintiff by quickly relieving him of his obligation to pay rent for the remainder of the lease and thereby hasten his departure from the building.

By including Goldberg's statement in his affirmation, Novella did not venture "beyond the bounds of reason and by main force bring into a lawsuit matters *so obviously impertinent* as not to admit of discussion, and *so needlessly defamatory* as to warrant the inference of express malice . . ." *Youmans*, 153 N.Y. at 220. Rather, as measured against the liberal standards for determining pertinence, Goldberg's statement explains and thus pertains to the February 23 emails; it is not outrageously out of context. Plaintiff also provides no basis for inferring that Novella harbored malice toward him or that the litigation privilege was in any way abused. Accordingly, Novella cannot be held liable for filing Goldberg's nondefamatory statement.

Plaintiff also alleges, upon information and belief, and without providing any basis for it, that Novella published at the law firm unspecified statements concerning "flight" and "even more aggressive 'fugitive' narratives to non-attorney support staff within his firm who had no legitimate need to know these specific, scandalous details . . . for the purpose of office gossip or mockery . . ." (Compl. ¶¶ 243, 244). Absent specifics, plaintiff's allegations are nothing more than suppositions.

In any event, a qualified privilege insulates Novella from liability for whatever statements concerning plaintiff's "flight" he allegedly "published" to his law firm or support staff as they shared an interest in assisting Novella in defending against plaintiff's state court action. While the privilege may be defeated by a demonstration that a defendant spoke with malice or was motivated by "spite or ill will" or had a "high degree of awareness" of the statement's "probable falsity," *Liberman v. Gelstein*, 80 N.Y.2d 429, 437-38, 590 N.Y.S.2d 857

(1992), again, plaintiff offers no facts even tending to show that Novella bore him any malice, that the statements, if made, were motivated by spite or ill will, with reckless disregard for their truth, or that he had a high degree of awareness that they were probably false. *See Foster v. Churchill, 87 N.Y.2d 744, 752, 642 N.Y.S.2d 583 (1996)* (where statement made without actual knowledge of its truthfulness and speaker seemed to presume statement not entirely false, no basis given for finding that respondents acted out of personal spite or ill will, with reckless disregard for statements' truth or falsity, or with high degree of belief that statements probably false).

Plaintiff also fails to allege any facts tending to show that this small landlord/tenant matter, which was not litigated until he sued in state court, tended to expose him to any "public contempt, hatred, ridicule, aversion or disgrace." *Davis*, *supra*, 24 N.Y.3d at 268. Plaintiff's alleged "humiliation" is thus imagined or self-inflicted.

Plaintiff not only accuses Goldberg of defaming him in his December 1 affirmation filed in the state action by characterizing him as "erratic," "illogical," "whimsical," "immature," and "misguided,"[9] but he asserts that Novella should be held liable for republishing them in his Memorandum of Law, also filed in the state action (Compl. ¶¶ 256-258(b), (d), 259-262).

"Courts have consistently found that statements calling into question the legitimacy of litigation are non-actionable statements of opinion." *Live Face on Web LLC v. Five Boro Mold*

---

[9]    Specifically, Goldberg wrote that, "Plaintiff is acting in an erratic and illogical fashion in an effort to provoke and manufacture confrontation and legal expenses. . . .  Plaintiff's illogical and whimsical lawyering will continue unless and until the Court compels him to stop, by dismissing the Complaint against the Van Dorn Defendants with prejudice. The Van Dorn Defendants, and each of them, have already been greatly prejudiced by Plaintiff's immature and misguided actions, including attorneys' fees they, and each of them, have incurred and continue to incur defending this frivolous litigation, for which such fees the Van Dorn Defendants jointly and severally request a hearing to determine." (NYSCEF #80 & ECF 45-1 ¶¶ 26 & 27).

*Specialists Inc.*, 15 CV 4779-LTS-SN, 2016 US Dist LEXIS 56601 *6-7, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016), *citing Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 850 (S.D.N.Y. 2000) (statements that legal claims were "absurd," "ridiculous" and "meritless" were non-actionable statements of opinion that were neither precise nor capable of being proven false). Therefore, Goldberg's characterizations of plaintiff constitute nonactionable opinion. They also directly pertain to the state court litigation and are thus privileged (as set forth above). As for Novella, plaintiff offers no reason to believe that his sole intent or motive was other than to file his client's affirmation in the ordinary course of litigation.

Plaintiff denies that he had defaulted on the lease or that he had "fled." He thus maintains that Goldberg, and by extension, Novella, defamed him by saying so (Compl. ¶¶ 263(a), (b)). In his February 23 email to Goldberg, however, plaintiff said that because he had been laid off from work, he could no longer pay rent for the apartment, which is default. Additionally, there is nothing in the email chain indicating that plaintiff was relieved of his responsibility to comply with the other terms of the lease, as to which he had most definitely defaulted, namely, failing to remove his furniture and personal effects from the apartment and return the keys. As plaintiff did neither, Goldberg's use of the term "default" was substantially true. Having been contacted about the criminal investigation relating to plaintiff's apartment, and then receiving plaintiff's emails that he had purchased an airline ticket to Canada and had already left the apartment, Goldberg's use of the term "fled," is not false but substantially true (see discussion above).

Goldberg's, and perhaps by extension, Novella's, characterization of plaintiff's state court action as a method of seeking retribution (Compl. ¶¶ 264-265) also constitutes a

nonactionable opinion which, as it is based on disclosed facts, namely, the tone of the complaint, its lack of merit, and the absence of any loss, monetary or otherwise, is substantially true.[10]

Accordingly, there is no need to address damages. Count V must be dismissed.

### (b)    Attorney Deceit (Jud. L. § 487)

Pursuant to Judiciary Law § 487, in pertinent part, "[a]n attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . .

is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

Relief sought under this statute "is not lightly given, and requires a showing of *egregious* conduct or a *chronic and extreme pattern of behavior on the part of the defendant attorneys*."

*Kaufman v. Moritt Hock & Hamroff, LLP*, 192 A.D.3d 1092, 1093, 141 N.Y.S.3d 371 (2d Dep't 2021) (emphases supplied; citation and internal quotation marks omitted); *Ray v. Watnick*, 182 F. Supp. 3d 23 (S.D.N.Y. 2016) (Rakoff, J.); *see also Bryant v. Silverman*, 284 F. Supp. 3d 458, 472-73 (S.D.N.Y. 2018) ("numerous New York State courts interpreting the statute, as well as federal courts construing the state court decisions, have concluded that liability attaches under these statutes only if the deceit is 'extreme' or 'egregious.'"); *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 228, 692 N.Y.S.2d 361 (1st Dep't 1999) (for liability to attach, defendants must have engaged in a "chronic, extreme pattern of legal delinquency"), *lv dismissed* 94 N.Y.2d 859 (1999).

---

[10]    Plaintiff has experience filing meritless defamation claims against "parties involved in providing information to the proper authorities in connection with the suspected commission of a crime." *Blecher v. Progressive Select Ins. Co.*, No. 25-cv-4448, 2025 LX 515813 at *13 (E.D. Pa. Dec. 19, 2025) (dismissing action with prejudice, including defamation claim based on defendant's referral to authorities to institute criminal proceedings).

Limiting liability under the statute to "intentional egregious misconduct" relieves a lawyer of liability where the action against him is grounded, as here, "on claims that an attorney made meritless or unfounded allegations in state court proceedings [which] would not be sufficient to make out a violation of § 487." *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008). According to the *Ray* court, "[i]f § 487 were to cast too wide a net, it would chill proper advocacy and encourage parties to use § 487 suits as tactics to stall and gain leverage over their opponents, with highly detrimental effects on the fair and efficient progress of litigation."

For this claim, plaintiff pleads instances of conduct purporting to warrant charging Novella with a misdemeanor and ordering him to pay treble damages (Compl. ¶¶ 272-314). Even accepting plaintiff's allegations as true, he offers nothing to show that Novella was intentionally and extremely or egregiously deceitful about conveying his legal positions, even if wrong, and plaintiff admits that Novella's communications had no impact. They certainly do not shore up plaintiff's bizarre theory that there exists an elaborate racketeering enterprise or criminal conspiracy among the landlord, TheGuarantors, and Novella. Nevertheless, to indulge plaintiff, we address each allegation.

1. Paras. 272-276: The alleged factual error set forth in the answer verified by Goldberg (NYSCEF #31, ¶ 42) that the landlord received no compensation from TheGuarantors for plaintiff's failure to pay March rent, was promptly updated, which plaintiff concedes in the complaint here (¶ 276). In any event, the mere filing of the answer containing an error does not reflect extreme or egregious deceit or an intent to deceive. Plaintiff's concoction of a baseless and elaborate conspiracy among the landlord, Novella, and TheGuarantors adds nothing.

2. Para. 277: The mere filing of the answer in which Goldberg denied the existence of the "Termination Agreement" falls far short of extreme or egregious deceit or an intent to deceive under circumstances where the parties disagree on its terms and impact.

3. Paras. 280-287: Plaintiff's allegation that Novella adopted and incorporated into his Memorandum of Law "material falsehoods" set forth in the Goldberg affirmation regarding the painting and plastering of the apartment depends solely on plaintiff's baseless supposition that the DA Networks April 7 invoice (ECF 26-5) was for work performed on April 7 when, he assumes, a new tenant was in possession.

Additionally, with regard to the DA Networks invoice, plaintiff deceptively provides a document relating to a similarly named Florida entity, failing to reveal that DA Networks is a New York domestic corporation listed on the New York State Department of State web portal as "active." (*See* Graifman Decl., Ex. A). Consequently, plaintiff's allegations do not even tend to demonstrate extreme or egregious deceit or an intent to deceive.

4. Para. 289: Novella's alleged attempt to vacate his client's default by telling plaintiff that he had failed to provide additional notice pursuant to CPLR 3215(g), even if mistaken, which we need not controvert here, is neither extremely nor egregiously deceitful, nor does it reflect an intent to deceive.

5. Paras. 290, 293: Novella's alleged "threat" to seek sanctions for plaintiff's failure to provide a "safe harbor" letter based on an allegedly inapplicable federal requirement, likewise does not constitute extreme and egregious deceit. Plaintiff misrepresents Novella's November 3, 2025 email that reflects only a request for a copy of any "safe harbor" letter, which was not statutorily-based. Plaintiff's use of the word "threat," moreover, is fatally conclusory.

6. Paras. 291-292, 294-296: Novella's alleged demand that plaintiff withdraw his motion for a default judgment on the allegedly false basis that plaintiff had accepted the defendants' late answer by filing subsequent motions to strike also does not constitute extreme or egregious deceit or an intent to deceive within the meaning of Judiciary Law § 487.

7. Paras. 297-301, 304-308: Given the plain wording of Novella's demand in the state court answer for a judgment for attorney fees in the amount of $100,000, it is clear that the inclusion of "to date" was a mistake (*see accompanying* Novella Decl., ¶¶ 10-11), as plaintiff concedes that such a demand would be impossible.

8. Paras. 302-303: While plaintiff claims that Article 19(A)(5) of the lease permits fee recovery for actions brought only by an owner, he ignores the words after that provision, namely, that it requires him to "reimburse Owner . . . *for defending lawsuits brought against Owner because of your actions*" (emphasis added). Consequently, this claim has no factual basis.

9. Paras. 311-314: Plaintiff fails to allege facts sufficient to show that Novella suborned perjury when he filed the affirmation wherein Goldberg denied having authority to bind the landlord as an initial reason, among others, as the authority of a landlord's agent to bind the landlord may vary according to the circumstances.

In sum, plaintiff's allegations, individually or in the aggregate, do not sustain his claim that Novella violated Judiciary Law § 487 as none of them even tends to show that Novella acted with extreme or egregious deceit or that he intended to deceive. Plaintiff here is doing just what the federal courts, *supra*, forbid: misusing Judiciary Law § 487.

Accordingly, complaint count VI must be dismissed.

**(c)** **Aiding & Abetting Fraud**.

"A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the

underlying fraud, actual knowledge, and substantial assistance." *Oster v. Kirschner*, 77 A.D.3d 51, 905 N.Y.S.2d 69 (1st Dep't 2010). For the reasons set forth, *supra*, in the section on Judiciary Law § 487, plaintiff fails to plead fraud or deception plausibly. Accordingly, no factual basis exists for finding that Novella aided and abetted a fraud and Count VII must be dismissed.

       2.     <u>**Dismissal Should Be With Prejudice**</u>

The state claims should be dismissed with prejudice for the same reasons as the RICO claims (Point II.B, *supra*).

**B.**      **Alternatively, the Court May Decline**
          **<u>Exercise of Supplemental Jurisdiction</u>**

Alternatively, the court has discretion to decline supplemental jurisdiction over the state clams, albeit we believe the claims are all related and may be easily dismissed. *See Pu*, *supra*, 2010 U.S. Dist. LEXIS 21875 at *16.

## IV.

## NOVELLA ADOPTS THE<br>GOLDBERG MOTION TO DISMISS

Novella incorporates by reference the Goldberg motion to dismiss (ECF 58 – 61), to the extent applicable to Novella.  In the event this court does not dismiss this action outright on the merits, the court may, in its discretion, abstain from hearing this action under the Colorado River doctrine (Goldberg MOL, ECF 59 & 61 at 4-7).  State courts have concurrent subject matter jurisdiction over RICO, *Kuriyan*, *supra*, 2024 U.S. Dist. LEXIS 131725 at *16, *citing Tafflin v. Levitt,* 493 U.S. 455, 467  (1990), and there is no reason that the state court would lack jurisdiction over the defendants where the case pends in New York, where all the events took place. And like the other defendants here, Novella as attorney was an *agent* of certain of the state court defendants, as he represented them there.  *See, e.g.*, Blum v. Perlstein, 47 A.D.3d 741, 851

N.Y.S.2d 596 (2d Dep't 2008) (general release of party and its "agents" released party's attorney from liability, citing cases).

<h2 style="text-align:center">V.</h2>

<h3 style="text-align:center">THE COURT SHOULD CONSIDER<br>SANCTIONING PLAINTIFF</h3>

While plaintiff is *pro se*, he is a New York admitted attorney who worked at a top-tier law firm. He nonetheless misrepresents the record, has multiplied proceedings, and advances frivolous and burdensome arguments in bad faith. The court has discretion to impose sanctions, including an award of attorney fees, under its inherent authority. *See, e.g.*, Lazzarino v. Kenton Assocs., Ltd., 998 F. Supp. 364, 367-68 (S.D.N.Y. 1998).

<h3 style="text-align:center">CONCLUSION</h3>

Plaintiff's RICO claim should be dismissed, along with the state law claims if the court can easily do so for reasons of judicial economy; or alternatively, the court should decline to exercise supplemental jurisdiction; and/or alternatively dismiss due to Colorado River abstention; and impose, or grant Novella leave to file a motion seeking, sanctions against plaintiff for filing this frivolous action; and grant Novella such other and further relief as the court deems just and equitable.

Dated: New York, New York
      February 24, 2026

By: _____ /s *Brian D. Graifman* _____
        Brian D. Graifman
        BORAH, GOLDSTEIN, NAHINS &
        GOIDEL, P.C.
        377 Broadway
        New York, New York 10013
        (212) 431-1300 x322
        bgraifman@borahgoldstein.com
        *Attorney for Defendant Anthony J. Novella*

## CERTIFICATE OF COMPLIANCE OF WORD COUNT

I hereby certify that the Memorandum of Law of Supporting Anthony Novella's Motion to Dismiss (Feb. 24, 2026 complies with Rule 3.C of the Court's Individual Rules of Practice. According to the word processing system used to prepare that document, the total number of words, exclusive of the caption, tables of contents, table of authorities, and signature block, and *including footnotes*, is **8,701**.

Dated: February 24, 2026

*/s/ Brian D. Graifman*
Brian D. Graifman