USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/19/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN DAVID BLECHER,

Plaintiff,

-against-

MATTHEW S. GOLDBERG, et al.,

Defendants.

25-CV-10341 (JLR) (BCM)

**ORDER SCHEDULING HEARING ON MOTIONS TO DISQUALIFY, DENYING MOTIONS TO STRIKE AND FOR ALTERNATIVE SERVICE, AND STAYING DISCOVERY**

**BARBARA MOSES, United States Magistrate Judge.**

The above-titled action has been referred to Magistrate Judge Barbara Moses for general pretrial management, including scheduling, discovery, non-dispositive pretrial motions, and settlement, pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkt. 96.) Henceforth, all pretrial motions and applications, including those related to scheduling and discovery (but excluding motions to dismiss or for judgment on the pleadings, for injunctive relief, for summary judgment, or for class certification under Fed. R. Civ. P. 23) must be made to Judge Moses, in compliance with this Court's Individual Practices in Civil Cases, available on the Court's website at https://nysd.uscourts.gov/hon-barbara-moses.

## Background

This action is one of two lawsuits, both filed by plaintiff Jonathan David Blecher, arising out of his request to terminate his lease for a one-bedroom apartment in Manhattan. In both cases, plaintiff complains that after he agreed to surrender his $4,100 security deposit, in exchange for early termination of the lease, his landlord and/or its agents "double dipped" by making a $4,100 insurance claim (against the bond that plaintiff provided at the start of his tenancy) for the same month's rent that was covered by the surrendered security deposit. Thereafter, plaintiff alleges, the insurance claim was fraudulently recharacterized as a claim for non-existent furniture removal, paint, and plastering expenses.

On August 15, 2025, plaintiff filed a state court action against WAM Equity Partners LLC, WAM Partners, Van Dorn Holdings LLC, William Moses Co., Inc. (collectively, the Van Dorn Defendants), and The Guarantors (the insurance company), alleging putative class claims for breach of contract, fraud, unjust enrichment, violation of New York General Business Law § 349, and civil conspiracy to commit fraud. *See* Amended Complaint (Doc. No. 11), *Blecher v. WAM Equity Partners, LLC*, Index No. 160971/2025 (N.Y. Supr. Ct., N.Y. Cnty., Oct. 10, 2025).

On December 12, 2025, plaintiff filed this action against three individuals: Matthew S. Goldberg, an agent of the Van Dorn Defendants; Ronald Tang, an employee of The Guarantors; and Anthony J. Novella, the lawyer who initially represented the Van Dorn Defendants in state court. *See* First Amended Complaint (FAC) (Dkt. 70) ¶¶ 23-25. In his current, 558-paragraph, 150-page pleading, plaintiff alleges two federal claims, for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d), and five state law claims, for fraudulent inducement, breach of implied warranty of authority, defamation, attorney deceit, pleaded under N.Y. Jud. L. § 487,[1] and aiding and abetting fraud. FAC ¶¶ 308-558. Plaintiff, who is himself a lawyer, *see* FAC ¶ 4, brought both cases pro se.

On January 12, 2026, plaintiff moved in this Court to disqualify attorney Novella and any other attorney from his law firm, Borah, Goldstein, Nahins & Goidel, P.C. (Borah Goldstein), from

---

[1] Plaintiff's § 487 claim is based on attorney Novella's alleged conduct in his capacity as counsel for the Van Dorn Defendants in the state court action. For example, plaintiff alleges in this Court that he is entitled to damages because Novella signed and/or filed documents in state court falsely denying the allegations made by plaintiff in that forum, *see* FAC ¶¶ 469-90; made a "legally baseless" argument in a cross-motion, *id.* ¶ 495; made misrepresentations about "civil procedure" in an effort to persuade plaintiff to withdraw a default motion, ¶ 499; and filed a counterclaim in which his clients sought damages, including $100,000 in legal fees, before Novella's firm could have "legitimately generated" fees in that amount. *Id.* ¶¶ 500-04.

representing any defendant in this action. (Dkt. 26.)[2] On January 29, 2026, attorneys Jeremy Shockett and Jason Kosek of Anderson Kill PC (Anderson Kill) appeared as successor counsel for defendant Goldberg (Dkts. 33, 34), in place of attorney Graifman, who requested leave to withdraw. (Dkt. 35.) The withdrawal motion was granted (Dkt. 42), but did not moot the disqualification motion, because Graifman did not withdraw as counsel for Novella. On February 11, 2026, plaintiff moved to disqualify the Anderson Kill attorneys from representing any defendant in this action. (Dkt. 50.) On February 17, 2026, plaintiff moved pursuant to Fed. R. Civ. P. 12(f) to strike several paragraphs from a declaration previously filed by defendant Novella as "scandalous and impertinent." (Dkt. 57 at 2.)

On February 17 and 24, 2026, defendants Goldberg and Novella, respectively, moved to dismiss plaintiff's original Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 12(b)(6). (Dkts. 58, 65.) On February 27, 2026, plaintiff filed his First Amended Complaint as of right, thereby mooting the motions to dismiss. On March 5, 2026, plaintiff moved (for the second time) for leave to serve defendant Tang by email, on the ground that Tang has been evading service. (Dkt. 78.) On March 11 and 14, 2026, defendants Novella and Goldberg, respectively, moved to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and for related relief. (Dkts. 82, 86.)[3] Also on March 14, Novella moved for a stay of discovery pending decision on his motion to dismiss. (Dkt. 90.) Plaintiff opposes any discovery stay. (Dkt. 93.)

---

[2] Attorney Novella has never appeared as counsel of record in this action. Attorney Brian Graifman, from the same firm, initially appeared as counsel for both Goldberg and Novella.

[3] Separately, Goldberg requested an extension, *nunc pro tunc*, of his deadline to file his motion to dismiss, explaining that "a calendaring error caused the one-day delay." (Dkt. 89.) Plaintiff does not oppose that request (Dkt. 92) which is hereby GRANTED.

**Disqualification Motions**

Plaintiff's attorney disqualification motions, which are fully briefed, are within the scope of my reference. *See Heard v. Statue Cruises LLC*, 2020 WL 1285456, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) (collecting cases). I will hear argument on those motions on **April 29, 2026, at 11:00 a.m.**, in Courtroom 20A, of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. This is an in-person proceeding.

**Motion to Strike**

Plaintiff's Rule 12(f) motion, which is also fully briefed, asks the Court to strike several paragraphs of a declaration previously submitted by Anthony J. Novella (Dkt. 45) (as well as unspecified "corresponding sections" of certain briefs) on the ground that those paragraphs "contain scandalous and impertinent matter." (Dkt. 57 at 2.) However, a motion under Rule 12(f) may only be made to strike "a pleading," Fed. R. Civ. P. 12(f), not a declaration. *See Shabazz v. City of New York*, 2021 WL 633748, at *3 n.1 (E.D.N.Y. Feb. 17, 2021) (denying motion to strike an affidavit); *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 499 (S.D.N.Y. Mar. 24, 2017) (denying motion to strike a declaration), *aff'd*, 719 F. App'x 47 (2d Cir. 2017) (summary order). In his reply letter, received today, plaintiff attempts to bolster his motion by referring to the Court's inherent authority to strike. (Dkt. 100 at 3-4.) The case plaintiff cites for this purpose, however, reiterates in clear terms that "Rule 12(f) does not authorize this court to strike documents other than pleadings," and denied a pro se plaintiff's motion to strike on that ground. *Sierra v. United States*, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (collecting cases).

In any event, the paragraphs that plaintiff seeks to strike bear directly on allegations made by plaintiff in the First Amended Complaint. In those paragraphs, Novella attests that he first

became involved with "plaintiff's matter" when he learned – initially from a New York Police Department detective, and then from the New York County District Attorney's Office – that a criminal investigation was underway concerning a "dangerous" occupant of the building where plaintiff was a tenant, and that Grand Jury Subpoena had been issued. (Dkt. 45 ¶¶ 26-30.) Novella was able to "narrow the subpoena's scope, limiting it to Unit 10-D, resulting in a subpoena response covering two occupants, one of them being Blecher, the other being the tenant of Unit 10-D immediately prior to Blecher." (*Id*. ¶ 31.) Soon thereafter, Blecher terminated his lease and – in Novella's characterization – "fled the country." (*Id*. ¶ 32.) These statements are directly relevant to plaintiff's claims for defamation and attorney deceit, which rest, in part, on his allegation that defendants falsely accused him of criminal misconduct and "impl[ied] the existence of undisclosed, objective criminal . . . misconduct." FAC ¶¶ 138-42, 399-400.[4] Indeed, plaintiff expressly seeks damages in this Court for the injury to his "personal and professional standing" caused by defendants' allegedly defamatory "Criminal Flight" narrative. *Id*. at 147 ¶ C(1). Having put at issue – in this action – the truth of the statements made by Novella in his declaration, plaintiff cannot now expect the Court to strike those statements from the record, under Rule 12(f) or otherwise. Accordingly, the motion to strike is DENIED.

### Alternative Service Motion

Plaintiff's renewed motion for leave to serve defendant Tang by e-mail is DENIED, without prejudice to renewal, because it is not supported by any admissible evidence showing, for example, that "a second, high-fidelity skip-trace successfully confirmed Defendant Tang's current residence"

---

[4] Defendants' actionable statements, according to plaintiff, include affirmations and briefs – filed in the state court action – in which Goldberg and/or Novella make statements substantially similar to those that plaintiff asks this Court to strike from Novella's federal declaration. *See* FAC ¶¶ 425-29, 435, 451, 459 (alleging that Novella "published the 'Criminal Flight' and other smears by filing them on the public docket").

on West 28th Street; that plaintiff's process server "attempted personal service at this high-security residential address on February 21, 27, 28, and most recently at 7:14 AM on March 5, 2026," but was unable, for various reasons, to effect service; or that Tang's "corporate email address" is "active and monitored." (Dkt. 78 at 1-2.) Should plaintiff choose to renew his motion, he must support all of the factual assertions upon which it rests with admissible evidence. Additionally, plaintiff must serve his motion papers upon "The Guarantors' legal department" (*id.* at 2) and file proof of such service upon the docket.

### Discovery Stay

District courts have "considerable discretion" to stay discovery upon a showing of good cause, *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 79 (S.D.N.Y. 2020), which can be furnished by the pendency of a motion to dismiss that presents "substantial arguments for dismissal." *Id.* (quoting *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (cleaned up)). In evaluating whether the movant has demonstrated good cause, courts typically consider "(1) the breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion." *Hong Leong Fin. Ltd. (Singapore)*, 297 F.R.D. at 72 (quotation omitted); *accord Del Mar TIC I LLC v. Bancorp Bank*, 2024 WL 1348501, at *2 (S.D.N.Y. Mar. 29, 2024) (Rochon, J.). Here, all three factors support the requested stay.

First, the discovery sought is broad, mirroring the breadth of plaintiff's federal pleading, which posits a "predatory . . . racketeering scheme," "[f]ar exceeding the scope of a mere rental dispute," which "utilizes digital forgery, extortion, and fabrication of evidence/business records to systematically defraud tenants and insurers," and "targets a large number of victims," of which plaintiff claims (on information and belief) to be "merely the most recent." FAC ¶¶ 1, 307. In search of other victims, plaintiff's first set of document requests seeks a "comprehensive

6

spreadsheet or database export" compiling "all instances from January 1, 2022 to the present," where (a) a tenant of any of the properties managed by the Van Dorn Defendants in New York vacated a unit prior to the original lease expiration; and (b) an insurance claim was filed for rent, turnover costs, or cleaning fees related to the same vacancy. (Dkt. 90-1 at 5.) Plaintiff also seeks numerous "raw" and native-format electronic source files, metadata, logs, and audit trails, as well as draft state court pleadings, internal Borah Goldstein communications, and other documents (*id*. at 4-8) that are clearly privileged unless, as plaintiff contends (*see* Dkt. 93 at 3), the crime-fraud exception applies. Discovery thus promises to be contentious.

Second, plaintiff had not identified any particular prejudice that he will suffer if discovery in this forum is delayed. Indeed, recognizing the challenges posed by his requests for internal Borah Goldstein drafts and communications, he offers to defer all discovery other than the production of "raw, non-privileged ESI," which, in his view, will not be unduly burdensome and will ameliorate the "imminent risk of spoliation," which he fears because "[d]efense counsel has repeatedly refused to formally certify the preservation of this digital evidence." (Dkt. 93 at 2-3.) Nothing in the Federal Rules, however, requires such a "certification." Moreover, defendants – like plaintiff – are already "under an obligation to preserve evidence." *Hubbuch v. Cap. One, N.A.*, 2025 WL 2161238, at *1 (S.D.N.Y. Feb. 3, 2025) (denying motion for early discovery to "preserve critical evidence" and "address significant risks of spoliation") (record quotations omitted). I note as well that this case is barely three months old, *see Pujals v. BDO USA, P.C.*, 2025 WL 2644238, at *4 (S.D.N.Y. Sept. 15, 2025) (Rochon, J.) (staying discovery where the prejudice to plaintiff would be minimal because the case was "barely six months old"), and that a stay in this forum will not prevent plaintiff from pursuing discovery in state court, where he makes many of the same factual allegations.

Third, defendants' motions to dismiss raise "substantial arguments for dismissal," *Ema Fin.*, 336 F.R.D. at 79, particularly as to plaintiff's RICO claims, upon which this Court's subject matter jurisdiction hangs. Thus, the motions may well "resolve the entire case if granted." *Pujals*, 2025 WL 2644238, at *4. "Given this and the prior two factors, the scales tip in favor of a discovery stay." *Id*.; *see also Del Mar*, 2024 WL 1348501, at *1 (granting a stay of discovery where success on the pending motion to dismiss "would dispose of the entire action"). Discovery is therefore STAYED pending the district judge's decision on the motions to dismiss.

### Plaintiff's Non-Motion "Motions"

Plaintiff has e-filed two of his letter-briefs as if they were letter-motions, when in fact they are responses to defendants' letter-motions. (*See* Dkts. 56, 93.) Plaintiff is directed to review § 13.1 of the Electronic Case Filing Rules, available at https://nysd.uscourts.gov/rules/ecf-related-instructions, to avoid this mistake in the future. Plaintiff may also seek assistance from the ECF Help Desk at (212) 805-0800.

### Motions Disposed

The Clerk of Court is respectfully directed to close the motions at Dkts. 56, 57, 62 (as moot), 78, 89, 90, and 93.

Dated: New York, New York
      March 19, 2026

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**