**ANDERSON KILL P.C.**
Jeremy Shockett, Esq.
Jason Kosek, Esq.
Anderson Kill P.C.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: 212.278.1000
*Attorneys for Defendant Matthew S. Goldberg*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN BLECHER <br><br>                  Plaintiff, <br><br>     v. <br><br> MATTHEW S. GOLDBERG; ANTHONY J. NOVELLA; and RONALD TANG, <br><br>                  Defendants. | Case No.: 1:25-CV-10341 |

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Jeremy Shockett, Esq.
Jason Kosek, Esq.
Anderson Kill P.C.
7 Times Square, 15th Floor
New York, NY 10036
Telephone: 212.278.1000
*Attorneys for Defendant Matthew S. Goldberg*

DOCS-100899142.1

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ............................................................................... 1

II.   GOLDBERG'S MOTION IS PROPER AND COLORADO RIVER ABSTENTION IS WARRANTED ..................................................................................... 2

      A.    Goldberg's Motion is Proper .................................................................... 2

      B.    Colorado River Abstention ....................................................................... 3

III.   PLAINTIFF DOES NOT PLAUSIBLY ALLEGE A CIVIL RICO CLAIM ........................ 4

      A.    Plaintiff Does Not Plausibly Allege an Enterprise Under RICO ........................... 4

      B.    Plaintiff Does Not Plausibly Allege Predicate Acts of Wire Fraud ....................... 5

      C.    Plaintiff Fails to Allege Both Open-Ended and Closed-Ended Continuity ........... 6

      D.    Plaintiff Fails to Allege Injury Under RICO ........................................................... 7

IV.   DEFENDANT HAD THE AUTHORITY TO EXECUTE A LEASE TERMINATION AND DID NOT ENGAGE IN FRAUDULENT INDUCEMENT OR BREACH OF IMPLIED WARRANTY .............................................................................. 9

      A.    Defendant Did Not Breach the Implied Warranty of Authority ........................... 9

      B.    Defendant Did Not Engage in Fraudulent Inducement ........................................ 9

V.   PLAINTIFF DOES NOT ADEQUATELY STATE A CLAIM FOR DEFAMATION ...... 10

VI.   CONCLUSION ................................................................................................... 12

WORD COUNT CERTIFICATION ...................................................................... 13

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Banks v. County of Westchester*,
  168 F. Supp. 3d 682 (S.D.N.Y. 2016)........................................................................10

*Bonadio v. PHH Mortg. Corp.*,
  No. 12 CV 3421(VB), 2014 WL 522784 (S.D.N.Y. Jan. 31, 2014).........................5

*Booth v. 3669 Delaware*,
  92 N.Y.2d 934 (1998) ...............................................................................................8

*Boyd v. Lansbury*,
  No. 23-CV-7459 (RER) (SIL), 2025 WL 948360 (E.D.N.Y. Mar. 28, 2025).........11

*Dalzell Management Co., Inc. v. Bardonia Plaza, LLC*,
  923 F.Supp.2d 590 (S.D.N.Y 2013)..........................................................................3

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) .................................................................................8

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................8

*Dittmer v. Cnty. of Suffolk*,
  146 F.3d 113 (2d Cir. 1998).........................................................................................3

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  726 F. Supp. 2d 225 (E.D.N.Y. 2010) .......................................................................8

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
  862 F. Supp. 2d 170 (E.D.N.Y. 2012) .......................................................................3

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989).....................................................................................................7

*New York State Cath. Health Plan, Inc. v. Acad. O & P Assocs.*,
  312 F.R.D. 278 (E.D.N.Y. 2015)................................................................................7

*Stepanov v. Dow Jones & Co.*,
  987 N.Y.S.2d 37 (N.Y. App. Div. 2014) ..................................................................10

*United States v. Indelicato*,
  865 F.2d 1370 (2d Cir. 1989).......................................................................................6

ii

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*United States v. Kelly,*
    128 F.4th 387 (2d Cir. 2025) ............................................................................4, 5

*United States v. Pizzonia,*
    577 F.3d 455 (2d Cir. 2009)................................................................................7

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.,*
    239 F.3d 517 (2d Cir. 2001)...............................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 8 .............................................................................10

DOCS-100899142.1

## I.    PRELIMINARY STATEMENT

Defendant Matthew S. Goldberg ("Goldberg") submits this reply brief in further support of his motion to dismiss against Plaintiff Jonathan Blecher ("Plaintiff").

In October 2024, Plaintiff entered a one-year residential lease for a property owned by Goldberg's employer WAM ("Landlord"). In February 2025, Plaintiff emailed Defendant stating, "I can no longer continue renting 150 W 58th st apt 10-D as I got laid off" and "I bought the ticket to Canada today." ECF No. 49-3; Goldberg Aff. ¶8. Acting with authorization from WAM, Goldberg agreed to terminate the lease at Plaintiff's request in exchange for WAM's retention of Plaintiff's $4,100 security deposit. ECF No. 49-3; Goldberg Aff. ¶9. This action traces directly to Plaintiff's email. Plaintiff started two frivolous actions arising from his own breach of the lease.

After Plaintiff's departure, Goldberg discovered that Plaintiff had abandoned personal belongings, furniture, and left the unit requiring re-plastering, repainting, and deep cleaning; all violations of Plaintiff's lease. Goldberg Aff. ¶14; ECF No. 60-1. Landlord expended significant time and money to restore the apartment to rentable condition.  Goldberg Aff. ¶18. The lease authorizes WAM to treat Plaintiff as a holdover, discard or store any abandoned property at his expense, and charge him all removal costs. ECF No 60-1. Such provisions "will continue to be in effect after the end of this Lease." ECF No. 60-1.

Additionally, the lease states that the owner is entitled to reimbursement for certain fees and expenses, including: "(2) Repairing or replacing property damaged by Your misuse or negligence;…(4) Preparing the Apartment for the next tenant if You move out of your Apartment before the Lease ending date; [and] …(6) Removing all of your property after this Lease is ended…" ECF No. 60-1.

Although the parties mutually terminated the lease, Plaintiff abandoned his property and left the unit in disrepair. WAM retained the right to recover costs for Plaintiff's holdover, removal of his belongings, and restoration of the apartment. Goldberg submitted an insurance claim to The Guarantors for $4,100, which was approved, paid, and never reimbursed.

Plaintiff characterizes recovery efforts as "shifting justifications" supporting wire fraud and RICO. Defendants' actions reflect only WAM's and The Guarantors' efforts to recoup losses after accommodating Plaintiff's early termination.  Plaintiff responded aggressively, filing a state court action against WAM, its entities, and The Guarantors, followed by this duplicative federal action against Goldberg, Ronald Tang, and WAM's attorney, Anthony Novella.

## II.    GOLDBERG'S MOTION IS PROPER AND *COLORADO RIVER* ABSTENTION IS WARRANTED

### A.    Goldberg's Motion is Proper

Plaintiff argues that this Court cannot consider affidavits submitted by Defendants or factual allegations contained in their memoranda. Plaintiff argues that the Court must disregard Goldberg's affirmation and facts on this basis. However, the facts put forward by Plaintiff in his First Amended Complaint are misleading and incorrect. Goldberg's affirmation and statement of facts did not add new information to the dispute, but simply corrected misrepresentations made by Plaintiff. Therefore, the Court should consider Goldberg's affirmation and statement of facts.

Moreover, Defendant's motion to dismiss and this reply state facts that Plaintiff has not disputed. Plaintiff does not dispute that he emailed Defendant and stated he was leaving the apartment immediately.  Nor does Plaintiff dispute that he left his personal belongings and furniture in the apartment after the lease was terminated. Plaintiff fails to dispute that he caused damage to the apartment, which required repainting and replastering. Therefore, any fact set forth that was not disputed by Plaintiff should be accepted as true.

2

### B.    Colorado River Abstention

Plaintiff argues that this case should not be dismissed under *Colorado River* abstention. Defendant ignores as moot Plaintiff's first argument that the Court should not dismiss the claim because the state court cannot provide prompt resolution of the issue, as the state court case has since been reassigned to a new judge.

Plaintiff next argues that because the parties and the issues are not parallel, *Colorado River* abstention does not apply. For a federal court to abstain from exercising jurisdiction of a state proceeding, the proceeding must be parallel.  For proceedings to be parallel, "[p]erfect symmetry of parties and issues is not required." *Dalzell Management Co., Inc. v. Bardonia Plaza, LLC*, 923 F.Supp.2d 590, 597 (S.D.N.Y 2013).  Parallelism of the issues "is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.*

Here, Defendants Goldberg and Tang are employees of WAM and The Guarantor's, respectively, two entities named in the state court action. Novella, who represented WAM, is a Defendant here but is not a party to the state court action. However, "that fact does not render the proceedings non-parallel." *See First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012).  Accordingly, the parties in the two actions are sufficiently parallel. Federal and state proceedings "are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). Plaintiff sues Goldberg, Tang, and Novella for actions taken as employees of the entities named in the state court action, a transparent attempt to manufacture a non-parallel proceeding.

The issues are parallel. The state court action arises out of the same lease agreement, same lease termination, and the same abandonment of the apartment. Resolution of the state

3

court action will dispose of the claims asserted in this federal case, as a finding that the Defendants in the state action did not engage in wrongdoing would preclude liability against the Defendants here. Allowing both actions to proceed would result in duplicative litigation, waste judicial resources, and create a substantial risk of inconsistent outcomes.

The Court must evaluate six factors to determine whether abstention is proper: whether "(1) the controversy involves a res over which one of the courts has assumed jurisdiction; (2) the federal forum is less inconvenient than the other for the parties; (3) staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) federal law provides the rule of decision; and (6) the state procedures are adequate to protect the plaintiff's federal rights." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).

Each factor favors abstention. The state court has jurisdiction over the lease, the breach, and the alleged damages. All parties appeared in the earlier filed state action, making that forum more convenient. Once the state court resolves this dispute, this action is moot. This is a straightforward breach of lease case, not a RICO claim, no matter how Plaintiff dresses it up. The Court should apply *Colorado River* abstention to dismiss.

## III.     PLAINTIFF DOES NOT PLAUSIBLY ALLEGE A CIVIL RICO CLAIM

### A.     Plaintiff Does Not Plausibly Allege an Enterprise Under RICO

Plaintiff argues that he adequately pleads an enterprise because he has shown that the alleged "WAM-Surety Enterprise" and the Defendants are distinct. However, that is not the only requirement for alleging an enterprise under RICO. The Second Circuit in *United States v. Kelly*, recently held that an association-in-fact enterprise need not have an explicitly fraudulent or illegal common purpose to be cognizable as an enterprise under RICO. However, the court held

4

that the government still had to prove a pattern of racketeering activity and a nexus between the enterprise and that pattern. *See United States v. Kelly*, 128 F.4th 387, 411 (2d Cir. 2025). The requisite nexus between the RICO enterprise and the predicate racketeering acts may be established "by evidence that the defendant was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise." *Id.* (citing *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992)).

This is a standard business transaction, wherein Plaintiff signed a lease, breached the lease, and was penalized. Plaintiff's allegations demonstrate only that the Defendants acted within the scope of their professional roles. *See Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421(VB), 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014) (dismissing RICO claim where plaintiff's "only factual allegations relating to the enterprise are that its members had ongoing business relationships."). Goldberg did not engage in predicate acts. He acted in the scope of his employment with WAM, seeking to recoup losses incurred from a defaulting tenant. Plaintiff's attempt at alleging an enterprise among the parties fails because he cannot demonstrate that the Defendant's interactions constituted anything more than standard business relationships and predicate acts sufficient to allege RICO.

**B.    Plaintiff Does Not Plausibly Allege Predicate Acts of Wire Fraud**

Plaintiff argues that shifting justifications for collecting a valid debt constitute a "wrongful, algorithmic generation of pretexts to match a stolen sum" and a scheme to defraud. Plaintiff Opp. at 10. Goldberg's actions do not constitute predicate acts of wire fraud supporting a RICO claim. Goldberg's actions constituted a valid attempt to collect funds owed under the lease after Plaintiff abandoned the apartment, left it in disrepair, and made no effort to restore it. Plaintiff left behind furniture, personal belongings, holes in the wall, and scratches in the paint. The debt against him is legitimate.

5

The lease gives WAM authority to collect amounts owed when a tenant abandons furniture and personal property and leaves the apartment requiring restoration. WAM retained that authority regardless of the early termination. Because the insurance claim to The Guarantors was valid, no scheme to defraud existed.

Plaintiff's "badges of fraud" allegations regarding the "April 7th Receipt" do not demonstrate forgery or wire fraud. A date on an invoice shows only when it was generated, not that it is fraudulent. Plaintiff's vague claim of familiarity with "commercial billing practices" is not evidence of forgery. Plaintiff Opp. at 11. Plaintiff's allegation that DA Networks, Inc.'s NYC Department of Buildings license and Workers' Compensation insurance had expired does not establish that the work was never performed. Notably, Plaintiff never attests that the apartment was in rentable condition, he simply assumes someone else would clean his mess for free.

### C.    Plaintiff Fails to Allege Both Open-Ended and Closed-Ended Continuity

Plaintiff points out an authority which Defendant erroneously failed to consider in its initial argument. Even though it is true that a single scheme may constitute a RICO pattern under *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).[1] Even under the most favorable reading, Plaintiff has not pled any allegedly fraudulent acts.

Plaintiff's own argument undercuts his position. He contends that Goldberg agreed to a mutual termination that retained the $4,100 deposit to offset losses tied to the remainder of the lease, and that WAM cannot recoup losses on a liability already satisfied. Plaintiff never disclosed to Goldberg that he left his furniture behind and abandoned the apartment in a state of disrepair before attempting to break his lease. That omission was itself fraudulent inducement.

---

[1] In *United States v Indelicato*, Court held two related acts (three murders) could constitute a "pattern" under a RICO scheme.

6

Plaintiff fails to plead open-ended continuity by failing to show that the alleged scheme has "a specific threat of repetition extending indefinitely into the future." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240-41 (1989); *United States v. Pizzonia*, 577 F.3d 455, 465 (2d Cir. 2009). If an enterprise is primarily engaged in a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *New York State Cath. Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 296 (E.D.N.Y. 2015). Plaintiff fails to allege that Defendants engaged in predicate acts. Even if Plaintiff could allege predicate acts, he fails to allege that they imply a threat of continued criminal activity. Therefore, he fails to allege open-ended continuity. Plaintiff's conclusory allegations are insufficient to survive this motion to dismiss.

Closed-ended continuity requires "a series of related predicates" extending over a substantial period. *New York State Cath. Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 296 (E.D.N.Y. 2015). The Second Circuit rarely holds that periods of less than two years constitute a "substantial period of time." *Id.* Plaintiff points only to his allegation that "the vendor's requisite Department of Buildings license and insurance expired in June 2023" to allege that the Defendants have engaged in fraudulent conduct for a period of two years or more. Plaintiff Opp. at 19. Plaintiff fails to show that this allegation, even if true, has any bearing on the Defendant's conduct. Plaintiff fails to establish close-ended continuity. Plaintiff asks the Court to take the same factual leaps of faith he has taken to infer a RICO violation has taken place. That is not enough to survive a motion to dismiss.

### D.    Plaintiff Fails to Allege Injury Under RICO

Plaintiff fails to adequately allege a RICO claim, and even if he could, he suffered no injury. The Guarantors stopped pursuing Plaintiff for damages owed, so he incurred no monetary

loss. His claimed damages from "conversion" of his $4,100 security deposit and "surrender" of his leasehold also fail. The mutual termination agreement explicitly permitted WAM to retain the deposit, and Plaintiff himself requested the early termination when he emailed Goldberg stating he could no longer continue the lease. A RICO plaintiff has standing only if injured in his business or property by the conduct constituting the violation, and only when his actual loss is clear and definite. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). Speculative injuries cannot survive. *See DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010). Plaintiff's alleged injuries to his unidentified career are speculative and self-inflicted.

Plaintiff's reliance on *Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003), is misplaced. Plaintiff was not asked to abandon the apartment. WAM expected him to honor his lease. Plaintiff's conclusory allegation that he "relinquished claims" without identifying any, cannot survive a motion to dismiss. WAM never agreed to release Defendant from all claims arising from the lease agreement. Plaintiff is a sophisticated attorney who knows this, yet persists in a verified pleading asserting otherwise.

The termination email, stating WAM would "agree to a mutual termination...provided that we retain your security deposit" is not a clear and unambiguous release of all claims. *See Booth v. 3669 Delaware*, 92 N.Y.2d 934, 935 (1998). Worse, Plaintiff induced the email agreement by concealing the apartment's condition.

Each element of fraudulent inducement is satisfied. Plaintiff omitted the apartment's condition, knowing it was material, to induce early termination. WAM reasonably relied on Plaintiff's implicit representation that he left the apartment in acceptable condition. WAM was damaged as a result.

8

## IV.    DEFENDANT HAD THE AUTHORITY TO EXECUTE A LEASE TERMINATION AND DID NOT ENGAGE IN FRAUDULENT INDUCEMENT OR BREACH OF IMPLIED WARRANTY

### A.    Defendant Did Not Breach the Implied Warranty of Authority

Plaintiff argues that if Goldberg did not have the authority to enter into a lease termination agreement, then he committed a breach of the implied warranty of authority.

Here, Defendant did have the authority to execute and bind the parties to the termination of Plaintiff's lease. This action was in response to Plaintiff's own desire to terminate the lease because he had been "laid off" and had "purchased a ticket to Canada." Defendant not only purported to have authority, but actually possessed it, as it was conferred to him to enter into a mutual termination agreement on behalf of WAM. Plaintiff's lease was, in fact, terminated, thereby confirming Defendant's authority to act. Accordingly, Defendant did not breach any implied warranty of authority. Plaintiff fails to adequately allege such a claim, as he cannot demonstrate that Defendant lacked requisite authority.

### B.    Defendant Did Not Engage in Fraudulent Inducement

Plaintiff argues that if Goldberg did have the authority to agree to a mutual termination agreement, Plaintiff was fraudulently induced to enter that agreement. Plaintiff again fails to assert that Defendant engaged in fraudulent inducement. Plaintiff alleges that the fraud "lies in the fact that, at the exact moment Goldberg promised the deposit would 'offset' all future losses, he harbored the preconceived, undisclosed intent to remain silent, take possession of the unit, and immediately pursue those exact same 'losses' through a $4,100 insurance claim…" Plaintiff's Opp. at 23-24.  The fraudulent inducement was actually committed by Plaintiff, who failed to disclose the condition of the apartment before leaving.

Goldberg's action, namely, filing a $4,100 insurance claim with The Guarantor's after Plaintiff's departure from the apartment, does not demonstrate a "preconceived, undisclosed

9

DOCS-100899142.1

intent" to commit fraud against Plaintiff. Rather, it reflects the conduct of a WAM employee attempting to recoup losses pursuant to the terms of a lease, after a tenant vacated the premises and left the apartment in a condition requiring deep cleaning and furniture removal. The claim was warranted because Plaintiff fraudulently concealed the condition of the apartment to induce Goldberg to agree to his early termination of the lease. Nothing in Plaintiff's lease prohibited WAM from recovering from Plaintiff based on the condition of the apartment. As discussed above, the lease expressly authorized WAM to recover from Plaintiff, even after the termination, for damage to the apartment or for furniture and personal belongings left behind.

Moreover, although Goldberg stated in the email exchange terminating Plaintiff's lease that the security deposit would be retained, he made no representation that WAM would forgo pursuing Plaintiff for additional costs associated with the condition of the apartment. Such recovery is expressly permitted under the lease. Accordingly, these allegations do not support a claim of fraudulent intent by Goldberg.

Because Plaintiff cannot establish by that Goldberg made misrepresentations to Plaintiff, he fails to assert that Goldberg is liable for fraudulent inducement, personally or otherwise.

## V.    PLAINTIFF DOES NOT ADEQUATELY STATE A CLAIM FOR DEFAMATION

Plaintiff fails to meet the defamation pleading standard required by Federal Rule of Civil Procedure 8. To assert a claim for defamation, a Plaintiff must identify the allegedly defamatory statements, the person who made them, the time at which they were made, and the third parties to whom they were published. *Banks v. County of Westchester*, 168 F. Supp. 3d 682, 697 (S.D.N.Y. 2016). Importantly, truth is an absolute defense against defamation, and substantially true statements are not actionable. *See Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 42 (N.Y. App. Div. 2014).

10

Defendant denies the vague allegations that he made statements to third parties regarding a "'March rent' default" or "false $4,100 balance" and further denies maintaining any "fabricated tenant ledge" or forging the "April 7th Receipt." It is true that Plaintiff defaulted on his lease and owed a balance to WAM. Plaintiff expressly acknowledged his recent lay-off and inability to continue paying rent in an email to Defendant, which constitutes a default under the lease terms. Plaintiff incurred a balance due to the damage he caused to the apartment and for leaving behind personal belongings and furniture upon vacating the apartment. Pursuant to the lease, WAM retained the right to seek recovery for such damages even after the mutual termination agreement. Accordingly, any alleged statements concerning Plaintiff's default or outstanding balance were substantially true and therefore cannot support a claim for defamation against Defendant.

Defendant also denies the allegations that he made statements to third parties regarding "criminal flight" and "vindictive litigation." Plaintiff alleges that Goldberg published these statements about Plaintiff to "real estate industry acquaintances and brokers," to "accounting personnel and superiors," and "underwriters and risk assessors." However, he fails to allege when these statements were made. Thus, a claim for defamation fails on that basis.

Finally, statements made by Goldberg in connection with judicial proceedings are protected by the litigation privilege. The challenged statements were made in a sworn affirmation submitted to the state court and reflect Defendant's opinions and understanding of Plaintiff's conduct and motive. The litigation privilege is an "extremely liberal" standard and not only are pleadings themselves are protected, but so is any statement that is "at all pertinent to the underlying proceeding." *See Boyd v. Lansbury*, No. 23-CV-7459 (RER) (SIL), 2025 WL 948360 at *2 (E.D.N.Y. Mar. 28, 2025). Therefore, because Defendant's statements were made during

11

DOCS-100899142.1

litigation and are pertinent to the proceedings, they do not constitute defamation and are

protected by the litigation privilege.

## VI.    CONCLUSION

For the foregoing reasons, Defendant Matthew S. Goldberg respectfully requests that the

Court Dismiss Plaintiff Jonathan Blecher's Complaint with respect to Defendant Matthew S.

Goldberg.

Dated: March 24, 2025

By:    /s/ *Jeremy Shockett*
Jeremy Shockett, Esq.
Jason Kosek, Esq.
Anderson Kill P.C.
7 Times Square, 15th Floor
New York, NY 10036
Telephone:  212.278.1000
*Attorneys for Defendant Matthew S. Goldberg*

12

**WORD COUNT CERTIFICATION**

I, Jeremy Shockett, certify that the foregoing Reply complies with the word count limit as it contains **3,426** words (excluding caption, table of contents and table of authorities).

Dated: March 24, 2026

                                                  /s/ *Jeremy Shockett*
                                                  Jeremy Shockett, Esq.

13

DOCS-100899142.1