UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JONATHAN BLECHER,                                    1:25-cv-10341-JLR-BCM

        Plaintiff,

   -against-

MATTHEW S. GOLDBERG,
ANTHONY J. NOVELLA, and
RONALD TANG,

        Defendants.
------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW SUPPORTING
ANTHONY NOVELLA'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

Dated:  New York, New York
       March 30, 2026

                                   Brian Graifman
                                   BORAH, GOLDSTEIN, NAHINS &
                                    GOIDEL, P.C.
                                   377 Broadway
                                   New York, New York 10013
                                   212-431-1300 x322
                                   212-965-2566 dir
                                   bgraifman@borahgoldstein.com
                                   *Attorney for Defendant Anthony J. Novella*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Preliminary Statement............................................................................................................ 1

Argument ............................................................................................................................... 2

    I.      Plaintiff Misapplies the Legal Standard and Misapprehends Novella's
           Declaration, Which Does Not Negate Plaintiff's Obligation To Plead
           Non-Conclusory Facts ............................................................................................ 2

    II.     The Rico Claims Should Be Dismissed ................................................................. 4

           A.     Plaintiff Does Not Plausibly Allege Cognizable Predicate Acts ............... 4
           B.     Plaintiff Alleges No Cognizable RICO "Pattern" ...................................... 6

    III.    The State Law Claims Should Be Dismissed or Jurisdiction Declined ................. 7

           A.     The Court Should Exercise Supplemental Jurisdiction
                 Over The State Law Claims To Dismiss Them As Inadequate ................. 7
           B.     Exercising That Jurisdiction, The State Law Claims Should
                 Be Dismissed As Meritless ........................................................................ 7

                1.     Defamation.................................................................................... 7
                2.     Attorney Deceit (Jud. L.487) ....................................................... 11
                3.     Aiding and Abetting Fraud ........................................................... 11

    IV.    Plaintiff's Conduct Warrants Sanctions............................................................... 11

Conclusion .......................................................................................................................... 13

## TABLE OF AUTHORITIES

### CASES

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994)......................................................................................5-6

*Banks v. Cty. of Westchester*,
  168 F. Supp. 3d 682, 697 (S.D.N.Y. 2016)................................................................ 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 556-57 (2007) ...................................................................................... 2

*Blecher v. Progressive Select Ins. Co.*,
  No. 25-cv-4448, 2025 LX 515813 at *13 (E.D. Pa. Dec. 19, 2025)................................. 11 n.4

*Gabovitch v. Shear*,
  No. 95-1055, 1995 U.S. App. LEXIS 32856,
  1995 WL 697319 (1st Cir. Nov. 21, 1995) (unpublished)............................................. 6

*Midwest Grinding Co. v. Spitz*,
  976 F.2d 1016, 1022 n.3 (7th Cir. 1992) ................................................................... 6

*Mosesson v. Jacob D. Fuchsberg Law Firm*,
  257 A.D.2d 381, 683 N.Y.S.2d 88 (1st Dep't), *lv den*ied, 93 N.Y.2d 808 (1999) ................... 10

*People v. Taveras*,
  228 A.D.3d 410, 411, 212 N.Y.S.3d 330 (1st Dep't 2024) ........................................... 9

*People v Yazum*,
  13 NY2d 302, 304 (1963) ....................................................................................... 9

*SEC v. Frank*,
  388 F.2d 486, 489 (2d Cir. 1968)........................................................................... 5, 12

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015).................................................................................... 6

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992).................................................................................. 6

### RULES

FRCP 56(a) ......................................................................................................... 4
First Cir. Local R. 32.1.0(a)................................................................................ 6 n.3

## Preliminary Statement

Defendant Anthony J. Novella, through his undersigned attorney, submits this reply memorandum of law in further support of his motion (ECF 82) to dismiss the first amended complaint (ECF 70) (FAC) of plaintiff Jonathan Blecher, with prejudice and related relief.  The motion demonstrates that the FAC is fatally conclusory and defective (*see* Novella MOL, ECF 83 (**"MOL"**)), flaws plaintiff fails to overcome in his opposition (ECF 91 (**"Opp-MOL"**)).

Plaintiff in his opposition does not deny, and thus concedes, that:

- The court can take judicial notice of his state court filings (MOL at 1).

- The filings of plaintiff, a New York admitted attorney, should *not* be liberally construed as *pro se* submissions (MOL at 10 n.7).

- Suing an adverse party's attorney from one litigation in a subsequent litigation contravenes public policy, warranting rejection of the claims (MOL Point I).

- Dismissal should be *with prejudice*, without a no right to replead (MOL at 16 & 26).

As against attorney Novella, plaintiff vindictively pulls him into the underlying dispute as an individual federal party-defendant, based on the three months he spent as Borah Goldstein's assigned attorney, defending the landlord defendants in the initial stage of plaintiff's baseless state court case. Plaintiff distorts Novella's short-lived representation into an alleged RICO scheme, adding claims for defamation, attorney deceit, and aiding and abetting fraud.

Novella adopts Goldberg's motion to dismiss, including his reply (ECF 102), to the extent consistent with Novella's arguments.

**ARGUMENT**

**I.**

**PLAINTIFF MISAPPLIES THE LEGAL STANDARD
AND MISAPPREHENDS NOVELLA'S DECLARATION,
WHICH DOES NOT NEGATE PLAINTIFF'S
OBLIGATION TO PLEAD NON-CONCLUSORY FACTS**

Plaintiff uses Novella's declaration (ECF 82-1) as a platform for claiming that factual issues exist that "cannot be resolved on a motion to dismiss" (Opp-MOL at 1).  Not so, as plaintiff is obliged to plead non-conclusory facts, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) and not just "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

In the first part of his declaration, Novella merely sets forth: his position at Borah Goldstein, his limited dealings with the landlord defendants (ECF 82-1 ¶¶ 6-8), his non-involvement with the underlying landlord-tenant dispute (*id.* ¶¶ 9-10), his coordination of responses to the NYPD and District Attorney's Office (*id.* ¶¶ 11-16 & 27), and his non-involvement from the time of plaintiff's February 23, 2025 email until the filing of plaintiff's state court action (*id.* ¶¶ 17-18). Novella acted as the landlord defendants' attorney in plaintiff's state court case until Borah Goldstein was substituted out approximately three months later (*id.* ¶¶ 19-20).  Plaintiff offers no facts disputing any of this.

By his declaration, Novella provides the "Safe Harbor" email exchange (ECF 82-2) forming a basis for plaintiff's claim (Novella Decl. ¶¶ 23-24, *citing* FAC ¶¶ 255-269), which is proper on a motion to dismiss, and plaintiff nowhere disputes that this is a true copy.  Novella also provides a copy of the District Attorney's Office email to him and Goldberg (ECF 82-3 (redacted)) which, along with accompanying materials, are available for the court's *in camera*

review should it so desire (Novella Decl. ¶ 28).  Plaintiff nowhere disputes the validity of the email, which is provided informationally in any event.

While plaintiff insists that Novella admits in his declaration that the criminal investigation is not pertinent, plaintiff misunderstands that the investigation constituted a side show of only the underlying tenant dispute, prelitigation (Opp-MOL at 1 & 28, *comparing* 2/8/26 Novella Decl. opposing disqualification, ECF 45, ¶ 35 *with* 3/11/26 Novella Decl. supporting dismissal, ECF 82-1, ¶ 29).  Regardless, Magistrate Judge Barbara Moses has since issued her March 19, 2026 order (ECF 101), in relevant part denying plaintiff's motion to strike those allegations as scandalous and impertinent, determining that they "bear directly on allegations made by plaintiff in the First Amended Complaint" (*id.* at 4-5).[1]

Novella also confirms the point made in the moving MOL that the phrase "*to date*" used in connection with the "not less than $100,000 of fees, costs, and disbursements" recital in the answer that the landlord defendants "have and will continue to incur" was extra verbiage – an obvious mistake in view of the context, which plaintiff knows was a mistake but opportunistically embraces to manufacture a claim (Novella Decl. ¶¶ 21-22; MOL at 14-15 & 25).  Indeed, the subject sentence contains a mistake on its face, as it is not even in grammatical English: "Defendants have and will continue to incur legal fees, costs and disbursements based on Plaintiff's actions and conduct before and after commencement of this action, which, to date, totals not less than $100,000.00" (Answer, NYSCEF #31, ECF 64-1 at ¶ 84) – which should begin: "Defendants have *incurred* and will continue to incur…."  Regardless, plaintiff concedes the mathematical impossibility that $100,000 of legal fees could have been expended by the time

---

[1]     Magistrate Judge Moses implicitly rejected plaintiff's "side show" arguments, made there (Plaintiff's Strike Reply MOL, ECF 100, at 1, 3-7, 10-11). See also the "side show" discussion in the defamation section, *infra*, at pg. 10.

of the filing of that initial answer (FAC ¶ 287), and Novella agrees (MOL at 14-15), leaving no plausible factual dispute.

The remaining paragraphs are merely informational, such as the status of the state court case, and non-controversial matters (Novella Decl. ¶¶ 25-26).  Additionally, any "factual dispute" must constitute a "*genuine* dispute" as to a "*material* fact" (FRCP 56(a) (emphases added)).  Finally, the court may in its discretion ignore any portions of the Novella declaration that fall outside the scope of a motion to dismiss, as the FAC is defective on its face.

**II.**

**THE RICO CLAIMS SHOULD BE DISMISSED**

Novella adopts Goldberg's reply MOL (ECF 102) to the extent applicable to dismiss the RICO counts.  The claims against Novella are even more attenuated than those against the others, as he was not involved in the underlying landlord-tenant dispute. As to Novella, one can reasonably ask, "What's that have to do with him?"

**A.      Plaintiff Does Not Plausibly Allege Cognizable Predicate Acts**

Novella defended the landlord defendants in the state court for the first three months of their appearance (as reflected on the court's public docket). Plaintiff nevertheless continues to brand Novella as "the 'Architect' of the cover-up out of court," alleging that "Novella did not merely inherit a completed fraud to defend," but "participat[ed] in the creation of the 'shifting justifications'" (Opp-MOL at 9, *citing* FAC ¶ 342). Plaintiff fails, however, to plead or identify any *facts* in this regard.

Plaintiff essentially sues Novella for performing the task of a lawyer in filing an answer denying certain allegations (Opp-MOL at 7), something done regularly at the start of just about

Page **4** of **12**

any litigation, and unremarkably.  Plaintiff's justification for basing his claims on the denials is

that Novella supposedly:

> 2. **Vouched for Forged Physical Evidence:** Affirmatively ratified a digitally
> fabricated business record from an unlicensed, uninsured, and legally
> dissolved "Zombie Vendor" (the "April 7th Receipt"). Defendant Novella
> accomplished this by drafting and filing a Verified Answer that issued specific
> denials to Paragraphs 27, 28, 38, and 52 of the State Court Complaint (which
> explicitly alleged the receipt was false and fabricated). By denying these
> specific allegations, Novella affirmatively represented to the State Court—
> under penalty of perjury—that the forged document was genuine, thereby
> utilizing a false pleading to justify the Enterprise's retention of stolen funds
> (FAC ¶¶ 85-115, 477-479).

(Opp-MOL at 7) [2]  Plaintiff overstates the implications of filing a client-verified answer with

denials at the initial stage of litigation.  Indeed, this is the very reason that attorneys have their

*clients* verify pleadings when they address events within the clients' purview.  Here plaintiff had

already filed for a default judgment as against one of the landlord defendants in the state case

(NYSCEF #24 (subsequently corrected)), creating urgency for the verified answer to be filed

(NYSCEF #31).

Plaintiff deceptively cites *Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) for

the proposition that "[a] lawyer has no privilege to assist in circulating a statement . . . which he

knows to be false simply because his client has furnished it to him" (Opp-MOL at 7, *quoting*

*Azrielli* at 517 (*quoting SEC v. Frank*, 388 F.2d 486, 489 (2d Cir. 1968)). But the words that

plaintiff intentionally omits with his ellipsis go to the heart of the quote, which is "circulating a

statement *with regard to securities*" (emphasis added), as that claim involved statements made in

---

[2]    Plaintiff filed the state court pleadings here as ECF 64-1, where the subject paragraphs
27, 28, 38, and 52, and denials can be viewed.  Additionally, no permit is required in for painting
and plastering in New York City (https://www.nyc.gov/site/buildings/property-or-business-
owner/do-i-need-a-permit.page) and a search on NYC's web portal (https://a866-
dcwpbp.nyc.gov/search) for DA NETWORKS reveals that it was licensed to perform work
beyond the date plaintiff left the apartment.

selling securities, constituting securities fraud, not statements made in litigation.  Regardless, as we note in our moving papers, the RICO claim as against the attorney there was dismissed because he was acting merely as an attorney and "had no role in the conception, creation, or execution" of the securities transaction there (MOL at 13, *quoting Azrieli* at 521-22).

Plaintiff suggests that Novella must have suborned perjury (Opp-MOL at 1-5, 7, 13), *citing Gabovitch v. Shear*, No. 95-1055, 1995 U.S. App. LEXIS 32856, 1995 WL 697319 (1st Cir. Nov. 21, 1995) (unpublished).[3]  The court there, however, noted that "in cases 'allowing perjury to serve as a predicate act … the defendant had either been convicted of perjury before the civil RICO action commenced or had perjury established as a matter of record in a separate proceeding.'" 1995 U.S. App. LEXIS 32856 at *7 (*quoting Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1022 n.3 (7th Cir. 1992)*). As that had not occurred, the *Gabovitch* court affirmed the district court's dismissal of the complaint, including RICO, for failure to state a claim.

**B.** **Plaintiff Alleges No Cognizable RICO "Pattern"**

Plaintiff cites two RICO cases asserted against attorneys, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) and *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) (Opp-MOL at 4-6 & 8-10). The former involved a "summary judgment mill," including almost 90,000 and 60,000 cases, respectively, filed by the defendants, Sykes, 780 F.3d at 77, during which "in 2,915 instances, a process server claimed to have attempted or completed service *before* the date that the service was assigned to that process server—[a] physical impossibility." *Id.* at 77.  Similarly, *Eisen* involved 18 fraudulent personal injury suits.  974 F.2d at 251.

---

[3]    Plaintiff fails to identify this opinion as unpublished (and thus not binding precedent) as required by First Circuit Local Rule 32.1.0(a).

In attempting to frame this singular dispute as a long-term RICO scheme and analogize it to the above-cited cases, plaintiff gratuitously sprinkles a plural "s" throughout his allegations. According to his opposition, the FAC pleads a scheme "to steal tenant security deposit**s** and launder the fund**s** through fraudulent insurance claim**s**, over **a period of many years**" (Opp-MOL at 1 (emphases added)).  Not so here, where a single short-lived transaction, in which Novella was in no way involved, has been disingenuously stretched beyond recognition (*see* MOL at 15-16).

We rely on our opening brief for the remaining RICO arguments, including the lack of any RICO injury or conspiracy, and that dismissal should be with prejudice (MOL at 16).

### III.

### THE STATE LAW CLAIMS SHOULD BE DISMISSED OR JURISDICTION DECLINED

**A.    The Court Should Exercise Supplemental Jurisdiction Over The State Law Claims To Dismiss Them As Inadequate**

Plaintiff and Novella agree on the treatment of supplemental jurisdiction to the extent that if this court can easily dismiss the state law claims, it should do so (MOL at 17; Opp-MOL at 32).  If the court cannot easily dismiss those claims, it may decline supplemental jurisdiction (MOL at 26).  In our view, the court should rid the parties of this case as soon as possible.

**B.    Exercising That Jurisdiction, The State Law Claims Should Be Dismissed As Meritless**

**1.    Defamation**

With regard to defamation, nothing in plaintiff's opposition undercuts that any specific statement on which he relies is subject to the litigation privilege (*see* MOL at 18-21).  Even absent the privilege, nothing plaintiff alleges makes out a defamation claim. Indeed, plaintiff does not claim that any of the allegedly defamatory statements are false.

Nonetheless, we indulge his baseless arguments. According to plaintiff, Novella's "publication" of the term "default" is defamatory because February rent was paid and "the lease was mutually terminated in writing" (Opp-MOL at 26). Plaintiff fails to acknowledge, however, that paragraph 8b of the lease provides that it "continue[s] to be in effect after the end of this Lease" (ECF 60-1 at 2). Consequently, having left his furniture and personal effects in the apartment, his failures to empty it and return the keys constitute defaults. It is therefore true that plaintiff defaulted.

Moreover, plaintiff's failure to inform Goldberg of the condition in which he had left the apartment was deceptive and emblematic of his litigation strategy in this case and in the state court case. Instead of confirming to Goldberg that he had "*vacated*" the apartment, which is what Goldberg asked him to do, plaintiff disingenuously replied, "You can have the apartment now. I have *left*" (emphases supplied). In hindsight, if there was any confusion, it was plaintiff's doing, and it must be construed against him as the drafter.

Plaintiff also wrongly attributes to Novella the alleged publication of "false financial records" to the risk database (Opp-MOL at 27). That would have involved, if anyone, the guarantors. Novella had nothing to do with it and plaintiff alleges no contrary facts. Plaintiff's claim that the April 7 invoice for services rendered is itself libelous is meritless as plaintiff is nowhere referenced in it (Opp-MOL at 27, *referencing* ECF 26-5).

Plaintiff denies that Novella published an "opinion" when he filed Goldberg's affirmation containing the reference to his suspicion that plaintiff's flight and abrupt departure were related to a criminal investigation, and claims that Goldberg's suspicion is impertinent to the case (Opp-MOL at 27). Plaintiff neglects to acknowledge, however, that the suspicion was the immediate

Page **8** of **12**

cause of Goldberg's intent to relieve plaintiff of the obligation to pay rent, as previously explained (MOL at 19).

The facts underlying Goldberg's suspicion, moreover, are fully disclosed in the affirmation. A suspicion, like an opinion, is incapable of being proven true or false. That the suspicion is conveyed in a sworn court-filed document does not render it any more likely to be taken as dispositive evidence of criminality than had it appeared in a tabloid: Evidence of flight from criminal activity, even if admitted at trial, warrants only a suspicion of crime. *See People v. Taveras*, 228 A.D.3d 410, 411, 212 N.Y.S.3d 330 (1st Dep't 2024) ("Evidence of flight . . . 'as indicative of consciousness of guilt is a classic example of the admissibility of equivocal circumstantial evidence'; that such evidence is equivocal or that it is consistent with suppositions other than guilt does not render it inadmissible,'" *citing People v Yazum*, 13 N.Y.2d 302, 304 (1963)). That the evidence of the criminal investigation of plaintiff and his abrupt departure may be admissible in a court of law does not make Goldberg's suspicion factual. Most importantly, the statements were neither uttered nor adopted therein by Novella.

Plaintiff's alleged unawareness of the investigation (Opp-MOL at 27-28) is immaterial as Goldberg had no way of knowing whether or not plaintiff was aware of it, and even had Goldberg somehow known that plaintiff was unaware of the investigation, the circumstances remain suspicious. Even if plaintiff were to now prove that he did not commit whatever crime had led to the investigation, that would not retroactively render Goldberg's suspicion false.

Plaintiff repeats that portion of his unsupported claim, based "upon information and belief," that Novella must have defamed him to Borah Goldstein personnel (Opp-MOL at 28), which we have already addressed (MOL at 20). He offers no particulars in opposition, failing again to identify the allegedly defamatory statements, the time the statements were made, and the

third parties to whom they were made. *See, e.g., Banks v. Cty. of Westchester, 168 F. Supp. 3d 682, 697 (S.D.N.Y. 2016)*. He also ignores that the statements were qualifiedly privileged as we set forth in our moving papers (MOL at 20).

Plaintiff asserts that Novella admitted that the statements are neither pertinent nor protected by the absolute litigation privilege when he affirmed in a declaration that the "criminal narratives are an irrelevant side show with no direct relationship to the underlying lease dispute" (Opp-MOL at 28-29). Not so, as Novella's "side show" statement about the criminal investigation refers only to plaintiff's obligations under the *lease*.  Plaintiff overlooks that just three paragraphs later in the declaration, Novella states that "the criminal investigation might explain why the landlord and property manager were so quick to let Blecher go with few financial consequences to him" (2/8/26 Novella Decl, ECF 45, at ¶ 38). As such, the litigation privilege unquestionably applies. *See Mosesson v. Jacob D. Fuchsberg Law Firm, 257 A.D.2d 381, 683 N.Y.S.2d 88 (1st Dep't 1999)* (reference in affidavits to plaintiff's "possible involvement" in criminal activity was pertinent and protected by litigation privilege, and allegation of malice was without foundation), *lv den*ied, 93 N.Y.2d 808 (1999).

According to plaintiff, Novella's claim that this action was brought by plaintiff as retribution for defendants' cooperation with law enforcement constitutes the assigning of a corrupt motive based on false facts and is not an opinion (Opp-MOL at 29).  As Novella observed (MOL at 22), the surmise that plaintiff's lawsuit is retaliatory constitutes a nonactionable opinion that is substantially true, given the complaint's length, tone, lack of merit, and the absence of any loss to plaintiff. Otherwise, the words are nonactionable rhetorical hyperbole and are in any event privileged. That plaintiff may have been unaware of the investigation is, again, immaterial.

Finally, the claim that the opinions expressed by Goldberg about the quality of plaintiff's legal work provides only "contextual proof" of Novella's malice (Opp-MOL at 30) is meritless, as Goldberg's statements are pure opinion and/or rhetorical hyperbole that in no way reflect actual malice. They merely constitute criticism of manner of plaintiff's self-representation. In any event, plaintiff nowhere accuses Novella of uttering them, extrajudicially or otherwise.[4]

### 2.    Attorney Deceit (Jud. L.487)

Plaintiff in his opposition does not expressly deny that the added words "to date" in the $100,000 fee request was a mistake (*compare* MOL at 25 *with* Opp-MOL at 22-24). Novella otherwise relies on his moving papers to dismiss this claim (MOL at 22-26).

### 3.    Aiding and Abetting Fraud

Novella relies on his moving papers for dismissal of this claim (MOL at 26).

### IV.

### PLAINTIFF'S CONDUCT WARRANTS SANCTIONS

Plaintiff nowhere disputes Novella's argument that plaintiff's abusive conduct in this litigation warrants sanctions (*see* MOL at Point V).  Plaintiff is an attorney and must know that his too-clever assertions and misrepresentations are improper.  That Novella, an attorney doing his job, has been so cavalierly named as a federal defendant requiring extraordinary resources to be expended to respond to the 344-pargaraph, 102-page complaint, and then the 554-paragraph, 150-page amended complaint, along with multiple motions and filings (including self-

---

[4]    While plaintiff seeks to distance himself from *Blecher v. Progressive Select Ins. Co.*, No. 25-cv-4448, 2025 LX 515813 at *13 (E.D. Pa. Dec. 19, 2025) (Opp-MOL at 23 n.1, *citing* MOL at 22 n.10), plaintiff was the self-represented lead plaintiff and party to the defamation count asserted by both "plaintiffs." While he now suggests that the defamation claim wasn't his to make, the time to distance one from a baseless claim is before bringing it, not after the defendant is forced to defend to have it dismissed.

disqualification of representing the landlord defendants), is outrageous and should be noted before he harms others less able to respond.

Plaintiff persists even after two Novella motions to dismiss. Plaintiff's misuse of his legal acumen as an attorney to inflict harm on the defendants is an aggregating factor that should be addressed by this court. As stated in the case plaintiff cites, *SEC v. Frank*, 388 F.2d 486, 489 (2d Cir. 1968): "In our complex society the . . . certificate and the lawyer's opinion can be instruments for inflicting pecuniary loss more potent than the chisel or the crowbar."

### **CONCLUSION**

Plaintiff's RICO claim should be dismissed, along with the state law claims if the court can do so for reasons of judicial economy; and impose, or grant Novella leave to file a motion seeking, sanctions against plaintiff for filing this frivolous action; and grant Novella such other and further relief as the court deems just and equitable.

Dated:  New York, New York
        March 30, 2026

By: _____/s *Brian D. Graifman*_____
            Brian D. Graifman
            BORAH, GOLDSTEIN, NAHINS &
            GOIDEL, P.C.
            377 Broadway
            New York, New York 10013
            (212) 431-1300 x322
            bgraifman@borahgoldstein.com
            *Attorney for Defendant Anthony J. Novella*

## CERTIFICATE OF COMPLIANCE OF WORD COUNT

I hereby certify that the foregoing Reply Memorandum of Law of Supporting Anthony Novella's Motion to Dismiss the First Amended Complaint complies with Rule 3.C of the Court's Individual Rules of Practice. According to the word processing system used to prepare that document, the total number of words, exclusive of the caption, tables of contents, table of authorities, and signature block, and including footnotes, is **3,452**.

Dated: March 30, 2026

*/s/ Brian D. Graifman*
Brian D. Graifman